ORAL ARGUMENT NOT REQUESTED

No. 26-2126

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,
Defendant-Appellee

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; CLAUDIA MEDINA; JUSTIN ALLEN,
Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
The Honorable Judge Judith C. Herrera
D.C. No. 1:25-cv-1193-JCH-JFR

# BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
Assistant Attorney General
ANDREW G. BRANIFF
DAVID N. GOLDMAN
MICHAEL T. HAYES
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803
andrew.braniff@usdoj.gov

## STATEMENT OF RELATED CASES

The United States filed a Notice of Appeal on August 17, 2026, in *United States v. Griswold*, No. 1:25-cv-3967-PAB-TPO (D. Colo.) (ECF 105), which raises many of the same issues relevant to the present appeal. As of this submission, no Tenth Circuit case number has been assigned to the *Griswold* appeal.

# TABLE OF CONTENTS


**PAGE**

STATEMENT OF RELATED CASES

GLOSSARY

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION ................................................ 2

STATEMENT OF THE ISSUES .................................................... 3

STATEMENT OF THE CASE ...................................................... 3

SUMMARY OF ARGUMENT ...................................................... 11

STANDARD OF REVIEW .......................................................... 13

ARGUMENT

I. The United States adequately stated the basis and purpose of its demand for New Mexico's SVRL. .................. 13

A. Defendants may not challenge the sufficiency or accuracy of the basis and purpose for the United States' demand. ............................................... 15

B. The United States stated a "basis" for its demand. .... 20

1. Title III does not require the United States to "outline both the discrete factual and . . . legal motivations underlying the request." ........ 20

2. The United States met its burden of asserting that its demand was made to investigate possible violations of federal law. .... 23

**TABLE OF CONTENTS (continued): PAGE**


C. The United States adequately stated the "purpose" of its demand. .......... 25

1. The United States' stated purpose of ensuring compliance with federal election law is a proper purpose under Title III. .......... 26

2. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under 52 U.S.C. 20703. .......... 29

3. The United States does not need to specifically explain why each piece of sensitive information is necessary for its stated purpose, in order to satisfy Title III's "purpose" requirement. .......... 31

II. Title III requires New Mexico to provide an electronic, unredacted copy of the SVRL, and no privacy laws prohibit its production. .......... 32

A. New Mexico must produce the SVRL without redactions. .......... 33

B. The United States' demand complied with the Privacy Act. .......... 34

C. The United States' demand complied with the E-Government Act. .......... 38

D. Federal law preempts any contrary New Mexico privacy law. .......... 42

CONCLUSION .......... 44

**TABLE OF CONTENTS (continued):**

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

ATTACHMENT 1 – Memorandum Opinion and Order Granting Defendants' Motions to Dismiss (ECF 119)

ATTACHMENT 2 – Judgment (ECF 120)

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960),
*aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*,
285 F.2d 430 (5th Cir. 1961) .......... 16

*American Oversight v. United States Dep't of Just.*,
45 F.4th 579 (2d Cir. 2022) .......... 37

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) .......... 42

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 13, 23

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) .......... 29, 38

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) .......... 42

*Coleman v. Kennedy*, 313 F.2d 867
(5th Cir. 1963) (per curiam) .......... 21-22, 24, 27

*Doe v. Chao*, 540 U.S. 614 (2004) .......... 34

*Donaldson v. United States*, 400 U.S. 517 (1971),
*superseded by statute on other grounds*,
Tax Reform Act of 1976, Pub. L. No. 94-455,
90 Stat. 1520 .......... 18-19

*Electronic Privacy Info. Ctr. v. United States Dep't of Com.*,
356 F. Supp. 3d 85 (D.D.C.),
*vacated and remanded on other* grounds,
928 F.3d 95 (D.C. Cir. 2019) .......... 40-41

*Ex Parte Siebold*, 100 U.S. 371 (1879) .......... 43

*Foster v. Love*, 522 U.S. 67 (1997) .......... 42

**CASES (continued):** **PAGE**

*Fuqua v. Santa Fe Cnty. Sheriff's Off.*,
157 F.4th 1288 (10th Cir. 2025) ........................................ 13

*Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771 (2023) ........................................ 43

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ........................................ 27

*Hannah P. v. Coats*, 916 F.3d 327 (4th Cir. 2019) ........................................ 22

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................ 19

*High Desert Relief, Inc. v. United States*,
917 F.3d 1170 (10th Cir. 2019) ........................................ 30

*In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194 (10th Cir. 2015) ........................................ 13

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ........................................ 16, 21

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ........................................ 9, 14, 16-18, 21, 23, 43-44

*Public Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ........................................ 33

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ........................................ 3, 5

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ........................................ 40

*United States v. Balanced Fin. Mgmt.*,
769 F.2d 1440 (10th Cir. 1985) ........................................ 30

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich.),
*aff'd*, 179 F.4th 470, *reh'g en banc denied*,
No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) ........................................ 28-29

**CASES (continued):** **PAGE**

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ........................ 18, 21

*United States v. McAnlis*, 721 F.2d 334 (11th Cir. 1983) ........................ 35

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ........................ 24-25

*United States v. Powell*, 379 U.S. 48 (1964) ........................ 19

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) ........................ 33

*Webster v. Doe*, 486 U.S. 592 (1988) ........................ 19

**CONSTITUTION:**

U.S. Const. Art. I, § 4, Cl. 1 ........................ 42

U.S. Const. Art. VI, Cl. 2 ........................ 42

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 20701 *et seq.* ........................ 1, 3, 26
52 U.S.C. 20701 ........................ 1, 3-5, 12, 14, 19, 26, 33
52 U.S.C. 20702 ........................ 35
52 U.S.C. 20703 ........................ 1, 4, 8, 12, 14, 17, 19-22, 29-30, 32
52 U.S.C. 20704 ........................ 4, 12, 33-34, 43
52 U.S.C. 20705 ........................ 4, 14
Pub. L. No. 86-449, § 601, 74 Stat. 90 ........................ 26
(Title VII)
42 U.S.C. 2000e-2 ........................ 27
42 U.S.C. 2000e-5(b) ........................ 25-26

E-Government Act of 2002
§ 201 ........................ 39
§ 208(b)(1)(A)(ii) ........................ 38, 40-41

**STATUTES (continued):** **PAGE**


§ 208(b)(1)(B)(i) ........ 38-39
Pub. L. No. 107-347, 116 Stat. 2899 ........ 38

Fair Housing Act
42 U.S.C. 3604 ........ 27
42 U.S.C. 3610(a)(1)(B)(iv) ........ 25

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 20901 *et seq.* ........ 1
52 U.S.C. 21083(a) ........ 41
52 U.S.C. 21083(a)(1)(A) ........ 6, 32, 41
52 U.S.C. 21083(a)(1)(A)(viii) ........ 6
52 U.S.C. 21083(a)(2)(A) ........ 6, 32
52 U.S.C. 21083(a)(2)(A)(i)-(iii) ........ 6
52 U.S.C. 21083(a)(4)(A) ........ 32
52 U.S.C. 21083(a)(5)(A)(i)-(ii) ........ 6
52 U.S.C. 21083(a)(5)(A)(iii) ........ 6
Pub. L. No. 107-252, 116 Stat. 1666 ........ 28

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20501 *et seq.* ........ 1
52 U.S.C. 20501(a)(3) ........ 28
52 U.S.C. 20501(b)(3) ........ 5
52 U.S.C. 20507(a)(4) ........ 5, 32
52 U.S.C. 20507(i)(1) ........ 5, 34

Privacy Act of 1974
5 U.S.C. 552a(e)(4) ........ 36
5 U.S.C. 552a(e)(4)(B) ........ 37
5 U.S.C. 552a(e)(7) ........ 35
Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896 ........ 34

28 U.S.C. 1291 ........ 2

28 U.S.C. 1331 ........ 2

**STATUTES (continued):** **PAGE**


28 U.S.C. 1345 .......... 2

31 U.S.C. 5314(a) .......... 38

44 U.S.C. 3501 note .......... 37-38

44 U.S.C. 3502 .......... 38, 40

44 U.S.C. 3502(3)(A)(i) .......... 38, 41

44 U.S.C. 3502(10) .......... 38

44 U.S.C. 3518(c)(1) .......... 39

52 U.S.C. 10301 .......... 27

52 U.S.C. 21111 .......... 34


**REGULATIONS:**


28 C.F.R. 0.50(a) .......... 36

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 36-37

70 Fed. Reg. 43,904 (July 29, 2005) .......... 36

82 Fed. Reg. 24,147 (May 25, 2017) .......... 36

90 Fed. Reg. 14,005 (Mar. 25, 2025) (Exec. Order No. 14,248) ..........


**LEGISLATIVE HISTORY:**


*Civil Rights—1959: Hearings Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong., 1st Sess. (1959) .......... 30

**LEGISLATIVE HISTORY (continued):** **PAGE**

106 Cong. Rec. 6392 (1960) .......... 32

**RULES:**

Fed. R. App. P. 2 .......... 43-44

Fed. R. App. P. 40(d)(1) .......... 44

Fed. R. App. P. 41(b) .......... 43

Fed. R. Civ. P. 12(b)(6) .......... 9, 13

**MISCELLANEOUS:**

Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C., https://www.justice.gov/olc/media/1440346/dl .......... 40

EAC, About the EAC, https://eac.gov/about .......... 7

EAC, *Election Administration and Voting Survey 2024 Comprehensive Report* (June 2025), https://perma.cc/H8NJ-EG4F .......... 7

*Merriam-Webster's Collegiate Dictionary* (10th ed. 2002) .......... 41

*The American Heritage College Dictionary* (4th ed. 2002) .......... 41

U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited Aug. 17, 2026) .......... 37

U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury# .......... 37

**MISCELLANEOUS (continued):** **PAGE**

U.S. Election Assistance Comm'n,
*Celebrating 20 Years of HAVA*,
https://www.eac.gov/sites/default/files/HelpAmerica
VoteDay/HAVA_1-Pager_10-27-22_508.pdf
(last visited Aug. 17, 2026) ............................................................28

## GLOSSARY

| | |
|---|---|
| CRA | Civil Rights Act of 1960 |
| DHS | U.S. Department of Homeland Security |
| DOJ | U.S. Department of Justice |
| EAC | U.S. Election Assistance Commission |
| EAVS | Election Administration and Voting Survey |
| HAVA | Help America Vote Act of 2002 |
| NVRA | National Voter Registration Act of 1993 |
| PIA | Privacy Impact Assessment |
| PII | Personally Identifiable Information |
| SORN | System-of-Records Notice |
| SVRL | Statewide Voter Registration List |
| VRL | Voter Registration List |

## INTRODUCTION

The United States brought this case against New Mexico Secretary of State Maggie Toulouse Oliver (New Mexico) alleging that New Mexico violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq.*, which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the United States alleged that New Mexico violated Title III by refusing the Attorney General's demand for an electronic, unredacted copy of its statewide voter registration list (SVRL) to determine New Mexico's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq*.

The district court granted New Mexico's and the intervenors' (collectively, defendants) Motions to Dismiss and denied the United States' Motion to Compel, concluding that the Attorney General's written demand failed to state an adequate "basis" for the demand. *See* 52 U.S.C. 20703. That was error. Title III creates a special statutory proceeding under which a district court may not second-guess the factual sufficiency of the Attorney General's statement of the basis and purpose for the

demand. And the Attorney General's demand—which explained that it was made pursuant to the NVRA and HAVA, and that it sought New Mexico's SVRL to ascertain the State's compliance with the NVRA's and HAVA's list-maintenance requirements—stated a basis and purpose sufficient to require production. This Court should reverse. Defendants' other arguments—that Title III does not require New Mexico to produce an unredacted SVRL, and that the demand violates federal and state privacy laws—provide no alternative basis to affirm.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331 and 1345. That court entered a final order granting defendants' Motions to Dismiss and denying the United States' Motion to Compel on July 14, 2026 (JA Vol. II at 472-492),[1] and entered final judgment the same day (JA Vol. II at 493). The United States filed a timely Notice of Appeal. JA Vol. II at 495-497. This Court has jurisdiction under 28 U.S.C. 1291.

---

[1] The joint appendix contains two volumes. Citations to the joint appendix in this brief include the volume of the joint appendix and the page number, *e.g.*, JA Vol. __ at __.

## STATEMENT OF THE ISSUES

1. Whether the United States adequately stated the basis and purpose for its demand for an electronic, unredacted copy of New Mexico's SVRL under Title III of the Civil Rights Act. JA Vol. I at 25; JA Vol. II at 490.

2. Whether federal or state privacy laws prevent the United States from demanding an electronic, unredacted copy of New Mexico's SVRL. JA Vol. I at 97-100; JA Vol. II at 487.

## STATEMENT OF THE CASE

1.a. The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703.

The Attorney General and his representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52 U.S.C. 20704. And, should it be necessary, the Attorney General may seek the aid of a district court: "The United States district court for the district in which a demand is made . . . or in which a record or paper so

demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

b. Although Congress enacted the CRA, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers which come into [election officers'] possession," 52 U.S.C. 20701.

Relevant here are the NVRA and HAVA, which help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). The NVRA requires each State, with exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). The NVRA further requires each State to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . .

the death of the registrant; or . . . change in the residence of the registrant." 52 U.S.C. 20507(a)(4).

Of highest importance to this litigation, HAVA requires States to implement a single centralized computerized SVRL which "serve[s] as the official voter registration list for the conduct of all elections for Federal office in the State," 52 U.S.C. 21083(a)(1)(A)(viii). HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing "individual[s]," "registrant[s]," and "ineligible voters" who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se]

requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

2. The United States Election Assistance Commission (EAC) is "an independent bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the [election] process." EAC, About the EAC, https://eac.gov/about. EAC conducts a biennial Election Administration and Voting Survey (EAVS) of States. For the 2024 EAVS, States "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance." EAC, *Election Administration and Voting Survey 2024 Comprehensive Report* (June 2025) at iv, https://perma.cc/H8NJ-EG4F.

Based on its review of the 2024 EAVS Report, the Department of Justice sent a September 8, 2025, letter to Secretary Toulouse Oliver. JA Vol. I at 23; JA Vol. I at 50-52. The letter demanded a "current electronic copy of [New Mexico's] computerized statewide voter registration list" (JA Vol. I at 23), so that the Attorney General could "assess [New Mexico's] compliance with the statewide VRL maintenance provisions of the NVRA" and HAVA (JA Vol. I at 50). The letter further specified that

the list "should contain all fields," including each registrant's "full name, date of birth, residential address, [and] his or her state driver's license number or the last four digits of the registrant's social security number." JA Vol. I at 50; *see also* JA Vol. I at 23. The letter invoked the Attorney General's authority under the NVRA, HAVA, and Section 303 of the Civil Rights Act, 52 U.S.C. 20703. JA Vol. I at 50-51. And it explained that "the purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." JA Vol. I at 51; *see also* JA Vol. I at 23. The letter also assured New Mexico that the Attorney General would keep the data secure and treat it consistently with the Privacy Act of 1974. JA Vol. I at 51.

Secretary Toulouse Oliver responded with a letter dated September 22, 2025, offering "in-person or electronic access to a redacted voter file" but refusing to produce an unredacted copy of the SVRL, citing New Mexico law and the Privacy Act. JA Vol. I at 54-55. Secretary Toulouse Oliver did not otherwise provide the United States with New Mexico's SVRL. JA Vol. I at 25.

On December 2, 2025, the United States sued Secretary Toulouse Oliver, asserting a single claim under Title III. JA Vol. I at 19-27. The

United States alleged that New Mexico's refusal to provide an electronic, unredacted copy of its SVRL violated Section 303 of the CRA. JA Vol. I at 25-26. The United States also filed a Motion to Compel Production of the SVRL. JA Vol. I at 28-32. The Motion argued that Title III "creat[es] a 'special statutory proceeding'" under which Secretary Toulouse Oliver must produce the voter-registration records demanded by the Attorney General. JA Vol. I at 40 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962) (*Lynd II*)).

New Mexico Alliance for Retired Americans (New Mexico Alliance), and Common Cause, Claudia Medina, and Justin Allen, intervened as defendants. JA Vol. II at 476. New Mexico Alliance, Common Cause, and New Mexico each moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). JA Vol. I at 79-103, 116-141, 142-177.

Defendants made two arguments in the respective Rule 12(b)(6) motions: (1) the United States failed to state a valid "basis" and "purpose" in its demand (*see* JA Vol. I at 86-92, 125-130, 162-168); and (2) Title III does not require production of the full, unredacted SVRL, but instead federal privacy laws prohibit its disclosure. *See* JA Vol. I at 92-100, 130-

134, 167-176.[2] Common Cause also argued that the United States was not entitled to summary disposition of its Title III claim. *See* JA Vol. I at 135-139.

On July 14, 2026, the district court granted the Motions to Dismiss, denied the Motion to Compel as moot, and dismissed the Complaint with prejudice. JA Vol. II at 491-492.

First, the court rejected the United States' argument that Title III creates a special statutory proceeding that overcomes the ordinary operation of the Federal Rules of Civil Procedure. JA Vol. II at 484-486.

Second, applying Rule 12(b)(6), the court held that the September 8 letter failed to state "the basis" required by Section 303 of the CRA. JA Vol. II at 490-491. The court reasoned that "the basis" and "the purpose" are "separate, non-overlapping requirements," with "the basis" referring to "the discrete factual" predicate for the demand and "the purpose" referring to the Department's "legal" rationale. JA Vol. II at 489-491 (citation omitted). Although the court acknowledged that the letter stated

[2] New Mexico also contended, in a footnote, that production of the unredacted SVRL would violate state law as well, but those arguments were not fully developed below. JA Vol. I at 169.

a purpose—"to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA"—it held that the letter "altogether lack[ed] an identifiable 'basis'" because it did not "articulate any factual suggestion that New Mexico has violated the NVRA or HAVA" or point to "statistical anomalies within New Mexico's voter registration data." JA Vol. II at 474-475, 489-491. Because it concluded the letter lacked a basis, the court did not "determine whether the Government provided the sufficient 'purpose.'" JA Vol. II at 491. The court did not reach defendants' remaining arguments.

## SUMMARY OF ARGUMENT

1. The district court erred in dismissing the United States' Title III claim on the ground that it failed to state an adequate basis for its demand for an electronic, unredacted copy of New Mexico's SVRL. Title III creates a special statutory proceeding under which district courts lack the authority to second-guess the United States' asserted basis and purpose for its demand. In any case, the September 8 letter explained that the demand was made pursuant to the NVRA and HAVA to ascertain New Mexico's compliance with federal law surrounding elections. The United States was not required to allege specific facts to

explain why it believed an investigation into NVRA or HAVA compliance was necessary. And, while the court did not reach the issue, the United States' purpose was clearly stated in its demand: it sought to assess New Mexico's compliance with the NVRA and HAVA. The United States satisfied its obligations under Title III.

2. Title III authorizes the United States to demand an unredacted copy of New Mexico's current SVRL. The SVRL is a "record[ or] paper[] . . . relating to any . . . registration . . . or other act requisite to voting in [a federal] election," 52 U.S.C. 20701, that is subject to the Attorney General's demand, 52 U.S.C. 20703. Nothing in Title III permits a State to redact the records demanded by the Attorney General; to the contrary, Title III safeguards those records from public disclosure, eliminating the need for redaction. 52 U.S.C. 20704.

No privacy law dictates a different result. First, the demand for the SVRL falls within the Privacy Act's law-enforcement exception. Second, the E-Government Act does not require a privacy impact assessment in these circumstances. And third, to the extent defendants press the issue, Title III preempts any contrary New Mexico privacy law.

## STANDARD OF REVIEW

This Court "review[s] de novo the decision to grant a motion to dismiss for failure to state a claim" under Federal Rule of Civil Procedure 12(b)(6). *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025). The Court "accept[s] all well-pleaded allegations as true and view[s] them in the light most favorable to" the plaintiff. *Ibid.*; *see In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (citations omitted) ("accept[ing] all factual allegations in the complaint as true," but declining to "take as true the complaint's legal conclusions"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## ARGUMENT

### I. The United States adequately stated the basis and purpose of its demand for New Mexico's SVRL.

The district court dismissed the United States' Title III claim solely because the Attorney General's demand for an electronic, unredacted

copy of New Mexico's SVRL "altogether lack[ed] an identifiable 'basis'" as required by Section 303. JA Vol. II at 490. That was error.

Section 301 of Title III imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) *(Lynd II)*, to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the state election officer has rejected it, the Attorney General may seek an order from the federal court "to compel the production of such record or paper." 52 U.S.C. 20705.

The United States followed the proper procedural steps to demand New Mexico's SVRL. In the September 8 letter, the Attorney General explained that the demand was made "pursuant to" Title III, the NVRA, and HAVA (JA Vol. I at 50-51), and that its purpose was "to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA" (JA Vol. I at 51). And, as the Complaint alleges, the Attorney General sent the demand "[b]ased on a review of the 2024 EAVS Report." JA Vol. I at 23. Title III's plain language and the relevant precedents establish that the United States' demand provided a "basis"—factual and legal—for the records it sought. Because the United States adequately stated the "basis and purpose" for its demand, New Mexico was required to produce its SVRL, and the district court erred in holding otherwise.

### A. Defendants may not challenge the sufficiency or accuracy of the basis and purpose for the United States' demand.

As a threshold matter, the district court subjected the Attorney General's statement of basis to the ordinary pleading scrutiny of the Federal Rules of Civil Procedure, requiring that the demand allege a "factual" predicate sufficient to state a plausible claim. JA Vol. II at 486,

490-491. But Title III forecloses that inquiry. The proper level of scrutiny is one of considerable deference to the Attorney General.

Title III creates a "special statutory proceeding." *Lynd II*, 306 F.2d at 225. The United States' demand for federal election records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings," but rather "comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and that "investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (citation omitted).

By seeking records required to be maintained under Section 20701 in court under Title III, the United States initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd II*, 306 F.2d at 225. Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but

merely "a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703).

Title III's "special statutory proceeding" limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any . . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a state election official responding to the Attorney General's demand for federal election records may not use litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.* Nor is "the factual foundation for, or the sufficiency of," this statement "open to judicial review or

ascertainment." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*).

The Fifth Circuit's approach to Title III's "summary proceeding[s]," *Lynd II*, 306 F.2d at 226, is consistent with subsequent Supreme Court precedent. In *Donaldson v. United States*, the Court addressed a provision of the Internal Revenue Code that authorized the Secretary of the Treasury to summon records and testimony "relevant or material" to a tax inquiry, and a neighboring provision granting district courts jurisdiction "by appropriate process to compel" production. 400 U.S. 517, 523-524 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 (citations omitted). The Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application," and precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Id.* at 528-529; *see Lynd II*, 306 F.2d at 226 (allowing judicial determination of whether "written demand has been made" and whether

the custodian "ha[s] been given reasonable notice . . . of the proceeding").[3]

In sum, so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced. *See* 52 U.S.C. 20703. There is no room for judicial inquiry as to whether the basis and purpose are factually accurate or sufficient. Nothing in the statute purports to authorize courts to second-guess or probe the sufficiency or sincerity of the Attorney General's statement. Indeed, the statute provides no meaningful standards that would permit such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that the Attorney General may demand, 52 U.S.C. 20701, and a requirement that he communicate "the basis and the purpose" for his request, 52 U.S.C.

[3] *Donaldson* also shows why the district court's reliance on *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964), is misplaced. *See* JA Vol. II at 485. As *Donaldson* explained, "the Civil Rules are not inflexible in th[eir] application," and "the footnote in *Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. at 528-529.

20703—not any standard against which to measure the statement of basis and purpose.

### B. The United States stated a "basis" for its demand.

The district court dismissed the United States' claim for failure to articulate the "basis" for its demand. In doing so, the court erred by reading into the statute a requirement that does not exist, and by failing to credit the basis provided by the United States in its September 8 letter.

#### 1. Title III does not require the United States to "outline both the discrete factual and . . . legal motivations underlying the request."

The district court determined that Title III requires "the discrete factual" basis for the demand, and that the demand must "articulate any factual suggestion that New Mexico has violated the NVRA or HAVA." JA Vol. II at 489-490. The court further maintained that a Title III records demand must "outline both the discrete factual and the legal motivations underlying the request." JA Vol. II at 490.[4]

---

[4] The district court also appeared to fault the demand for failing to "point[]" to "statistical anomalies within New Mexico's voter registration data" or to "articulate any factual suggestion that New Mexico has violated the NVRA or HAVA," despite the fact that the statutory text imposes no such requirements. JA Vol. II at 490-491 (citation omitted).

There is "no justification" for requiring the United States to "allege specific details" underlying its demand. *Lynd I*, 301 F.2d at 822. Title III does not specify that "the basis" must be a factual one, as opposed to a legal one. *See* 52 U.S.C. 20703. Rather, the fact that the statute does not detail any specifics about how the Attorney General is expected to satisfy the basis-and-purpose requirement supports the understanding that he need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added; citation omitted); *see, e.g.*, *Bruce*, 298 F.2d at 861 (citation omitted) ("The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."). "No showing even of a prima facie case of a violation of Federal law need be made." *Coleman*, 313 F.2d at 868 (citation omitted).

Contemporaneous cases reflect this understanding. According to the Fifth Circuit, the purpose of Title III's "basis" requirement is to ensure that States have "reasonable notice" of what the United States is demanding and why. *Lynd II*, 306 F.2d at 226; *see* 106 Cong. Rec. 6392

(1960) ("notice as to why such an inspection was being made and as to what law or what constitutional provision, right, or immunity might be involved"). Nothing in Title III requires the United States to ritualistically use the word 'basis,' 'based upon,' or any other magic words when communicating its demand to a State. *Cf. Hannah P. v. Coats*, 916 F.3d 327, 345 (4th Cir. 2019) (citation omitted) ("Proper notice does not require any magic words."). Rather, the Attorney General can simply assert that he demands records for the purpose of investigating possible violations of federal law. *See Coleman*, 313 F.2d at 868.

The district court therefore erred by grafting onto Section 303 requirements not found anywhere within the statute's text. *See* 52 U.S.C. 20703. The Attorney General need not allege a violation or noncompliance with the NVRA or HAVA (*cf.* JA Vol. II at 490), nor must he attempt to explain why "unredacted PII is necessary" for any particular investigation. *Ibid.* Simply put, the district court held the United States to a standard not found anywhere in the CRA, and as such its decision should be reversed.

**2. The United States met its burden of asserting that its demand was made to investigate possible violations of federal law.**

By invoking the NVRA and HAVA in the September 8 letter, the Department of Justice made clear that the basis for its written demand was those statutes and New Mexico's possible noncompliance with their list-maintenance requirements. JA Vol. I at 50-51. The demand therefore gave New Mexico the necessary "reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. And as *Lynd II* explains, "the factual foundation for, or the sufficiency of, the Attorney General's statement of the basis and the purpose contained in the written demand *is not open to judicial review or ascertainment*." *Id.* at 226 (emphasis added; internal quotation marks and citation omitted).

As explained in the Complaint, the Attorney General sent the September 8 letter "[b]ased on a review of the 2024 EAVS Report"—the report in which New Mexico "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance." JA Vol. I at 23 (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (requiring courts to accept well-pleaded allegations as true). Although the district court faulted the United States for not

referencing the 2024 EAVS Report in the September 8 letter (JA Vol. II at 477, 490-491), the letter's own text made clear the "reasons for [the] demand" on a more general level, including the "assertion that the demand was made for the purpose of investigating possible violations" of federal law:

> We write to you . . . concerning your State's compliance with the statewide voter registration list maintenance provisions of [NVRA] and [HAVA]. . . . We request New Mexico's [S]VRL *to assess your state's compliance with the statewide [S]VRL maintenance provisions of the NVRA*. . . . The purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA.

JA Vol. I at 50-51 (emphasis added); *Coleman*, 313 F.2d at 868 (citation omitted). One can easily infer that an investigation into a State's compliance with its list-maintenance obligations is based on potential noncompliance.

In short, the United States provided the basis and purpose for its demand; the claim that the stated basis or purpose is insufficient lacks merit. Indeed, it is well established that federal agencies may "investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not." *United States v.*

*Morton Salt Co.*, 338 U.S. 632, 642-643 (1950).[5] As such, the demand's discussion of the NVRA and HAVA gave New Mexico notice of the factual and legal grounds for the demand, and its statement of purpose gave New Mexico notice of why the United States sought the SVRL.

### C. The United States adequately stated the "purpose" of its demand.

The September 8 letter clearly explained the "purpose" of the United States' demand: "to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." JA Vol. I at 51. The district court acknowledged that this statement supplied the demand's "purpose." JA Vol. II at 474-475. Indeed, even New Mexico conceded as much. JA Vol. I at 54 ("DOJ's letter states as its purpose evaluating New Mexico's compliance with list maintenance

[5] Title III is far from unique. Other civil-rights investigative tools give federal agencies authority to conduct compliance reviews so long as there is even a complaint of a violation of federal law. For example, the Fair Housing Act requires the Secretary of Housing and Urban Development to investigate all complaints of "alleged discriminatory housing practice[s]," 42 U.S.C. 3610(a)(1)(B)(iv), and Title VII of the Civil Rights Act of 1964 likewise requires the Equal Employment Opportunity Commission to investigate all charges of discrimination that trigger its jurisdiction, 42 U.S.C. 2000e-5(b).

requirements.”).[6] Although the court did not decide whether that purpose was sufficient (JA Vol. II at 491), defendants’ arguments that the purpose was improper, pretextual, or inadequately explained all fall short.

**1. The United States’ stated purpose of ensuring compliance with federal election law is a proper purpose under Title III.**

New Mexico Alliance and New Mexico argued below that assessing a State’s compliance with list-maintenance obligations is not a proper purpose under Title III because, in their view, the only permissible purpose is to combat racial discrimination in voting. *See* JA Vol. I at 90-92, 166-167. Title III imposes no such limitation. The statute lacks any language limiting its applicability to a particular purpose, let alone to voting-rights violations based on racial discrimination. *See* 52 U.S.C. 20701 *et seq*.

[6] In its Motion to Dismiss, New Mexico attempted to walk this concession back. *See* JA Vol. I at 163. It claimed that the United States did not identify any purpose for the demand, while simultaneously admitting that the letter’s asserted “purpose . . . is to ascertain New Mexico’s compliance with . . . the NVRA and HAVA.” *Ibid.* (citation omitted). Other than New Mexico’s contradictory position, none of the defendants claimed that the United States failed to state the purpose for the request; rather, they merely challenged the sufficiency of the stated purpose. *See* JA Vol. I at 91-92, 127-128.

By contrast, Congress made clear elsewhere in the Civil Rights Act where it intended a remedy to be limited to racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (1960) (applying Title VI of the CRA, 52 U.S.C. 10101, to violations of rights "on account of race or color"). That limitation is consistent with express limitations in other civil-rights statutes. *See* 42 U.S.C. 2000e-2 (Title VII prohibiting employment discrimination "because of such individual's race, color, . . . or national origin"); 52 U.S.C. 10301 (Voting Rights Act prohibiting discrimination "on account of race" or color); 42 U.S.C. 3604 (Fair Housing Act prohibiting discrimination "because of race, color, . . . or national origin"). This Court should therefore draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that "investigating possible violations of a Federal statute" is a valid purpose of a demand for federal election records, *Coleman*, 313 F.2d at 868 (citation omitted).

Even if there were some limitation on permissible purposes, there is no warrant to prevent its use to protect the right central to Title III—the right to vote. By broadly authorizing the Attorney General to demand election records from States, "[t]he CRA aids the Attorney General in

assessing states' compliance with federal election law and protecting voting rights." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich.), *aff'd*, 179 F.4th 470, *reh'g en banc denied*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026). Congress passed the NVRA after finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3).

HAVA, for its part, is a federal statute aimed at protecting voting rights. The statute "establish[es] minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666 (2002) (preamble). Those minimum standards, including accurate voter lists, were created to "address[] a variety of improvements to voting systems and voter access that were identified following the 2000 election."[7]

---

[7] U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA* 1, https://www.eac.gov/sites/default/files/HelpAmericaVoteDay/HAVA_1-Pager_10-27-22_508.pdf (last visited Aug. 17, 2026).

Moreover, the Supreme Court has recognized that invalid votes—which can be minimized through the NVRA's and HAVA's procedures—can "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). Because both the NVRA and HAVA are federal election laws that protect voting rights, "the DOJ may use the CRA to investigate possible violations of" either statute. *See Benson*, 819 F. Supp. 3d at 767; *see also Benson*, No. 26-1225, 2026 WL 2364306, at 4 (Murphy, J., concurring) (explaining that the DOJ's position that "the DOJ may investigate NVRA and HAVA violations using Title III[] remains viable").

**2. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under 52 U.S.C. 20703.**

Defendants and amici argued below that the Attorney General's stated purpose is a pretext for creating a national voter database or otherwise targeting voters. *See* JA Vol. II at 475 (describing these arguments). The district court expressly declined to consider those arguments. *Ibid*. They provide no basis to affirm.

As already discussed, *see* Part I.A, *supra*, Section 303 of Title III (52 U.S.C. 20703) leaves no room for a court to second-guess the stated basis

and purpose for the Attorney General's demand. Even if the demand was judicially reviewable, this Court should reject speculative allegations as to the true purpose of the Department of Justice's request. Under precedents involving administrative subpoenas, *see Benson*, 819 F. Supp. 3d at 765 ("constru[ing] a request for records under the CRA as a form of administrative subpoena"), the burden to show a lack of good faith "is a heavy one." *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1182-1183 (10th Cir. 2019) (citation omitted).[8] The party trying to make that showing must "point[] to specific facts or circumstances plausibly raising an inference of bad faith." *Id.* at 1194 (citation omitted); *see also United States v. Balanced Fin. Mgmt.*, 769 F.2d 1440, 1444-1445 (10th Cir. 1985) (citation omitted) (explaining that a subpoena recipient must "factually refute[]" "material Government allegations" to justify an evidentiary

[8] The United States does not agree that these precedents apply to CRA claims because, as the Fifth Circuit has explained, the CRA leaves *no* room for evaluating the sufficiency of the Attorney General's asserted purpose. *See also Civil Rights—1959: Hearings Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong., 1st Sess. 191-192 (1959) (statement of Attorney General William P. Rogers) (explaining the need for the power of "production and inspection . . . rather than for the issuance of a subp[o]ena"). The United States invokes these precedents for the sake of argument.

hearing). News articles that are not properly before the court on a motion to dismiss (JA Vol. II at 475) and an inapposite Executive Order fall well short of that standard. *See* JA Vol. I at 121-122 (describing hearsay from news articles attempting to generate doubt about the United States' motives); JA Vol. I at 157-158 (same).[9]

#### 3. The United States does not need to specifically explain why each piece of sensitive information is necessary for its stated purpose, in order to satisfy Title III's "purpose" requirement.

Common Cause argued that the United States failed to explain how an unredacted SVRL is relevant or necessary to assessing the State's compliance with the NVRA and HAVA. *See* JA Vol. I at 127. But Title III requires the United States to state the "purpose" for its demand, not to provide a detailed explanation of how the demand will advance that

---

[9] New Mexico cites a portion of Executive Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025), which simply addresses review by a different agency of "each State's publicly available voter registration list," to which New Mexico has not objected, and review of "State records requested . . . for consistency with Federal requirements." JA Vol. I at 157. In any event, reviewing state records "for consistency with Federal requirements" is consistent with the purpose stated by the Attorney General in the September 8 letter. Likewise, New Mexico cites a SORN issued by the DHS that—according to a cited news article— would help efforts to ensure accurate voter rolls (JA Vol. I at 158), which is, again, consistent with the Attorney General's stated purpose.

purpose. *See* 52 U.S.C. 20703. In any event, the relevance is straightforward. HAVA requires that the SVRL "assign[] a unique identifier to each legally registered voter in the State," 52 U.S.C. 21083(a)(1)(A), so inspecting the SVRL (unredacted so as to show these identifiers) is plainly relevant to assessing compliance with that requirement. Beyond that, the electronic SVRL allows the Department to assess whether New Mexico's list contains duplicate registrations, voters who have died or changed residence, and voters who were never eligible to register—each of which bears directly on the State's compliance with its list-maintenance obligations under the NVRA and HAVA. *See* 52 U.S.C. 20507(a)(4), 21083(a)(2)(A) and (a)(4)(A).

## II. Title III requires New Mexico to provide an electronic, unredacted copy of the SVRL, and no privacy laws prohibit its production.

Although the district court did not reach the issue (JA Vol. II at 491), defendants argued below that the demand for an unredacted copy of New Mexico's SVRL is beyond the scope of Title III and also violates federal and state privacy law. *See generally* JA Vol. I at 79-103, 116-177; *see also* JA Vol. I at 54-55. This argument is without merit.

### A. New Mexico must produce the SVRL without redactions.

As an initial matter, Title III requires production of an unredacted SVRL. Even in the 1960s, voter-registration applications—unquestionably records covered by the CRA, *see* 52 U.S.C. 20701—often contained the same sort of personal information that defendants seek to shield here, such as birthdates and addresses. Precisely because such privacy concerns might be implicated, Title III prohibits the Attorney General from "disclos[ing] any record or paper produced pursuant to [Title III], or any reproduction or copy," except to Congress, governmental agencies, and in judicial proceedings, "[u]nless otherwise ordered by a [federal] court." 52 U.S.C. 20704.

Defendants' contrary argument relies on cases holding that the NVRA does not prohibit the redaction of sensitive personal data contained in voter files. JA Vol. I at 95 (citing *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) and *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024)); JA Vol. I at 132, 167. Those NVRA cases are inapposite. The NVRA contains a public-inspection requirement, 52 U.S.C. 20507(i)(1), and because of the

"privacy risks implicated by the public release" of voter data, courts have read into that provision an option for States to redact "uniquely or highly sensitive personal information." *Bellows*, 92 F.4th at 56 (collecting cases). Those concerns are absent here. Title III does not vest the public with a right to inspect the records the Attorney General demands; to the contrary, it safeguards those records from disclosure. 52 U.S.C. 20704. That the NVRA permits the public to inspect certain voter information therefore has no bearing on whether Title III permits the Attorney General to demand an unredacted SVRL.

### B. The United States' demand complied with the Privacy Act.

The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896).

Defendants relied below on a provision of the Privacy Act that prohibits federal agencies from "maintain[ing] [any] record describing how any individual exercises rights guaranteed by the First Amendment

unless expressly authorized by statute . . . or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. 552a(e)(7). Enforcing the CRA's prohibition on the willful destruction or alteration of records, 52 U.S.C. 20702, and the NVRA's and HAVA's list-maintenance requirements, satisfies that law-enforcement exception. *See* 52 U.S.C. 21111. The United States nonetheless agrees that certain information—like an individual's party affiliation and how that individual votes—both "describ[es] how an[] individual exercises" his First Amendment rights and is not "pertinent to" the Department's investigation, 5 U.S.C. 552a(e)(7), and accordingly will not object to redaction of that information. Any argument that additional information cannot be provided due to the Privacy Act is an appropriate avenue for inquiry on remand.

As an initial matter, New Mexico's duty to comply with Title III is independent of any duty the United States has under other federal law. Even if the United States' compliance were lacking—and it is not—New Mexico's obligations under Title III are separate from, and not dependent on, the United States' obligations under other federal laws. *See United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir. 1983) (holding that

compliance with a provision of the Privacy Act was "not a prerequisite to enforcement of an [Internal Revenue Service] summons"). In any event, the United States is complying with all applicable privacy laws.

Contrary to the contentions of New Mexico and New Mexico Alliance (*see* JA Vol. I at 98-100, 168-175), the United States complied with the Privacy Act. The United States published the requisite notice about its collection of voter information in the Federal Register. *See* 5 U.S.C. 552a(e)(4). The Department of Justice has published a full list of routine uses for its collection of voter information in the system-of-records notice (SORN) titled JUSTICE/CRT-001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); 82 Fed. Reg. 24,147 (May 25, 2017). The SORN states that its records are kept "in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51," 68 Fed. Reg. at 47,611, and the cited regulation makes clear that the Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R.

0.50(a). The SORN thus covers the NVRA, HAVA, and the CRA as statutes for routine use.[10]

The SORN also identifies the categories of individuals on whom records are maintained, 5 U.S.C. 552a(e)(4)(B), including "[s]ubjects of investigations, [and] victims," 68 Fed. Reg. at 47,611. The term "subject[]" is a "term[] of art in the context of DOJ investigations," *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted), which, for as long as the relevant SORN has existed, has included anyone whose "conduct is within the scope of the . . . investigation," U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#. Persons who appear in a statewide voter registration list are "[s]ubjects of investigations," as their registrations are within the scope of the Division's investigation into list maintenance; and because votes cast by eligible voters may be diluted by votes cast by ineligible voters, *see*

[10] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited Aug. 17, 2026).

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021), eligible voters are potential "victims" of NVRA and HAVA noncompliance, 68 Fed. Reg. at 47,611. The Privacy Act therefore provides no basis to dismiss the United States' Complaint.

### C. The United States' demand complied with the E-Government Act.

New Mexico argued below that the United States failed to comply with the E-Government Act because it did not allege that it conducted a privacy impact assessment (PIA). JA Vol. I at 175-176. The United States was not required to perform such an assessment. Under the E-Government Act, an agency must conduct a PIA before "initiating a new collection of information" in particular circumstances "if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons." E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(A)(ii) and (B)(i), 116 Stat. 2899-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). And a "collection of information" is—with certain exclusions noted below—the act of "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts

or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A)(i) and (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502 and 3601). The PIA requirement does not apply here for several reasons.

First, the Attorney General has not asked identical questions of nor imposed any reporting requirements on any persons in connection with the Department of Justice's demand for New Mexico's (or any State's) SVRL. E-Government Act § 208(b)(1)(B)(i); *cf.* 31 U.S.C. 5314(a) (mandating that the Secretary of the Treasury require individuals "to keep records, file reports, or keep records and file reports" whenever individuals engage in transactions or maintain relationships with "any person with a foreign financial agency").

Second, a "collection of information" does not include information collected during an investigation like the type the Department is carrying out here. "The term 'collection of information' . . . shall not include a collection of information described under [44 U.S.C. 3518(c)(1)]." 44

U.S.C. 3502(3)(B); *see* E-Government Act § 201. And Section 3518(c)(1)(B), in turn, excludes any collection of information "during the conduct of . . . an . . . investigation involving an agency against specific individuals or entities." The Department's investigation into New Mexico's compliance with the NVRA and HAVA falls squarely within this carve-out. *See* Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (slip op. at 33), https://www.justice.gov/olc/media/1440346/dl.

Third, the Attorney General has not "initiat[ed] a new collection of information." E-Government Act § 208(b)(1)(A)(ii) and (B)(i). "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Electronic Privacy Info. Ctr. (EPIC) v. United States Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C.), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019), nor does the term "new." *See* 44 U.S.C. 3502, 3601. Accordingly, courts give these terms their "ordinary meaning" and may consult dictionary definitions. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-568 (2012). "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to, originate, "start" (a course of action, practice, etc.).'" *EPIC*, 356 F. Supp.

3d at 89 (citation omitted; brackets in original) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002); *see Merriam-Webster's Collegiate Dictionary* 780 (10th ed. 2002) (defining "new" as "having existed or having been made but a short time" or "different from one of the same category that has existed previously").

The demand in this case did not begin any new collection of information. The Attorney General demanded that New Mexico provide the State's SVRL, which the State was required to "define[], maintain[], and administer[] at the State level." 52 U.S.C. 21083(a)(1)(A). Ever since the passage of HAVA, an SVRL must "contain[] the name and registration information of every legally registered voter in the State and assign[] a unique identifier to each legally registered voter in the State." *Ibid.*; *see generally* 52 U.S.C. 21083(a). Seeking information already maintained by the State due to *pre-existing* "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A)(i) (defining "collection of information"), is not the "*initiat*[*ion* of] a *new* collection of information," E-Government Act § 208(b)(1)(A)(ii) (emphasis added).

### D. Federal law preempts any contrary New Mexico privacy law.

Finally, defendants argued that New Mexico law requires the redaction of certain portions of the SVRL before it may be shared. *See* JA Vol. I at 54-55 (citing New Mexico law); JA Vol. I at 132-133, 159-160, 167. State law does not permit New Mexico to defy federal law. For the reasons explained above, the United States is entitled under federal law to compel and inspect New Mexico's unredacted SVRL. To the extent state law prohibits New Mexico from complying with that demand, state law must yield. *See* U.S. Const. Art. VI, Cl. 2; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'" (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001))).

The Constitution gives Congress authority to override state choices regarding the conduct of federal elections, including voters' privacy. U.S. Const. Art. I, § 4, Cl. 1. The Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional

elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Ibid.* (brackets in original) (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)). Title III imposes a "sweeping" obligation on election officials to preserve and, on request, produce registration records pertaining to federal elections, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) *(Lynd II)*, while imposing its own privacy protections for the records so produced, 52 U.S.C. 20704. If New Mexico's laws impose greater privacy protections that would bar production, they conflict with and thwart the enforcement of federal law and are therefore preempted. *See Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023) ("It is a bedrock rule . . . that federal law preempts state law when the two conflict.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order dismissing the United States' Title III claim and denying the United States' Motion to Compel, and remand with instructions to order Secretary Toulouse Oliver to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA and HAVA, as set forth above.

Further, because the district court's final order has deprived the Department of Justice of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court sh[ould] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962); *see* Fed. R. App. P. 2, 41(b). A decision in September would still allow the United States to work with New Mexico to take real steps to clean up its SVRL, if necessary, prior to the upcoming November 3, 2026, general election. The United States is confident that States will not ignore out-of-hand alerts from the United States that their SVRLs contain ineligible voters.

In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc. *See* Fed. R. App. P. 2, 40(d)(1).

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
MICHAEL T. HAYES
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803
andrew.braniff@usdoj.gov

Date: August 17, 2026

## STATEMENT REGARDING ORAL ARGUMENT

The United States believes that it is in all parties' interest to obtain a decision from this Court quickly given the upcoming November 3, 2026, general election. Accordingly, the United States is willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument, if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place in September 2026 or at an earlier special hearing.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: August 17, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 9001words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: August 17, 2026

# ATTACHMENT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No.: 1:25-cv-01193-JCH-JFR

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

Defendant,

and

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS,

Intervenor-Defendant,

and

COMMON CAUSE, CLAUDIA MEDINA, and JUSTIN ALLEN,

Intervenor-Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on Defendant Maggie Toulouse Oliver's Motion to Dismiss Pursuant to Federal Rule 12(b)(6) and Memorandum of Law in Support, Doc. 35; Intervenor-Defendant New Mexico Alliance for Retired Americans' Motion to Dismiss, Doc. 32; and Intervenor-Defendants Common Cause, Claudia Medina, and Justin Allen's Motion to Dismiss, Doc. 34. Defendants filed these motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure in opposition to the United States Department of Justice, Civil Rights Division's

("DOJ") complaint, Doc. 1 ("Complaint"), and its Motion to Compel Production of Records Demanded Pursuant to 52 U.S.C. § 20705, Doc. 2 ("Motion to Compel).

Having carefully reviewed the parties' briefs and supplemental authorities, the applicable law, arguments at the April 21, 2026, motion hearing, and being otherwise fully informed, the Court concludes the DOJ has not satisfied the requirements of 52 U.S.C. § 20703 of Title III of the Civil Rights Act of 1960. Accordingly, the Court will **GRANT** each motion to dismiss, Docs. 32, 34, 35 (collectively "Motions to Dismiss"); **DENY AS MOOT** the DOJ's Motion to Compel, Doc. 2; and will **DISMISS** the DOJ's Complaint, Doc. 1, **WITH PREJUDICE** for the reasons explained below.

## FACTUAL BACKGROUND

### I. New Mexico's Voting Registration List ("VRL")

Since 2019, New Mexico's voter data has been electronically stored in a secure database known as the State Elections, Registration & Voting Integrity Systems ("SERVIS"). NMSA 1978, § 1-5-30 (2019) (establishing electronic voter registration management system). SERVIS stores voters' personally identifiable information ("PII") after voters voluntarily submit their completed voter registration applications. *Id.*; *see also* NMSA 1978, § 1-4-47 (2023) (outlining automatic voter registration processes). That PII includes, inter alia, the voter's name, gender, physical address, mailing address, phone number, current party affiliation, date of birth, date of registration, and voting history for all state and local elections. NMSA 1978, § 1-4-5.4(B) (2019) (describing content of voter registration forms); § 1-4-47(B); NMAC § 1.10.35.8(A)(4). Pursuant to data sharing restrictions created by state law, the Secretary of State "shall furnish voter data" after the requestor satisfies certain requirements. *See* NMSA 1978, § 1-4-5.5(A), (B) (2015).

As the Secretary of State, Toulouse Oliver is the chief election official of New Mexico. Doc. 1 at 3 ¶ 8. In that role, she is responsible for managing SERVIS and the information contained therein, as well as coordinating New Mexico's adherence to the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501-20511, and the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901-21145. *See* § 1-5-30(A); NMSA 1978, § 1-5-3 (2005) (establishing voter record system regarding HAVA); *see also* 52 U.S.C. §§ 20509, 20701.

**II. The DOJ's Demand Letter**

On September 8, 2025, the DOJ sent Toulouse Oliver a letter requesting a copy of New Mexico's VRL.[1] Doc. 2-3 at 2. ("Demand Letter"); *see also* Doc. 1 at 5 ¶¶ 19-20. To fully comply with the demand, the DOJ specifically requested, "The electronic copy of the statewide VRL should contain *all fields*[.]" Doc. 2-3 at 2. Meaning, the DOJ expected Toulouse Oliver to turn over an electronic copy of New Mexico's VRL including each voter's "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number. . . ." *Id.* The DOJ asserted this request was made pursuant to its authority under the NVRA, HAVA, and Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706.[2] *See* Doc. 2-3 at 2, 3; *see also* Doc. 1 at 3 ¶ 9 (citing the NVRA and HAVA). The

[1] This was apparently the second letter the DOJ sent Toulouse Oliver. *See* Doc. 35 at 18. The first was a letter dated August 14, 2025, and included the same demand for New Mexico's VRL. *Id.*; Doc. 107 at 8:3-4. It also stated the DOJ "had already 'received New Mexico's statewide voter registration list[.]'" Doc. 35 at 18. In her response, Toulouse Oliver purportedly noted she had not shared the VRL with the DOJ. *See id.* These letters were not provided to the Court.

[2] The DOJ's recitation of Section 20703 in the Demand Letter is incomplete. *See* Doc. 2-3 at 3. It conspicuously omits the ultimate sentence, stating, "This demand shall contain a statement of the basis and the purpose therefor." *Compare* Doc. 2-3 at 3 *with* 52 U.S.C. § 20703.

Demand Letter also provided, "The purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA."[3] Doc. 2-3 at 3.

Toulouse Oliver responded two weeks later.[4] *See* Doc. 2-4. She stated she would "provide in-person or electronic access to a redacted voter file" and noted the DOJ "made no attempt to explain why [its] evaluation would require the inspection of unredacted private voter information that is otherwise protected by New Mexico law" and the Privacy Act of 1974, 5 U.S.C. § 552a.

---

[3] Defendants and amici curiae have thoroughly alerted the Court of the DOJ's potential ulterior motives in seeking voters' PII. *See* Doc. 32 at 5-6; Doc. 34 at 8, 8 n.7; Doc. 35 at 16-18; Doc. 89 at 10-14; Doc. 92 at 2-4. These are exemplified by the Executive Orders issued by the current Executive branch and agencies like the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") that have shared and reviewed protected voter data. *See, e.g.*, Exec. Order No. 14248, 90 Fed. Reg. 59 (Mar. 28, 2025) (titled "Preserving and Protecting the Integrity of American Elections" and directing DHS to "review each State's *publicly available* voter registration list and available records concerning voter list maintenance activities as required by 52 U.S.C. 20507 [of the CRA], alongside Federal immigration databases and State records requested, . . . for consistency with Federal requirements." (emphasis added)); Exec. Order No. 14399, 91 Fed. Reg. 59 (Apr. 3, 2026) (titled "Ensuring Citizenship Verification and Integrity in Federal Elections" and directing DHS to compile a "State Citizenship List" in order to "assist in verifying identity and Federal election voter eligibility"). Other districts have also noted these events. *See Weber*, 816 F. Supp. 3d at 1184 ("It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database."); *Schmidt*, 2026 WL 1850016, at *2 ("The quiet parts do not help. Public statements from government officials reveal its intentions: to create a nationwide voter-database, for potential weaponization in future elections; as a 'fishing expedition,' hope to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement.").

The Court has not considered these arguments, associated documents, or events while ruling on the Motions to Dismiss, however. *See* Fed. R. Civ. P. 12(d) (noting a court cannot consider "matters outside the pleadings"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (outlining limited exceptions to considering documents outside the pleadings and those subject to judicial notice); *accord Bellows*, 2026 WL 1430481, at *3 n.6 ("Fortunately for the United States, this matter is before me on motions to dismiss, and under the applicable standard, the only facts that I consider are those contained in the United States' Complaint and its attachments, which I take as true.").

[4] The Complaint alleges this letter was sent a day prior on September 23, 2025. Doc. 1 at 7 ¶¶ 25, 26. Yet, the copy of the letter the DOJ filed is dated September 22, 2025. Doc. 2-4 at 2.

Doc. 2-4 at 2, 3. Toulouse Oliver also emphasized New Mexico's full compliance with the CRA, the NVRA, and HAVA. *Id.* at 2.

Two months later, the DOJ sued Toulouse Oliver on a single count under the CRA. *See* Doc. 1 at 7-8. The Complaint alleges the DOJ sent the Demand Letter "[b]ased on a review of the 2024 [Election Administration Voting Survey] Report[5] . . . seeking information regarding New Mexico's compliance with federal election law." *Id.* at 5 ¶ 18 (footnote added). The DOJ contemporaneously filed its Motion to Compel seeking production of the same documents and information. Doc. 2.

Soon thereafter, the Court granted Intervenor-Defendants Common Cause, Claudia Medina, and Justin Allen (collectively "Common Cause") and New Mexico Alliance for Retired Americans' ("NM Alliance") unopposed motions to intervene as defendants. Docs. 7, 9, 21, 25. The Court also granted three amici curiae leave to file their respective amicus briefs. *See* Docs. 87, 88, 91; *see also* Doc. 89 (amicus brief of Seventeen States and the District of Columbia[6]); Doc. 90 (amicus brief of Bipartisan Former State Secretaries of State Nationwide); Doc. 92 (amicus brief of the Democratic National Committee). Each Defendant then filed their respective motion to dismiss, arguing the CRA fails to provide a legal basis for the DOJ's suit. *See* Doc. 32 at 7-14; Doc. 34 at 9-15; Doc. 35 at 21-27.

---

[5] HAVA established the United States Election Assistance Commission ("EAC") in 2002. EAC, *About the EAC*, http://eac.gov/about (last visited July 8, 2026). It is "an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the election process." *Id.* The EAC conducts the biennial Election Administration Voting Survey ("EAVS") and produces a report. *See Election Administration and Voting Survey 2024 Comprehensive Report*, U.S. Election Assistance Comm'n (June 2025), https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf.

[6] The states include Maryland, Minnesota, Arizona, California, Colorado, Delaware, District of Columbia, Hawai'i, Illinois, Maine, Michigan, Nevada, New Jersey, New York, Oregon, Rhode Island, Vermont, and Washington.

The Court held a hearing on the parties' Motions to Dismiss on April 21, 2026. *See* Doc. 103 (Clerk's Minutes); Doc. 107 (Transcript). After hearing each party's argument,[7] the Court took the matter under advisement. Doc. 103 at 1.

## III. Contemporaneous Demand Letters and Nationwide Litigation

The DOJ has made the same demand for statewide VRLs of forty-eight states and the District of Columbia ("D.C.").[8] After thirty states and D.C. did not comply with the DOJ's request, the DOJ sued each state to compel production of their VRLs.[9] To date, twelve of these cases have

---

[7] The DOJ offered a multitude of facts and legal contentions not in its briefing. This included substantiating "the basis" for the DOJ's demand by pointing to (1) congressional intent that "the DOJ be able to conduct an independent review of each state's list," Doc. 107 at 42:4-13 (referring to Doc. 2-3 at 2 n.1); (2) EAVS Report data about New Mexico's duplicate registrations and the percentage of removed-voters, *id.* at 44:17-24; and (3) a "facial violation" concerning New Mexico's HAVA identifiers. *Id.* at 45:4, 4-7. These new facts and arguments fall outside the content the Court considers when ruling on a motion to dismiss. *See Tellabs, Inc.*, 551 U.S. at 322.

[8] The status of each of these cases is evolving. *See Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (July 8, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information (last viewed July 8, 2026); *see also Justice Department Sues Five Additional States for Failure to Produce Voter Rolls*, U.S. Dep't of Just. Off. of Pub. Affs. (Feb. 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-five-additional-states-failure-produce-voter-rolls (last viewed July 13, 2026).

[9] In fifteen of those cases, the DOJ asserts a single claim under the CRA that is nearly identical to the one filed here. *See, e.g.*, Complaint, *United States v. DeMarinis*, No. 1:25-cv-03934, ECF No. 1 at 7-8 (D. Md. Dec. 1, 2025); Complaint, *United States v. Copeland Hanzas*, No. 2:25-cv-00903, ECF No. 1 at 7-8 (D. Vt. Dec. 1, 2025); Complaint, *United States v. Albence*, No. 1:25-cv-01453, ECF No. 1 at 10-11 (D. Del. Dec. 2, 2025); Complaint, *United States v. Amore*, No. 1:25-CV-00639, ECF No. 1 at 7-8 (D. R.I. Dec. 2, 2025); Complaint, *United States v. Hobbs*, No. 3:25-cv-06078, ECF No. 1 at 7-8 (W.D. Wash. Dec. 2, 2025); Complaint, *United States v. Griswold*, No. 1:25-cv-03967, ECF No. 1 at 6-7 (D. Colo. Dec. 11, 2025); *United States v. Nago*, No. 1:25-cv-00522, ECF No. 1 at 8-9 (D. Haw. Dec. 11, 2025); Complaint, *United States v. Galvin*, No. 1:25-cv-13816, ECF No. 1 at 7-8 (D. Mass. Dec. 11, 2025); Complaint, *United States v. Aguilar*, No. 3:25-cv-00728, ECF No. 1 at 8 (D. Nev. Dec. 11, 2025); Complaint, *United States v. Wis. Elections Comm'n*, No. 3:25-cv-01036, ECF No. 1 at 8-9 (W.D. Wis. Dec. 18, 2026); Complaint, *United States v. Raffensperger*, No. 25-cv-00548, ECF No. 1 at 8-9 (M.D. Ga. Dec. 18, 2025) (subsequently dismissed without prejudice for lack of subject matter jurisdiction); Complaint, *United States v. Matthews*, No. 3:25-cv-03398, ECF No. 4 at 8-9 (C.D. Ill. Dec. 19, 2025); Errata Corrected Complaint, *United States v. D.C. Bd. of Elections*, No. 1:25-cv-04403, ECF No. 3-1 at

been dismissed. *See United States v. Weber*, 816 F. Supp. 3d 1168, 1196 (C.D. Cal. Jan. 15, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, 819 F. Supp. 3d 753, 770 (W.D. Mich. Feb. 10), *aff'd* No. 26-1225, 2026 WL 1815425, at *1, 8 (6th Cir. June 24, 2026); *United States v. Galvin*, Civil No. 25-13816, 2026 WL 972129, at *6 (D. Mass. Apr. 9, 2026), *appeal docketed* No. 26-1657 (1st Cir. June 9, 2026); *United States v. Amore*, C.A. No. 25-cv-00639, 2026 WL 1040637, at *6 (D.R.I. Apr. 17, 2026), *appeal docketed* No. 26-1665 (1st Cir. June 9, 2026); *United States v. Fontes*, No. CV-26-00066, 2026 WL 1177244, at *7 (D. Ariz. Apr. 28, 2026); *United States v. Bellows*, No. 1:25-cv-00468, 2026 WL 1430481, at *10 (D. Me. May 21, 2026); *United States v. Wis. Elections Comm'n*, 25-cv-1036, 2026 WL 1430354, at *5 (W.D. Wis. May 21, 2026); *United States v. DeMarinis*, Civil Case No. 25-cv-03934, 2026 WL 1780586, at *6 (D. Md. June 18, 2026), *appeal docketed* No. 26-1878 (4th Cir. July 13, 2026); *United States v. Schmidt*, No. 2:25-cv-01481, 2026 WL 1850016, at *1, 3 (W.D. Pa. June 27, 2026); *United States v. Scanlan*, Case No. 25-cv-371, 2026 WL 1864054, at *8, 10 (D.N.H. June 29, 2026), *appeal docketed* No. 26-1783 (1st Cir. July 7, 2026); *United States v. Bd. of Elections of the State of N.Y.*, 1:25-CV-1338, 2026 WL 1999921, at *1 (N.D.N.Y. July 10, 2026).

## LEGAL BACKGROUND

As outlined in the Elections Clause, the United States Constitution empowers all states to regulate and administer their elections: "The Times, Places and Manner of holding Elections for

---

7-8 (D.D.C. Dec. 19, 2025); Complaint, *United States v. Fontes*, No. 2:26-cv-00066, ECF No. at 7 (D. Ariz. Jan. 1, 2026); Complaint, *United States v. Thomas*, No. 3:26-cv-00021, ECF No. 1 at 7-8 (D. Conn. Jan. 6, 2026); Complaint, *United States v. Raffensperger*, No. 1:26-cv-00485, ECF No. 1 at 9 (N.D. Ga. Jan. 23, 2026).

Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations. . . ." U.S. Const. art. I, § 4, cl. 1. "The Framers recognized the difficulty of crafting election laws 'applicable to every probable change in the situation of the country.' So instead of constitutionalizing election law, they decided that a 'discretionary power over elections' needed to be lodged 'somewhere.'" *Watson v. Republican Nat'l Comm.*, No. 24-1260, 2026 WL 1855462, at *12 (U.S. June 29, 2026) (quoting The Federalist No. 59, at 362 (C. Rossiter ed. 1961)). In many ways, that power was granted to the states to carry the mantel of ensuring elections run smoothly by regulating voter registration, determining voter eligibility, and maintaining voter rolls. *See Foster v. Love*, 522 U.S. 67, 69 (1997); *United States v. Benson*, No. 26-1225, 2026 WL 1815425, at *1 (6th Cir. June 24, 2026) ("States do most of the heavy lifting in overseeing federal elections.").

States' control over elections is not completely unfettered, however. *See Foster*, 522 U.S. at 69. The Elections Clause also "empowers Congress to pre-empt state regulations governing the 'Times, Places and Manner' of holding" elections. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013). Pertinent here, Congress enacted three federal statutes—the CRA, 52 U.S.C. §§ 20701-20706, the NVRA, 52 U.S.C. §§ 20501-20511, and HAVA, 52 U.S.C. §§ 20901-21145—that created specific, narrow roles for the federal government in election regulation. To better understand the DOJ's claim, the Court provides a short summary of each statute. The Court begins chronologically and turns first to the CRA, which predates the NVRA and HAVA by decades. While the DOJ did not file claims under the latter two statutes, both are still relevant to its suit.

## I. Title III of the Civil Rights Act

Passed in 1963, Congress enacted the CRA to combat racially biased voter suppression and disenfranchisement rampant during the Jim Crow era. Congress emphasized the statute's purpose was "to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race," and was meant to buttress the Attorney General "during any investigation it may conduct on complaints of a denial to vote." H.R. Rep. No. 86-956 at 7 (1959).[10] To effectuate this goal, Congress charges state election officials with "retain[ing] and preserv[ing], for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" 52 U.S.C. § 20701. The CRA also grants the Attorney General investigative authority:

> Any record or paper required by [S]ection 20701 . . . to be retained and preserved shall, upon demand in writing by the Attorney General . . . directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703.

Should a dispute result from such a demand, the "United States district court for the district in which a demand is made pursuant to [S]ection 20703 . . ., or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. The DOJ relies on these provisions to support its demand and claim.

[10] There are no claims of racially biased voter suppression in this case.

## II. The National Voter Registration Act

Thirty years after the CRA was passed, in 1993, Congress enacted the NVRA "against a backdrop of lackluster voter registration and political participation." *Fish v. Kobach*, 840 F.3d 710, 720 (10th Cir. 2016). To address these issues, the NVRA "has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). *See* 52 U.S.C. § 20501(b)(1)-(4) (outlining the NVRA's four purposes). Further, the NVRA "aims at regulating uniform voting laws and procedures because 'discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities.'" *Voter Ref. Found., LLC v. Torrez*, 160 F.4th 1068, 1079 (10th Cir. 2025) (quoting § 20501(a)(3)).

Amongst other requirements, the NVRA directs states to conduct a general program of voter list maintenance and to make certain records of their list-maintenance activities publicly available. *See* 52 U.S.C. §§ 20507(a), (i). Pursuant to certain boundaries, the NVRA also conserves the states' traditional authority for administering elections by giving states the flexibility and autonomy to design and operate a list-maintenance program within the statute's general parameters. § 20507(a)(4) (requiring "a reasonable effort to remove the names of ineligible voters"). If necessary, the Attorney General may pursue a civil enforcement action to investigate whether states are carrying out these statutory obligations. 52 U.S.C. § 20510(a).[11]

The Tenth Circuit recently interpreted the NVRA and whether it preempts pertinent New Mexico law controlling the publication of private voter data. *See Torrez*, 160 F.4th at 1072, 1081-

[11] No NVRA civil enforcement action has been filed here; and no documents have been demanded directed to records of list-maintenance activities.

84. Below, the district court ruled that the Voter Reference Foundation ("VRF")—an organization that obtained and published states' voter data on its public website—could continue to share each New Mexico "voter's name, birth year, registration address, registration date, party affiliation, registration status, precinct, and voting participation history." *Id.* at 1073, 1073-75. On appeal, the *Torrez* Court concluded, inter alia: (1) the NVRA preempts New Mexico privacy law restricting the use and sharing of voter data; and (2) the Secretary of State violated the NVRA's "enumerated purposes of public inspection and circulation of voter data" by "refusing to produce the requested voter data per" state law use-restrictions. *Id.* at 1083, 1088; *see id.* at 1081-84. The Tenth Circuit added an important caveat to these conclusions, however:

> To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation . . . The State may limit such sensitive information, but as we underscore, restricting uses and/or publication altogether is prohibited by the NVRA.

*Id.* at 1083 n.14 (citing §1-4-5.5(B)).[12] In other words, under Tenth Circuit precedent, the NVRA does not provide for unfettered public disclosure of voters' PII. Because *Torrez* concerns the NVRA rather than the CRA, *Torrez* is not dispositive in deciding the Motions to Dismiss but its conclusion is informative.[13]

---

[12] Other federal courts have concluded similarly. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021) (noting that information subject to redaction can include personal information of those subject to criminal investigations, amongst other exceptions); *Bellows*, 2026 WL at 1430481, *9 ("[N]either [the NVRA or HAVA] give[] the United States the power to compel Maine to produce its current computerized SVRL 'with all fields.'"); *cf. Bd. of Elections*, 2026 WL 1999921, at *11 ([T] the Government's NVRA claim fails for a much simpler reason: [52 U.S.C.] § 20507(i) does not require the disclosure of voter registration lists at all.").

[13] Defendants argue *Torrez* "dooms [the] DOJ's claim" for the unredacted VRL because Toulouse Oliver may redact voters' PII before providing it to a third party. Doc. 32 at 17; *see* Doc. 34 at 17; Doc. 35 at 26; 160 F.4th at 1083 n.14. However, as noted, *Torrez* does not address the CRA.

## III. The Help America Vote Act

In 2002, Congress codified HAVA. *See* Pub. L. No. 107-252, 116 Stat. 1666 (2002). In an effort to improve voting systems and voter access, HAVA requires states adopt "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A). Specifically, states must "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." § 21083(a)(1)(A). "[O]nly voters who are not registered or who are not eligible to vote are removed from the computerized list," as well as duplicate names. § 21083(a)(2)(B)(i), (iii). Thus, the SVRL serves as states' "single system for storing and managing the official list of registered voters." § 21083(a)(1)(A)(i). HAVA contains no disclosure requirements.

Within this statutory framework, the "specific choices on the methods of complying with the requirements of [HAVA] shall be left to the discretion of the State." 52 U.S.C. § 21085. If the Attorney General believes these provisions are not being followed, then the Attorney General may "bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief." 52 U.S.C. § 21111.[14]

[14] No HAVA civil action has been brought here, nor has claim demanding the production of the State's VRL.

## LEGAL STANDARD

### I. "Appropriate Process" or Special Statutory Proceeding

Section 20705 of the CRA grants federal district courts "jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. The CRA does not define "appropriate process," however. To fill the gap, the DOJ asserts it is entitled to a "special statutory proceeding" after "filing an application for an order under Title III," because it "is not the commencement of an ordinary, traditional civil action" and instead is "merely a "*pre-suit* investigation."[15] Doc. 51 at 9 (text only). Meaning, the Court's role in considering the merits of the DOJ's suit should be curtailed and the Federal Rules of Civil Procedure need not apply. *See id.*

---

[15] The DOJ's contentions about its motivations to sue are inapposite. In one regard, the Government posits New Mexico has committed a "facial violation" of the NVRA and HAVA, so it needed to bring an enforcement action. *See* Doc. 107 at 45:4; *see also id.* at 43:25-44:19 (explaining New Mexico's "abnormal" percentages and duplicate registrations documented in the EAVS report). At the same time, the DOJ frames the CRA as a "pre-suit investigative tool" that is part of its "trust but verify approach" concerning the State's VRL maintenance under the NVRA and HAVA. *Id.* at 34:20-21, 35:15, 40:24-25 (describing the suit as "an independent assessment consistent with this notion in the federal model of trust but verify"); *see also* Doc. 51 at 9 ("The CRA differs from ordinary civil actions because its 'chief purpose' is to facilitate *pre-suit* investigation."). The paradox of these contentions is obvious. Either the DOJ is suing to enforce New Mexico's statutory compliance or it is investigating a suspected violation of the NVRA and HAVA.

These arguments are not unique to this case. *See, e.g.*, *Bellows*, 2026 WL 1430481, at *9 ("Stated a bit more colloquially, the United States has filed a HAVA action in search of a HAVA violation, which is not the preferred order of things in the course of civil litigation."); *id.* at *10 ("[T]he United States' attorney characterized the federal government's role in the voter-registration scheme created by HAVA and the NVRA as 'one of trust but verify.' But the text and structure of those statutes require a greater degree of trust than this Department of Justice would perhaps like to give[.]" (text only)); *Benson*, 819 F. Supp. 3d at 759 ("There is simply no basis in the Federal Rules of Civil Procedure for the United States's suggestion that it can file a HAVA claim, allege no violations of HAVA, and obtain information to support its (as-yet-nonexistent) claim via discovery."); *Galvin*, 2026 WL 972129, at *6 ("The only support the United States marshals for its proposed interpretation are its twin contentions that Title III was enacted as an investigatory tool to identify violations of federal election law, and that the Attorney General cannot be required to prove a violation before seeking evidence of the same. These arguments miss the point." (text only)).

at 10-12. Common Cause opposes and argues the Federal Rules of Civil Procedure govern as usual. Doc. 34 at 21-22.

Every other district court that addressed this argument has applied the Federal Rules of Civil Procedure. *See Bellows*, 2026 WL 1430481, at *5 n.8 ("[N]o district court has adopted the United States' view[.]"); *Weber*, 816 F. Supp. 3d at 1180-81; *Oregon*, 2026 WL 318402, at *8; *Benson*, 819 F. Supp. 3d at 758-59; *Amore*, 2026 WL 1040637, at *3; *Fontes*, 2026 WL 1177244, at *1-2; *DeMarinis*, 2026 WL 1780586, at *2; *Scanlan*, 2026 WL 1864054, at *1, *1 n.2; *Bd. of Elections*, 2026 WL 1999921, at *6 ("[T]he Court joins the many other district courts which have determined that a court's role in evaluating these Title III claims is not so limited."). And many relied on *United States v. Powell*, 379 U.S. 48 (1964), to do so.[16] *See Weber*, 816 F. Supp. 3d at 1182, 1182 n.15; *Oregon*, 2026 WL 318402, at *8; *Fontes*, 2026 WL 1177244, at *1; *Bellows*, 2026 WL 1430481, at *5; *DeMarinis*, 2026 WL 1780586, at *2; *Bd. of Elections*, 2026 WL 1999921, at *6. To date, no district court has sided with the DOJ.

Here, the Court concludes that the "appropriate process" is guided by the Federal Rules of Civil Procedure. Nothing about the DOJ's suit indicates those Rules should be displaced. By submitting a traditional civil complaint and motion to compel—rather than an administrative subpoena, for instance—the DOJ voluntarily invoked the jurisdiction of the federal courts and began the usual litigation process. As Rule 1(a) of the Federal Rules of Civil Procedure squarely states, "These rules govern the procedure in *all* civil actions and proceedings in the United States

---

[16] There, the United States Supreme Court considered three provisions of the Internal Revenue Code that granted courts the general power to enforce the Internal Revenue Service's summonses with "jurisdiction by appropriate process to compel." *See* 26 U.S.C. §§ 7402(b), 7604(a), (b); *Powell*, 379 U.S. at 52. Because these statutes were silent as to the "applicable procedures to be followed in invoking the court's jurisdiction," the Supreme Court concluded the Federal Rules of Civil Procedure applied to adjudications under the statutes. *Powell*, 378 U.S. at 58 n.18.

district courts[.]" (emphasis added). Thus, this suit falls squarely within the gambit of the ordinary, civil litigation processes.[17] Accordingly, the viability of the DOJ's single claim will be analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Rule 12(b)(6) Motion to Dismiss Standards

The standards attendant to a Rule 12(b)(6) motion are well known. By bringing such a motion, Defendants assert that, even if the facts alleged by the DOJ are true, the Complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court also looks to Rule 8(a)(2) and how "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will accept as true all factual allegations contained in the Complaint, *id.*, and it must construe the allegations in the light most favorable to the DOJ. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 558 (2007). Legal conclusions shrouded as factual allegations are not given the same presumption of truthfulness, however. *See Iqbal*, 556 U.S. at 678-79. When the allegations in a complaint cannot raise a plausible claim of "entitlement to relief," then the cause of action should be dismissed. *Twombly*, 550 U.S. at 558.

## DISCUSSION

The overarching issue in this case is simple: under the CRA, is the DOJ's written demand sufficient to compel production of New Mexico's complete and unredacted VRL? Defendants

[17] Were the Court to conclude otherwise, its analysis of the dispositive issue—whether the DOJ's written demand meets the requirements of Section 20703—would be the same. *See Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (noting that even in a summary proceeding, the court must decide as a matter of law whether the records can be properly demanded under Title III); *see also Wis. Elections Comm'n*, 2026 WL 1430354, at *2 ("The government disputes whether Rule 12(b)(6) applies in this case," but "analysis of the dispositive issue would be the same either way[.]"). Regardless, the DOJ provides no insight as to what constitutes "appropriate process" or whether a procedural exception would apply. *See, e.g.*, Fed. R. Civ. P. 1(a) (outlining that the federal rules apply "except as stated in Rule 81").

argue it is not because (1) the DOJ has failed to heed the requirements of Section 20703 of the CRA; (2) the DOJ's demand exceeds the scope of the CRA; and (3) the demand for unredacted voter information violates state and federal privacy law. *See generally* Docs. 32, 34, 35. Because Defendants' first argument resolves the Motions to Dismiss, the Court does not reach the remaining contentions.

The DOJ's authority to request election records under the CRA is a creature of statute. In this way, the Court looks to the plain language of Section 20703. *See Ross v. Blake*, 578 U.S. 632, 638 (2016) ("Statutory interpretation, as we always say, begins with the text."). When the language of a statute is clear and unambiguous—such as here—the Court need not read beyond the text. *See United States v. Husted*, 545 F.3d 1240, 1245 (10th Cir. 2008). "[A]fter all, there can be no greater statement of legislative intent than an unambiguous statute itself." *Id.*

Section 20703 provides that "[a]ny record or paper required[18] . . . to be retained and preserved" under Section 20701 "shall, upon demand in writing by the Attorney General . . . be made available for inspection, reproduction, and copying . . . This demand shall contain a statement of the basis and the purpose therefor." (footnote added).

Two Fifth Circuit cases—published soon after the CRA's codification—recognize Section 20703's requirements for crafting a successful demand. In *Kennedy v. Lynd*, the Fifth Circuit

[18] The Court need not decide whether New Mexico's VRL is a "record or paper" subject to the retention and demand provisions of Section 20701. While not raised here, the Court is aware this issue has been contested in multiple cases and was a reason for dismissal. *See DeMarinis*, 2026 WL 1780586, at *5 ("[T]his Court joins every court to have addressed this issue in concluding that an SVRL is not a record or paper that a state must produce to the United States under the CRA."); *Benson*, 2026 WL 1815425, at *6-7; *Fontes*, 2026 WL 1177244, at *5-7; *Bellows*, 2026 WL 1430481, at *7; *Wis. Elections Comm'n*, 2026 WL 1430354, at *4-5; *Scanlan*, 2026 WL 1864054, at *6; *Schmidt*, 2026 WL 1850016, at *2; *Bd. of Elections*, 2026 WL 1999921, at *8-11. No party argued the issue here.

concluded the Attorney General's following demand "adequately stated the basis and the purpose" for its record request:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229, 229 n.6 (text only). Thereafter, in *Kennedy v. Bruce*, the Fifth Circuit again upheld the Attorney General's properly stated demand:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

298 F.2d 860, 861 (5th Cir. 1962) (text only).

These cases also show that the DOJ wrote statutorily compliant demand letters sixty years ago. Now, Defendants contend the DOJ's Demand Letter fails to do the same as it does not meet the requirements of Section 20703. *See* Doc. 32 at 9-13; Doc. 34 at 10-13; Doc. 35 at 22-24. The Court agrees—the DOJ's Demand Letter lacks key components of Section 20703.

Turning first to the "demand," the statutory text requires the Attorney General send a "demand in writing" with "the basis and the purpose" detailed therein. § 20703. Here, based on the CRA's plain language, the measure of the DOJ's written demand is the Demand Letter alone, Doc. 2-3. *See* Doc. 32 at 9-10 (NM Alliance arguing the Court may only consider the Demand Letter). Subsequent forms, court filings, or "a curing elaboration letter" cannot retrospectively supplement the DOJ's September 8, 2025, correspondence. Doc. 102 at 2; *see Galvin*, 2026 WL

972129, at *3 ("The statute therefore directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand 'contain[ed] a statement of the basis' for the demand."); *Oregon*, 2026 WL 318402, at *9 ("[The DOJ]'s patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis' fails."); *cf. Benson*, 2026 WL 1815425, at *8 ("None of the three letters contains both a statement of the basis along with the purpose of the government's request[.]"). Concluding otherwise would be inapposite to the language of the CRA. "The statute says what it says—or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 426 (2018).

Next, looking at the final sentence of Section 20703—"[t]his demand *shall* contain a statement of the basis *and* the purpose therefor,"—Congress "impose[d] a mandatory command" with the use of the word "shall." § 20703 (emphasis added); *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("'Shall' means 'must'"). Moreover, "the use of the conjunctive 'and,' in the phrase . . . clearly indicates that the [DOJ] cannot satisfy the statutory mandate by simply" supplying only "the basis" or only "the purpose." *Qwest Commc'ns Int'l Inc. v. FCC*, 398 F.3d 1222, 1236 (10th Cir. 2005). "'And,' in grammatical terms, is of course a conjunction—a word whose function is to connect specified items." *Pulsifer v. United States*, 601 U.S. 124, 133 (2024) (noting "and" means "along with or together with"). In this way, if the Attorney General's written demand only includes a statement of "the basis," but not "the purpose," or vice versa, it is statutorily insufficient. *See, e.g.*, *Benson*, 2026 WL at 1815425, *8 ("The government cannot pinpoint a Title III demand with a statement of the basis *and* purpose . . . The statutory text suggests that any demand must contain both."); *Scanlan*, 2026 WL 1864054, at *6 ("To read the statute as satisfied by a statement of either

basis or purpose alone would run afoul of the ordinary rules of statutory construction by rendering one half of the phrase superfluous.").

Further, by using the word "the" before "basis" and "purpose," Section 20703 requires the Attorney General outline both the discrete factual and the legal motivations underlying the request. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the "definite article 'the'" and indefinite article "a"); *Scanlan*, 2026 WL 1864054, at *6 ("On its plain terms, this construction signals that 'basis' and 'purpose' are separate, non-overlapping requirements, each of which must independently be satisfied."). In other words, where "the basis" is founded in the facts of the investigation, "the purpose" is rooted in the DOJ's legal rationale. *See, e.g.*, *Weber*, 816 F. Supp. 3d at 1184 ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."); *Oregon*, 2026 WL 318402, at *9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."); *Galvin*, 2026 WL 972129, at *4 (finding the DOJ's letter insufficient because it "contains nothing that could fairly be characterized as the factual basis for the demand"); *Amore*, 2026 WL 1040637, at *11 ("To read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose.'"); *Scanlan*, 2026 WL 1864054, at *7 ("If 'the purpose' denotes the investigative objective of the demand, it follows that 'the basis' in this context is the evidentiary or factual predicate giving rise to the demand in the first place.").

Here, the DOJ's Demand Letter fails because it altogether lacks an identifiable "basis." Nowhere does the DOJ articulate any factual suggestion that New Mexico has violated the NVRA or HAVA, indicate the State has a pattern or practice of noncompliance with the same, nor does it explain how the unredacted PII is necessary to evaluate compliance with the NVRA and HAVA.

At most, the Demand Letter conveys the Attorney General's generalized question about New Mexico's VRL maintenance. Had the DOJ identified as the factual "basis" statistical anomalies within New Mexico's voter registration data or conduct associated with the State's VRL maintenance practices, then the outcome may have been different. Instead, the DOJ's Demand Letter is nearly identical to that in *Galvin* where "the Attorney General offered no basis—none—and the demand was therefore facially inadequate." 2026 WL at 972129, at *4. In the end, the Court, like Toulouse Oliver, is left to speculate as to "the basis" that led the DOJ to send its records request. This does not satisfy Section 20703.

Consequently, the DOJ has failed to state a claim under the CRA. Because the Demand Letter lacks "the basis" for the DOJ's records request, the Court need not determine whether the Government provided the sufficient "purpose." *See Scanlan*, 2026 WL 1864054, at *8 ("The absence of any basis is independently fatal to the United States' claim and provides an independent ground for dismissal of the CRA claim."). Hence, the Court will grant Defendants' Motions to Dismiss, Docs. 32, 34, 35; and deny the DOJ's Motion to Compel, Doc. 2.[19]

**CONCLUSION**

The DOJ offered no "basis" whatsoever in its Demand Letter. Because of this, the DOJ has failed to provide "the basis and the purpose" mandated by Section 20703 of the CRA. Therefore, its Demand Letter is facially inadequate, and the Complaint fails to state a claim under Rule 12(b)(6). Doc. 1; *see Ashcroft*, 556 U.S. at 678. Accordingly, the Court does not reach Defendants'

---

[19] Ordinarily, the Court allows a plaintiff the opportunity to amend its complaint prior to dismissal. Although, for the reasons discussed above, the DOJ cannot remedy the shortcomings in its Demand Letter with an amendment or by sending "a curing amendment letter." Doc. 102 at 2. In this way, amendment would be futile. Accordingly, "dismissal with prejudice is appropriate." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

other arguments for dismissal. Ultimately, for all the reasons explained above, the Court hereby orders the following:

1. Defendant Maggie Toulouse Oliver's Motion to Dismiss Pursuant to Federal Rule 12(b)(6) and Memorandum of Law in Support, Doc. 35, is **GRANTED**;

2. Intervenor-Defendant New Mexico Alliance for Retired Americans' Motion to Dismiss, Doc. 32, is **GRANTED**;

3. Intervenor-Defendants Common Cause, Claudia Medina, and Justin Allen's Motion to Dismiss, Doc. 34, is **GRANTED**;

4. The Department of Justice, Civil Rights Division's Motion to Compel Production of Records Demanded Pursuant to 52 U.S.C. § 20705, Doc. 2, is **DENIED AS MOOT**; and

5. Pursuant to Federal Rule of Civil Procedure 12(b)(6), this case is hereby **DISMISSED WITH PREJUDICE**.

The Court will separately enter a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SENIOR UNITED STATES DISTRICT JUDGE

# ATTACHMENT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 1:25-cv-01193-JCH-JFR

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

Defendant,

and

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS,

Intervenor-Defendant,

and

COMMON CAUSE, CLAUDIA MEDINA, and JUSTIN ALLEN,

Intervenor-Defendants.

**JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 58(a), and consistent with the Memorandum Opinion and Order Granting Defendants' Motions to Dismiss filed contemporaneously herewith, the Court issues its separate judgment finally disposing of this civil case. It is ordered that this civil action is **DISMISSED WITH PREJUDICE**.

SENIOR UNITED STATES DISTRICT JUDGE