**Case No. 26-2126**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,
*Defendant-Appellee,*

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; CLAUDIA MEDINA; JUSTIN ALLEN,
*Intervenors-Appellees.*

Appeal from the
United States District Court for the District of New Mexico
The Honorable Judge Judith C. Herrera
Case No. 1:25-cv-1193-JCH-JFR

---

# BRIEF FOR MAGGIE TOULOUSE OLIVER AS APPELLEE

RAÚL TORREZ
*Attorney General*
Bailey Colfax
*Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060
bcolfax@nmdoj.gov

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i
TABLE OF AUTHORITIES .......... iii
STATEMENT OF RELATED APPEALS .......... x
GLOSSARY OF TERMS .......... xi
JURISDICTIONAL STATEMENT .......... xii
STATEMENT OF THE ISSUES .......... xiii
INTRODUCTION .......... 1
STATEMENT OF THE CASE .......... 3
Constitutional and Statutory Background .......... 3
Title III of the Civil Rights Act of 1960 .......... 3
The National Voter Registration Act .......... 4
The Help America Vote Act .......... 5
Factual Background .......... 5
The New Mexico Secretary of State's voter roll practices .......... 5
The Department of Justice's letter and responses .......... 7
Procedural History .......... 11
ARGUMENT .......... 11
I. The district court correctly found that it was not required to rubber stamp the DOJ's demand. .......... 12
II. The district court correctly found the DOJ failed to meet Title III's requirements. .......... 16
A. The DOJ failed to state any "basis" in its demand letter .......... 17
B. The DOJ did not state a valid purpose behind its demand letter. .......... 21

III. Alternatively, and independently, the claim fails because the SVRL is not a record covered by Title III. ....................................... 26

IV. Finally, and again independently, DOJ's demand for an unredacted SVRL violates privacy laws. .......................................... 31

A. The DOJ's data collection violates the Privacy Act.................... 32

B. The DOJ failed to comply with the E-Government Act. ............ 37

C. State privacy laws require redaction of sensitive information. . 39

CONCLUSION ............................................................................ 40

STATEMENT ON ORAL ARGUMENT ............................................ 40

CERTIFICATE OF COMPLIANCE................................................. 42

## TABLE OF AUTHORITIES

**CASES:** **PAGE:**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ............3

*Becker v. United States*, 451 U.S. 1306 (1981) ..................................14

*Booth v. Hume Publ'g, Inc.*, 902 F.2d 925 (11th Cir. 1990) .................14

*Britt v. Naval Investigative Serv.*, 886 F.2d 544 (3d Cir. 1989) ............37

*Brooks v. Nacrelli*, 331 F. Supp. 1350 (E.D. Pa. 1971) .........................22

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) .................33

*Bufkin v. Collins*, 604 U.S. 369 (2025) .............................................27

*Daly v. United States*, 393 F.2d 873 (8th Cir. 1968) ............................13

*Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752 (2004) ..........................23

*Donaldson v. United States*, 400 U.S. 517 (1971) ...............................15

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018) .........32

*Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044 (10th Cir. 2023) ..............................................................26

*Garris v. FBI*, 937 F.3d 1284 (9th Cir. 2019) ....................................34

*Katzenbach v. McClung*, 379 U.S. 294 (1964) ..............................14, 23

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................14, 15, 21, 39

*Lingam v. Dish Network Corp.*, 167 F.4th 1094 (10th Cir. 2026) .........17

*Loughrin v. United States*, 573 U.S. 351 (2014) ................................22

*Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014) .................................27

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ........................................... ...............................30

*Murphy v. Smith*, 583 U.S. 220 (2018) .............................................28

*N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404 (1960) .............................13

*Patterson by Patterson v. F.B.I.*, 893 F.2d 595 (3d Cir. 1990) ..............33

*Pulsifer v. United States*, 601 U.S. 124 (2024) ....................................17

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ..............................................40

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ..............................................30

*S.E.C. v. Wencke*, 783 F.2d 829 (9th Cir. 1986) ..................................13

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ............................................17

*St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773 (10th Cir. 2000) .............17

*Steelcase, Inc. v. United States*, 165 F.3d 28 (6th Cir. 1998) ................39

*Tashjian v. Repub. Party of Conn.*, 479 U.S. 208 (1986) ........................3

*The N.Y. Times Co. v. Gonzales*, 459 F.3d 160 (2nd Cir. 2006) .............14

*United States v. Adams*, No. 3:26-cv-00019 (E.D. Ky.) *appeal United States v. Adams*, No. 26-5657 (6th Cir.) ................8

*United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev.) ..........................8

*United States v. Albence*, No. 1:25-cv-01453 (D. Del) .............................8

*United States v. Amore*, No. 1:25-cv-00639 (D.R.I) *appeal United States v. Amore*, No. 26-1665 (1st Cir.) .................8

*United States v. Beals*, No. 3:26-cv-00042 (E.D. Va) *appeal United States v. Beals*, No. 26-2002 (4th Cir.) .....................8

*United States v. Bellows*, No. 1:25-cv-00468 (D. Me) *appeal United States v. Bellows*, No. 26-1676 (1st Cir.) .................8

*United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich.) *appeal United States v. Benson*, No. 26-1225 (6th Cir.) ................8

*United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) ................................9, 16, 17, 18, 23, 26, 27, 28, 31

*United States v. Board of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y.) *appeal United States v. Bd. of Elections of the State of New York*, No. 26-2060 (2d Cir.) .............8

*United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026) ..............................16

*United States v. Caldwell*, No. 3:26-cv-02025 (D.N.J.) ..........................8

*United States v. DeMarinis,* No. 1:25-cv-03934 (D. Md) *appeal United States v. DeMarinis,* No. 26-1878 (4th Cir.) ...........8

*United States v. DeMarinis*, No. CV-SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026) ..................................................16

*United States v. Evans*, 1:25-cv-04403 (D.D.C.) *appeal United States v. Evans*, No. 26-5296 (D.C. Cir.) ................8

*United States v. Fontes*, No. 2:26-cv-00066 (D. Az.) *appeal United States v. Fontes*, No. 26-3609 (9th Cir.) ..................8

*United States v. Galvin*, No. 1:25-cv-13816 (D. Mass.) *appeal United States v. Galvin*, No. 26-1657 (1st Cir.) ..................8

*United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026) .........18, 20

*United States v. Griswold*, No. 1:25-cv-03967 (D. Colo.) *appeal United States v. Griswold*, No. 26-1326 (10th Cir.) ............8

*United States v. Griswold*, No. 1:25-cv-03967, 2026 WL 2235374 (D. Colo. Aug. 3, 2026) ..................................................16

*United States v. Hanzas*, No. 1:25-cv-00903 (D. Vt.) ............................8

*United States. v. Henderson*, No. 2:26-cv-00166 (D. Utah) ....................8

*United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash.) .......................9

*United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill.) *appeal United States v. Matthews*, No. 26-2695 (7th Cir.) .............8

*United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026) ............................................18, 22

*United States v. McGrane*, No. 1:26-cv-00197 (D. Idaho) .......................8

*United States v. Nago*, No. 1:25-cv-00522 (D. Haw.) ............................8

*United States v. Oregon*, No. 6:25-cv-01666 (D. Or.)
*appeal United States v. Oregon*, No. 26-1231 (9th Cir.) ................8

*United States v. Oregon*, 828 F. Supp. 3d 1092
(D. Or. 2026) .....................................................16, 22, 24

*United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa)
*appeal United States v. Pennsylvania*, No. 26-2684 (3d Cir.) ........8

*United States v. Powell*, 379 U.S. 48 (1964) ....................................15

*United States v. Raffensperger*, No. 1:26-cv-00485 (N.D. Ga.) ...............8

*United States v. Simon*, No. 0:25-cv-03761 (D. Minn.) .........................8

*United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H.)
*appeal United States v. Scanlan*, No. 26-1783 (1st Cir.) ...............8

*United States v. Scanlan*, No. 1:25-cv-00371, 2026 WL 1864054
(D.N.H. June 29, 2026) ...................................................17

*United States v. Thomas*, No. 3:26-cv-00021 (D. Ct.)
*appeal United States v. Thomas*, No. 26-2064 (2d Cir.) ................8

*United States v. Thomas*, No. 3:26-CV-21, 2026 WL 2070437
(D. Conn. July 17, 2026) ..................................................28

*United States v. Warner*, No. 2:26-cv-00156 (S.D.W.V.) ........................9

*United States v. Warner*, No. 2:26-CV-00156, 2026 WL 2018877
(S.D. W. Va. July 13, 2026) ...............................................22

*United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal.)
*appeal United States v. Weber*, No. 26-1232 (9th Cir.) .................8

*United States v. Weber*, 816 F. Supp. 3d 1168
(C.D. Cal. 2026) ........................................18, 20, 25, 36, 38

*United States v. Wisconsin Elections Comm'n*,
No. 3:25-cv-01036 (W.D. Wis.) *appeal United States v.*
*Wisconsin Elections Comm'n*, No. 26-2217 (7th Cir.) .....................9

*United States v. Ziriax*, No. 5:26-cv-00361 (W.D. Okla.) .......................8

*Williams v. Rhodes*, 393 U.S. 23 (1968) ....................................32

**CONSTITUTION:** **PAGE:**

U.S. Const. art. I, § 4, cl. 1 .................................................. 3

**LEGISLATION:** **PAGE:**

National Voter Registration Act of 1993, Pub. L. No. 103-31,
107 Stat. 77 ..........................................................................4

Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86 ..................1, 3

Help America Vote Act of 2002, Pub. L. No. 107-252,
116 Stat. 1666 .............................................................................5

Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 ........................31

E-Government Act of 2002, Pub. L. No. 107-347,
116 Stat. 2899 ...................................................................31, 37, 38

**FEDERAL STATUTES:** **PAGE:**

5 U.S.C. § 552a ...........................................................32, 34, 35

6 U.S.C. § 1502 ..................................................................................27

7 U.S.C. § 12 ......................................................................................27

18 U.S.C. § 1703 ................................................................................27

18 U.S.C. § 3500 ................................................................................27

42 U.S.C. § 1971 ................................................................................22

49 U.S.C. § 47124a .............................................................................27

50 U.S.C. § 217 ..................................................................................27

52 U.S.C. § 20507 ..............................................................................24

52 U.S.C. § 20701 ......................................................................4, 26, 31

52 U.S.C. § 20703 ..............................................................1, 4, 16, 21, 31

52 U.S.C. § 20705 .........................................................................4, 13

52 U.S.C. § 20507 ........................................................................4, 34

52 U.S.C. § 21083 ........................................................................5, 30

**RULES:** **PAGE:**

Fed. R. Civ. P. 1 ........................................................................13

**OTHER FEDERAL MATERIALS:** **PAGE:**

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ..........................................35, 36

70 Fed. Reg. 43904-01 (July 29, 2005) ..............................................36

82 Fed. Reg. 24147-01 (May 25, 2017) ..............................................36

86 Cong. Rec. H5208 (daily ed. Mar. 10, 1960) ..................................23

Election Assistance Commission, *Election Administration and Voting Survey 2024 Comprehensive Report* (June 2025) ..........................19

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ................7

Transcript of Oral Argument at 50:22–23, *United States v. Amore*, No. 1:25-cv-00639 (D.R.I) *appeal United States v. Amore*, No. 26-1665 (1st Cir.) ......................................25

Senate Report. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S. Code Cong. & Admin. News* 6916, 6973 ....................37

Special Message to the Congress on Civil Rights, Pub. Papers of Dwight D. Eisenhower 164, 166 (Feb. 5, 1959) ......................22

**STATE STATUTES:** **PAGE:**

N.M. Stat. Ann. § 1-1-27.1 (2023) ....................................................39

N.M. Stat. Ann. § 1-4-2 (2019) ............................................................6

N.M. Stat. Ann. § 1-4-5.4 (2019) ..........................................................6

N.M. Stat. Ann. §§ 1-4-5.5 (2015) ...................................................7, 39

N.M. Stat. Ann. § 1-4-11 (2023) .......................................................6, 29

N.M. Stat. Ann. § 1-4-22 (2019) ....................7, 29
N.M. Stat. Ann. § 1-4-24 (2023) ....................7, 29
N.M. Stat. Ann. § 1-4-25 (2009) ....................7, 29
N.M. Stat. Ann. § 1-4-28 (2019) ....................7, 29
N.M. Stat. Ann. § 1-4-30 (2011) ....................7, 29
N.M. Stat. Ann. § 1-4-47 (2023) ....................6
N.M. Stat. Ann. § 1-5-3 (2005) ....................5
N.M. Stat. Ann. § 1-5-30 (2019) ....................6, 28
N.M. Stat. Ann. § 1-6C-3 (2019) ....................39
N.M. Stat. Ann. § 1-6C-4 (2019) ....................39
N.M. Stat. Ann. § 66-2-7.1 (2025) ....................7

**STATE REGULATIONS:** **PAGE:**

N.M. Code R. § 1.10.35.8 (2025) ....................6
N.M. Code R. § 1.10.35.9 (2025) ....................5, 6, 29

**OTHER:** **PAGE:**

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (last updated Aug. 24, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requestsvoter-information ....................7

## STATEMENT OF RELATED APPEALS

*United States v. Griswold*, 26-1326, arises from a similar Title III demand letter to Colorado's Secretary of State and raises many of the same legal issues as this appeal.

## GLOSSARY OF TERMS

| | |
|---|---|
| CRA | Civil Rights Act of 1960 |
| EGA | The E-Government Act |
| DHS | U.S. Department of Homeland Security |
| DOJ | U.S. Department of Justice |
| EAVS | Election Administration and Voting Survey |
| HAVA | Help America Vote Act of 2002 |
| MVD | New Mexico Motor Vehicle Division |
| NVRA | National Voter Registration Act of 1993 |
| PIA | Privacy Impact Assessment |
| PII | Personally Identifiable Information |
| SERVIS | State Elections, Registration & Voting Integrity Systems |
| SORN | System-of-Records Notice |
| SVRL | Statewide Voter Registration List |
| VRL | Voter Registration List |

## JURISDICTIONAL STATEMENT

The Appellant's Jurisdictional Statement is complete.

## STATEMENT OF THE ISSUES

1. Did the district court correctly decide that the Federal Rules of Civil Procedure apply to the U.S. Department of Justice's Title III demand for records from Secretary Toulouse Oliver?

2. Did the district court correctly decide that the U.S. Department of Justice failed to state a claim that it is entitled to an unredacted version of New Mexico's Voter Registration List, which includes personally identifiable information on each voter in the state?

3. Do privacy laws bar the U.S. Department of Justice's data collection?

## INTRODUCTION

This case is one of 31 lawsuits filed in the past year by the U.S. Department of Justice (DOJ) against state election officials. Each followed the same pattern. The DOJ demanded the state's complete, unredacted voter list, including social security numbers, driver's license numbers, and full dates of birth for every registered voter. The election official refused. The DOJ sued. To date, no court has sided with the DOJ's strained interpretation of its authority under federal voting laws. This case is no different.

In the proceedings below, the district court joined 22 other district courts, and the Sixth Circuit, in concluding that 52 U.S.C. § 20703 of Title III of the Civil Rights Act of 1960 (CRA) does not authorize the DOJ to force a state's chief election official to produce an unredacted version of the state voter registration list (SVRL).[1] At the outset, the court correctly found that the default Federal Rules of Civil Procedure apply, rejecting the DOJ's argument for rubber stamp review. Turning to the merits, the court found that the DOJ failed to state the "basis" behind its records

[1] Seven district courts have yet to rule, and one case was voluntarily dismissed.

request to New Mexico's Secretary of State (the Secretary), a requirement under Title III. Because that deficiency cannot be cured, the court dismissed with prejudice. The court did not consider additional arguments that independently support affirmance here, namely, that the DOJ failed to state a valid purpose in its demand letter to the Secretary, as required by Title III; that, as the Sixth Circuit concluded, Title III does not apply to the SVRL as it is not a record that comes into the Secretary's possession, and; that the DOJ failed to comply with numerous privacy laws before attempting to vacuum up sensitive data.

The DOJ's arguments to the contrary are unpersuasive. First, the DOJ's reading of Title III would strip all review power from the federal courts and instead require automatic approval of any records demand the DOJ decides to issue, no matter how untethered from the Act. Second, the DOJ's position makes mincemeat of Congress's plain language requirement that the DOJ state the "basis and purpose" behind Title III records demands. As the district court found, the records demand was defective and unenforceable.

This Court should affirm on any of these bases, as argued below and evident in the record.

## STATEMENT OF THE CASE

Constitutional and Statutory Background

"[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives.'" *Tashjian v. Repub. Party of Conn.*, 479 U.S. 208, 217 (1986) (quoting U.S. Const. art. I, § 4, cl. 1). This "broad power" includes the authority to regulate voter registration and maintain voter rolls. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8–9 (2013) (Elections Clause's grant of power to states "embrace[s] authority to provide a complete code for congressional elections" (citation modified)). Thus, as a default matter, the Constitution assigns the responsibility for determining voter eligibility and maintaining voter lists to the states. *See id.* at 17. Three pieces of federal legislation build on this constitutional foundation.

### Title III of the Civil Rights Act of 1960

Congress passed the Civil Rights Act of 1960 to combat racial discrimination against voters. Pub. L. No. 86-449, 74 Stat. 86. Title III of the Act requires state officials to retain "for a period of twenty-two months from the date of any [federal] election … all records and papers which come into [the official's] possession relating to any application,

registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Those records "shall ... be made available for inspection, reproduction, and copying" if the Attorney General makes a "demand in writing" that specifies "the basis and the purpose" for the inspection. *Id.* § 20703. The federal district court in the district where the demand is made has "jurisdiction by appropriate process to compel the production of" the voting records. *Id.* § 20705.

**The National Voter Registration Act**

Over three decades later and with the goal of increasing voter participation, Congress passed the National Voter Registration Act (NVRA). Pub. L. No. 103-31, 107 Stat. 77; 52 U.S.C. § 20501(b)(1). The NVRA requires states to engage in list maintenance by making "a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address, 52 U.S.C. § 20507(a)(4), and allowing the states to remove registrants at the voter's request or as provided by state law. *Id.* § 20507(a)(3)(A)–(B). States are also obligated to preserve records related to the monitoring and upkeep of eligible voters list for public inspection. *Id.* § 20507(i)(1).

**The Help America Vote Act**

Following the 2000 election, Congress again legislated to strengthen federal elections and voter confidence. The Help America Vote Act of 2002 (HAVA), Pub. L. No. 107-252, 116 Stat. 1666, instructed states to create a "single, uniform, official, centralized, interactive computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). We now refer to these computerized databases as state voter registration lists (SVRL). HAVA also required that each voter registrant provide a driver's license number, the last four digits of their social security number, or be assigned a unique identifier to register to vote. *Id.* § 21083(a)(5)(A)(i)–(ii).

<u>Factual Background</u>

**The New Mexico Secretary of State's voter roll practices**

As required by HAVA, New Mexico Secretary of State Maggie Toulouse Oliver's Office (Secretary) maintains the SVRL in a specialized, secure database known as SERVIS (the State Elections, Registration & Voting Integrity Systems). *See, e.g.*, N.M. Stat. Ann. § 1-5-3 (2005) (establishing voter records system pursuant to HAVA). The Secretary regularly performs list maintenance as outlined in the NVRA. *See, e.g.*, N.M. Code R. § 1.10.35.9 (2025) (regulating file maintenance pursuant to the NVRA). The SVRL contains personally identifiable information (PII)

for each of New Mexico's 1,396,404 voters. *See* N.M. Stat. Ann. § 1-5-30 (2019) (establishing electronic voter registration management system).

Specifically, each entry includes the voter's driver's license number, nondriver identification card number, or full social security number, which the state uses for identity verification. N.M. Stat. Ann. §§ 1-4-5.4(B) (2019); 1-4-47(B) (2023); N.M. Code R. § 1.10.35.8(A)(4) (2025).

SERVIS receives the PII from completed voter registration application forms submitted in person, by mail, or online. N.M. Stat. Ann. §§ 1-4-5.4 (describing contents and use of voter registration forms), 1-4-2(A) (2019) (explaining methods for submission). The Secretary compiles the voter registrations, received primarily from county clerks, into the SVRL and adds additional information to an individual's voter record, including unique identifiers, social security numbers, and indications of death or new address. *See* N.M. Stat. Ann. § 1-4-11(D) (2023) (explaining that a voter's social security number is pulled from a prior registration, the New Mexico Motor Vehicle Division (MVD), or the Secretary of State's office); N.M. Code R. §§ 1.10.35.9(D) (requiring the Secretary to enter records of incarceration into the SVRL); 1.10.35.9(E) (same for records of deceased voters). The SVRL is constantly changing as the Secretary receives additional registrations, cancellations, notices of change of

address or death, and other such information affecting a voter's registration. N.M. Stat. Ann. §§ 1-4-22 (2019), -24 (2023), -25 (2009), -28 (2019), -30 (2011).

As required by the NVRA, the Secretary routinely provides a static, redacted public snapshot of the SVRL in response to requests from academics, political parties, and interested members of the public. The redacted public version does not include social security numbers, full dates of birth, or driver's license numbers. N.M. Stat. Ann. §§ 1-4-5.5(B) (2015); 66-2-7.1 (2025).

**The Department of Justice's letter and responses**

In March 2025, President Trump issued an Executive Order titled "Preserving and Protecting the Integrity of American Elections," which directed federal agencies to analyze state voter list data. Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Two months later, the DOJ began its campaign to demand sensitive voter data from at least 48 states and the District of Columbia.[2] Upon a state's refusal to turn over

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (last updated Aug. 24, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requestsvoter-information (https://perma.cc/LD3A-J5BT).

sensitive voter data, the DOJ sued. Of the 31 suits, zero courts have found the DOJ entitled to a state voter list.[3] Twenty-three suits have been

---

[3] *United States v. Fontes*, No. 2:26-cv-00066 (D. Az.) *appeal United States v. Fontes*, No. 26-3609 (9th Cir.); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal.) *appeal United States v. Weber*, No. 26-1232 (9th Cir.); *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo.) *appeal United States v. Griswold*, No. 26-1326 (10th Cir.); *United States v. Thomas*, No. 3:26-cv-00021 (D. Ct.) *appeal United States v. Thomas*, No. 26-2064 (2d Cir.); *United States v. Albence*, No. 1:25-cv-01453 (D. Del); *United States v. Evans*, No. 1:25-cv-04403 (D.D.C.) *appeal United States v. Evans*, No. 26-5296 (D.C. Cir.); *United States v. Raffensperger*, No. 1:26-cv-00485 (N.D. Ga.); *United States v. Nago*, No. 1:25-cv-00522 (D. Haw.); *United States v. McGrane*, No. 1:26-cv-00197 (D. Idaho); *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill.) *appeal United States v. Matthews*, No. 26-2695 (7th Cir.); *United States v. Adams*, No. 3:26-cv-00019 (E.D. Ky.) *appeal United States v. Adams*, No. 26-5657 (6th Cir.); *United States v. Bellows*, No. 1:25-cv-00468 (D. Me) *appeal United States v. Bellows*, No. 26-1676 (1st Cir.); *United States v. DeMarinis,* No. 1:25-cv-03934 (D. Md) *appeal United States v. DeMarinis,* No. 26-1878 (4th Cir.); *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass.) *appeal United States v. Galvin*, No. 26-1657 (1st Cir.); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich.) *appeal United States v. Benson*, No. 26-1225 (6th Cir.); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn.); *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev.); *United States v. N.H. Secretary of State*, No. 1:25-cv-00371 (D.N.H.) *appeal United States v. Scanlan*, No. 26-1783 (1st Cir.); *United States v. Caldwell*, No. 3:26-cv-02025 (D.N.J.); *United States v. Board of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y.) *appeal United States v. Bd. of Elections of the State of New York*, No. 26-2060 (2d Cir.); *United States v. Ziriax*, No. 5:26-cv-00361 (W.D. Okla.) (settled Mar. 24, 2026); *United States v. Oregon*, No. 6:25-cv-01666 (D. Or.) *appeal United States v. Oregon*, No. 26-1231 (9th Cir.); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa) *appeal United States v. Pennsylvania*, No. 26-2684 (3d Cir.); *United States v. Amore*, No. 1:25-cv-00639 (D.R.I) *appeal United States v. Amore*, No. 26-1665 (1st Cir.); *United States. v. Henderson*, No. 2:26-cv-00166 (D. Utah); *United States v. Hanzas*, No. 1:25-cv-00903 (D. Vt.); *United States v.*

dismissed by the district court.[4] All of those have now been appealed.[5] The Sixth Circuit, the only appeals court to have issued a decision as of this writing, also rejected the DOJ's claims. *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026).

By letter dated August 14, 2025, Assistant Attorney General for Civil Rights Harmeet Dhillon sent Secretary Toulouse Oliver a demand for New Mexico's voter registration list containing "*all fields*," which includes "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." JA215. The letter stated that the DOJ had already "received New Mexico's statewide voter registration list." JA215. Since the Secretary of State's Office had not sent the federal

---

*Beals*, No. 3:26-cv-00042 (E.D. Va) *appeal United States v. Beals*, No. 26-2002 (4th Cir.); *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash.); *United States v. Warner*, 2:26-cv-00156 (S.D.W.V.); *United States v. Wisconsin Elections Comm'n*, 3:25-cv-01036 (W.D. Wis.) *appeal United States v. Wisconsin Elections Comm'n*, No. 26-2217 (7th Cir.).

[4] In addition to New Mexico, district courts have dismissed cases against the chief election official in Arizona, California, Colorado, Connecticut, the District of Columbia, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Virginia, West Virginia, and Wisconsin. *See id.*

[5] Appeals are ongoing in the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and D.C. Circuits. *See id.*

agency a voter registration list at any point during 2025, Secretary Toulouse Oliver responded, explaining the potential confusion and asking if the letter was mistaken. JA226. The DOJ did not respond to Secretary Toulouse Oliver's inquiry.

Three weeks later, the DOJ again demanded the SVRL with all fields provided. JA50. The letter provided the following explanation for its demand:

> Pursuant to the foregoing authorities, including the CRA, the Attorney General is requesting an electronic copy of New Mexico's complete and current VRL. The purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA.

JA51.

Secretary Toulouse Oliver replied, offering access, either electronically or in person, to a publicly available, redacted voter registration list. JA54. Secretary Toulouse Oliver explained that the NVRA does not contemplate, much less allow, disclosure of PII and that the letter did not satisfy Title III's "basis and purpose" requirement. JA54. Ignoring the Secretary's explanation of the legal deficiencies in the demand, the DOJ filed this suit.

Procedural History

The DOJ lawsuit states a single claim under Title III of the CRA against Secretary Toulouse Oliver. *See* JA25. Immediately after filing the complaint, the DOJ also filed a motion to compel the SVRL. JA7. The district court allowed the New Mexico Alliance for Retired Americans, and Common Cause, along with registered New Mexico voters Claudia Medina and Justin Allen, to intervene as defendants. JA8–9. Each set of defendants filed a motion to dismiss, to which the DOJ responded. JA10–11.

Following oral argument, the district court granted the motions to dismiss. First, the court held that the Federal Rules of Civil Procedure governed the DOJ's lawsuit. JA486. Second, the court concluded the DOJ had not satisfied the requirements of Title III of the CRA, specifically that the DOJ's demand lacked the basis for the record request. JA491. Because the DOJ's failure to include the basis could not be cured, the court dismissed the case with prejudice. JA491. The court did not address defendants' remaining arguments for dismissal. JA491–92.

## ARGUMENT

As a threshold matter, the district court correctly found that Title III does not displace the default Federal Rules of Civil Procedure. This

Court should find the same. Turning to the merits, three independent grounds compel affirmance. First, the DOJ's demand letter failed to satisfy the "basis and purpose" requirement of Title III. The letter did not include a valid purpose and failed to include any basis at all. Second, this Court should find, like the Sixth Circuit did, that Title III does not apply to the SVRL as it is not a paper or record that "come[s] into … [the Secretary's] possession." Third, the DOJ failed to comply with privacy laws that govern collection and maintenance of sensitive data. This Court should affirm on any or all of these bases.

## I. The district court correctly found that it was not required to rubber stamp the DOJ's demand.

As the district court recognized, the DOJ attempted, paradoxically, to have it both ways: "Either the DOJ is suing to enforce New Mexico's statutory compliance or it is investigating a suspected violation of the NVRA and HAVA." JA484. First, the DOJ filed a traditional civil complaint under the Federal Rules of Civil Procedure. *See* JA19–27. Then, it filed a motion to compel arguing that it was exempt from the Federal Rules because Title III creates a "special statutory proceeding." JA40–41; *see* JA28–30. The district court correctly rejected the DOJ's

argument that the courts are required to rubber stamp all demands under Title III and appropriately applied the Federal Rules. JA484–86.

The Federal Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). By strong default, all Federal Rules apply in each and every proceeding in federal court. *See N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407–08 (1960) (endorsing "the uniform and regular civil procedure laid down by the Federal Rules," such that absent "express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law"); *accord Daly v. United States*, 393 F.2d 873, 876 (8th Cir. 1968) ("Except when expressly authorized by statute[,] summary procedures are to be substituted for plenary actions only in narrowly defined special situations."); *S.E.C. v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986) ("We agree that courts should be 'reluctant' to authorize the use of summary proceedings unless there is a strong reason for doing so.").

Title III states that the federal district court for the district in which the demand for records is made "shall have jurisdiction by *appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). Nothing in Title III identifies "procedures …

specifically tailored" to an enforcement action under the statute. *The N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 166 (2nd Cir. 2006); *cf. Katzenbach v. McClung*, 379 U.S. 294, 296 (1964) (recognizing that a provision in the Civil Rights Act of 1964 creates a "special statutory proceeding" for certain actions); *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (confirming presumption that Federal Rules of Civil Procedure govern federal-government document demands); *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931–32 (11th Cir. 1990) (recognizing that the Federal Arbitration Act, which sets forth a series of rules and procedures, creates a special statutory proceeding in which the federal rules are applicable only where the Act is silent). Instead, Title III refers to "appropriate process" without further detail.

The DOJ rests its argument that "appropriate process" means the federal courts must automatically enforce any demand the DOJ makes under Title III on a single decades-old out-of-circuit case. In *Lynd*, the DOJ requested from Jim Crow-era Mississippi and Louisiana certain voter information. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). The Fifth Circuit in *Lynd* held that an "application" from the Attorney General for an order compelling documents did not begin a traditional civil action, but a special proceeding in which some rules of federal

procedure did not apply. *Id.* at 225–27. However, *Lynd*'s holding was almost immediately undercut by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964). *Powell* rejected the *Lynd* approach that DOJ seeks to invoke here, holding that where a statute "contains no provision specifying the procedure to be followed," no special proceeding is authorized and "the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18. A straightforward application of *Powell* follows: since Title III contains "no provision specifying the procedure to be followed," the Federal Rules apply. *Id.* Reinforcing that conclusion is the fact that *Lynd* has not been cited for the proposition that Title III creates a special proceeding in over 40 years. Given *Powell* and the absence of other caselaw endorsing *Lynd*, the DOJ's reliance on *Lynd* is unpersuasive.

The DOJ's citation to *Donaldson* is inapposite. DOJ Opening Brief at 18 (citing *Donaldson v. United States*, 400 U.S. 517 (1971)). *Donaldson* interpreted Federal Rule 81, which does not apply here. That case's reasoning suggests only that a federal court may "limit the application of the rules" in a Rule 81 summary enforcement proceeding as long "as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson*, 400 U.S. at 528–29. Here, in

contrast, DOJ seeks an inflexible rule that "[t]here is no room for judicial inquiry" into a Title III demand. DOJ Opening Brief at 19.

Every court to consider the DOJ's Title III argument has rejected the *Lynd* approach. *See, e.g.*, *Benson*, 179 F.4th at 483 n.2 (recognizing that *Powell* and other decisions "carve[] out a role for the courts in reviewing civil investigative demands like the government's"); *United States v. Oregon*, 828 F. Supp. 3d 1092, 1102 (D. Or. 2026) ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*."); *United States v. Griswold*, No. 25-cv-03967, 2026 WL 2235374, at *3 (D. Colo. Aug. 3, 2026); *United States v. DeMarinis*, No. CV-SAG-25-3934, 2026 WL 1780586, at *3 (D. Md. June 18, 2026); *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338, 2026 WL 1999921, at *7 (N.D.N.Y. July 10, 2026). This Court should follow and apply the Federal Rules.

## II. The district court correctly found the DOJ failed to meet Title III's requirements.

Title III expressly requires that the DOJ's "demand [for records] shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The district court correctly determined that the DOJ failed to satisfy Title III's requirements when requesting New Mexico's

SVRL. That decision is reviewed de novo. *Lingam v. Dish Network Corp.*, 167 F.4th 1094, 1100 (10th Cir. 2026).

The CRA plainly requires that the DOJ "shall" state "the basis and the purpose" behind its request. When the plain meaning of the statute is clear, "the literal language of a statute controls." *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000) (citation omitted). "The use of the word 'shall'" in a statute "creates an obligation impervious to judicial discretion." *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (quotation omitted). The word "and" is a conjunction "whose function is to connect specified items." *Pulsifer v. United States*, 601 U.S. 124, 133 (2024). As the Sixth Circuit explained in a case involving a near-identical CRA demand, "[t]he statutory context suggests that any demand must contain both [the basis and purpose]." *Benson*, 179 F.4th at 483.

### A. The DOJ failed to state any "basis" in its demand letter.

Courts across the country have explained, based on the plain language of Title III, that the basis requirement requires the DOJ to state the factual basis behind the demand. *United States v. Scanlan*, No. 1:25-cv-00371, 2026 WL 1864054, at *7 (D.N.H. June 29, 2026) ("If 'the purpose' denotes the investigative objective of the demand, it follows that

'the basis' in this context is the evidentiary or factual predicate giving rise to the demand in the first place."); *see also United States v. Weber*, 816 F. Supp. 3d 1168, 1184 (C.D. Cal. 2026) ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."). "'[T]he basis' of the demand must be made express." *United States v. Galvin*, 830 F. Supp. 3d 122, 128 (D. Mass. 2026). *See also United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877, at *5 (C.D. Ill. July 31, 2026) ("[I]t stands to reason that the Attorney General must state more than a vague statutory reference or every Title III demand would have sufficient basis so long as the Attorney General includes some statutory authority."). Likening the Title III requirements to agency obligations under the Administrative Procedure Act, the Sixth Circuit suggested that an appropriate statement of basis and purpose would explain why the demand was necessary to protect valid interests and summarize the legal analysis behind the demand. *See Benson*, 179 F.4th at 483.

The demand letter to Secretary Toulouse Oliver contains no statement of any basis behind the DOJ's request for records.[6] *See* JA50. The letter cites the NVRA, HAVA, and the CRA and provides the single following statement for why the DOJ seeks the SVRL: "[t]he purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." JA51. As the district court found, that is insufficient to meet the CRA's basis and purpose requirement.

The DOJ argues that by invoking the NVRA and HAVA, plus later stating in the complaint that the 2024 Election Administration and Voting Survey (EAVS) Report influenced the demand, that it invoked a sufficient basis. DOJ Opening Brief at 23 (citing Election Assistance Commission, *Election Administration and Voting Survey 2024 Comprehensive Report* (June 2025) at iv, https://perma.cc/H8NJ-EG4F). That is wrong.

To begin with, the DOJ's post-hoc rationale in the complaint about EAVS data does not cure the facial deficiencies of a demand letter. The

[6] The DOJ sent Secretary Toulouse Oliver two letters in Fall 2025 regarding the SVRL. Only the second letter is at issue in this case. JA474; *see generally* JA19–27.

demand letter is evaluated for its compliance with Title III notwithstanding explanations later offered in litigation. *Galvin*, 830 F. Supp. 3d at 128 ("The [CRA] therefore directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand 'contain[ed] a statement of the basis' for the demand."). And even if the post-hoc rationale was relevant, the citation to the EAVS data still wouldn't suffice because the DOJ did not indicate that its review of the EAVS report tended to show that New Mexico violated any federal law, including the NVRA and HAVA. *See Weber*, 816 F. Supp. 3d at 1184 ("The basis is … the evidence behind [the DOJ's] investigation of a particular state and specific, articulable facts pointing to the violation of federal law.").

Turning to the demand letter itself, "[t]he requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Id.* As prior Title III demand letters illustrate, a simple statement of basis and a simple statement of purpose are sufficient. In *Lynd*, for example, the Attorney General "adequately stated the basis and purpose" for election records:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

*Lynd,* 306 F.2d at 229 & n.6 (emphases added).

The DOJ's letter to Secretary Toulouse Oliver cannot meet the DOJ's minimal burden to state the basis because nothing in the demand put the Secretary on reasonable notice of why New Mexico was being asked to turn over records. The basis was simply absent from the demand letter. Therefore, the Court should affirm the district court's determination that the demand letter was deficient.

### B. The DOJ did not state a valid purpose behind its demand letter.

Title III requires the DOJ to state "the purpose" behind any demand for records. 52 U.S.C. § 20703. The statutory construction as well as the history and purpose behind the law show that the purpose must be related to discriminatory barriers to voting.

The "cardinal principle" of statutory interpretation is that courts "must give effect, if possible, to every clause and word of a statute."

*Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quotation omitted). "If any purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function." *Oregon*, 828 F. Supp. 3d at 1104; *accord United States v. Warner*, No. 2:26-CV-00156, 2026 WL 2018877, at *6 (S.D. W. Va. July 13, 2026); *Matthews*, 2026 WL 2212877, at *5.

The historical context of Title III reveals that "the purpose" must be related to discriminatory barriers to voting. With the CRA, Congress explicitly closed an enforcement gap in the Civil Rights Act of 1957. The 1957 legislation permitted the Attorney General to bring an action to enforce eligible citizens' right to vote "without distinction of race, color, or previous condition of servitude," 42 U.S.C. § 1971(a)(1), (c) (1964), and without "voter intimidation [that] is racially motivated," *Brooks v. Nacrelli*, 331 F. Supp. 1350, 1352 (E.D. Pa. 1971). However, it gave the Attorney General no pre-enforcement authority, meaning that the DOJ faced a "serious obstacle" to investigating civil rights issues. Special Message to the Congress on Civil Rights, Pub. Papers of Dwight D. Eisenhower 164, 166 (Feb. 5, 1959) (calling for "[s]upplemental legislation" to address "[a] serious obstacle" to the 1957 law). In response

to the missing link, Congress passed the CRA to give the DOJ pre-suit investigatory power to help identify discriminatory barriers to individuals voting, in particular literacy tests and good moral requirements. *Katzenbach*, 383 U.S. at 312; 86 Cong. Rec. H5208 (daily ed. Mar. 10, 1960) (statement of Rep. McCulloch); *Benson*, 179 F.4th at 474 ("Congress enacted Title III of the Civil Rights Act of 1960 to help end voting discrimination.").

Considering this context and Congress' objective, Title III is best understood as an enforcement mechanism intended to allow the DOJ to request individual voter registration records when there is a reason to believe that an individual had been denied access to the ballot due to discrimination. *See Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 768 (2004) (rejecting literal construction of a statute and instead applying the statute in light of "underlying policies behind [the statute] and Congress' intent"). The purpose behind a Title III records request must then be the protection of individuals against discriminatory barriers to voting.

Here, the DOJ invoked Title III for the inverse: to assess the Secretary's efforts to remove voters rather than discriminatory barriers to voting individuals face. In its letter to the Secretary, the DOJ stated that "[t]he purpose of this request is to ascertain New Mexico's

compliance with the list maintenance requirements of the NVRA and HAVA." JA51. That purpose is deficient.[7] The letter's stated purpose did not relate to "investigating violations of individuals' voting rights;" therefore, it "lacked any reference or relation to the purposes for which Title III was enacted … and cannot trigger any duty to produce such records." *Oregon*, 828 F. Supp. 3d at 1105.

The DOJ argues that the SVRL is relevant to its efforts to check New Mexico's VRL maintenance. DOJ Opening Brief at 31–32. But a static list of voters, with their associated PII, does not provide the information needed for the DOJ to assess if the Secretary "conduct[s] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4); JA22. The procedures behind list maintenance dictate the reasonableness of the established process, not a

---

[7] The Secretary did not concede that the DOJ stated a sufficient purpose. *See* DOJ Opening Brief at 25–26. The Secretary argued below the DOJ included a purported "purpose" in its demand letter but failed to state a *valid* purpose. *See* Secretary Toulouse Oliver's Motion to Dismiss at JA163–64 ("At most, that [demand] letter states that '[t]he purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA.' Pl.'s Mot. Compel Ex. 1, at 2. However, this goal cannot, as a matter of law, satisfy the 'purpose' precondition for an exercise of the DOJ's Title III records inspection authority.").

snapshot of the list that changes each day. Because there is no valid purpose, the DOJ's demand is faulty.

The DOJ urges this Court to "reject speculative allegations as to the true purposes of the [DOJ's] request." DOJ Opening Brief at 30. However, the DOJ itself admitted in parallel suits against other states that it intends to share all sensitive voter-roll data with the U.S. Department of Homeland Security to aid immigration-enforcement efforts. Transcript of Oral Argument at 50:22–23, *United States v. Amore*, No. 1:25-cv-00639 (D.R.I) *appeal United States v. Amore*, No. 26-1665 (1st Cir.), filed with the District Court at Dkt. No. 105-1 ("[O]ur intention is to run [the SVRL] against the [Department of Homeland Security's] SAVE [Systematic Alien Verification for Entitlements] database."); *see also Weber*, 816 F.Supp.3d at 1185 ("[T]he DOJ asked election officials to run their entire voter list through the SAVE database—a database housed in DHS and used as the central federal database for citizenship records."). Amassing a database for the purpose of immigration enforcement is far outside the universe of acceptable purposes under Title III.

Since the DOJ cannot pinpoint in its Title III demand a valid statement of the basis *and* purpose, the district court's dismissal should be affirmed.

## III. Alternatively, and independently, the claim fails because the SVRL is not a record covered by Title III.

A second, and alternative, basis to affirm is that the SVRL is not a record subject to Title III. The district court did not address this argument below; however, this Court may "affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented … on appeal." *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1070 (10th Cir. 2023) (quotation omitted).

Title III requires election officials to "retain and preserve, for a period of twenty-two months from the date of any [federal] election … all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Because the SVRL is not a paper or record that "come[s] into [the Secretary's] possession," it is not subject to Title III. *Id.*

Confronting this exact legal issue, the Sixth Circuit concluded, "the qualified voter file did not 'come into [the Secretary's] possession' as that term is ordinarily understood" and therefore the SVRL was not subject to Title III. *Benson*, 179 F.4th at 479. The Sixth Circuit reached that conclusion by first looking to contemporaneous dictionaries for the

meaning of "come into … possession." *Id.* at 478. Those sources make clear that the term means to "acquire," "obtain," or "receive." *Id.*

In addition to the plain language of the statute, the canon of surplusage supports reading "come[s] into … possession" as excluding the SVRL. When deciding between competing understandings of a statutory term, the canon of surplusage counsels selecting the "interpretation [that] would avoid superfluity." *Bufkin v. Collins*, 604 U.S. 369, 387 (2025). This is particularly true where the legislature chose not to adopt "obvious alternative" language: "records or papers *in the possession of*" election officials. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014) (explaining that when legislators did not adopt "obvious alternative" language, "the natural implication is that they did not intend" the alternative). In fact, Congress has often used the phrase "in the possession of" in other contexts, *see, e.g.*, 6 U.S.C. § 1502(a); 18 U.S.C. § 3500(a), (b); 7 U.S.C. § 12(e), (f); 49 U.S.C. § 47124a(b)(1), (d)(1), and has typically reserved "come into the possession of" to refer to materials actually received by an individual or entity from an outside source, *see, e.g.*, 18 U.S.C. § 1703(a) (prohibiting a postal service employee from destroying materials that "come into his possession"); 50 U.S.C. § 217

(prohibiting a military or naval service member from selling or trading captured or abandoned property that "comes into his possession").

To give meaning to Congress' intent, "come[s] into … possession" as must be different from "in the possession of." Courts must "respect … Congress's prerogatives as policymaker" which "means carefully attending to the words it chose rather than replacing them with others" that the DOJ might wish to be there. *Murphy v. Smith*, 583 U.S. 220, 224 (2018). Here, the canon of surplusage and the obvious alternative language that Congress could have chosen both support enforcing the "come into …possession" limitation of Title III.

The SVRL is not something acquired, obtained, or received by Secretary Toulouse Oliver. Rather, it was "develop[ed]" and "establish[ed]" by the Secretary pursuant to New Mexico legislation executing HAVA. N.M. Stat. Ann. § 1-5-30; *see also Benson*, 179 F.4th at 479 ("An ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained."); *United States v. Thomas*, No. 3:26-CV-21, 2026 WL 2070437, at *5 (D. Conn. July 17, 2026) ("The SVRL is a record created by the state. It is not a record that comes into the state's possession at all.").

The SVRL is generated by the Secretary from information received from other sources, including voters, the MVD, and local County Clerks. N.M. Stat. Ann. § 1-4-11(D) (explaining that where a voter's social security number is not included on the registration, the number is obtained from a prior registration, the MVD, or the Secretary); N.M. Code R. §§ 1.10.35.9(D) ("The [Secretary], via the voter records system, shall enter … state and federal felony incarcerations into the statewide voter file."); 1.10.35.9(E) (same for records of deceased voters). Because the Secretary consistently receives additional registrations, cancellations, notices of change of address or death, and other such information affecting a voter's entry in the SVRL, the Secretary is constantly changing the SVRL. N.M. Stat. Ann. §§ 1-4-22, -24, -25, -28, -30. Title III's plain language covers papers and records that state election officials receive or acquire from voters, not a database created and consistently changed by the Secretary.

The historical context buttresses the conclusion that the SVRL is outside of Title III's scope. Congress created Title III as a tool to conduct investigations into specific instances of voting-related racial discrimination and it was not until 2002—decades after Title III's enactment—when Congress first tasked states with creating and

maintaining "a single, uniform, official, centralized, interactive computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A).

Congress could not have foreseen in 1960 the modern explosion in computing technology—and the corresponding privacy and security concerns—and so it could not have crafted Title III with the intent to give the DOJ unfettered access to the vast amount of sensitive voter data now contained on states' secure computer databases. *Cf. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353 n.5 (1999) (supporting a statutory interpretation with observation that "Congress could not have foreseen" technological changes in drafting legislation in the 1940s); *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003) (narrowly reading statutory subpoena power with observation that the technology at issue was "not even a glimmer in anyone's eye" when Congress drafted the statute (quotation omitted)). Based on plain language, the canon of surplusage, practical operation, and historical context, this Court should conclude that Title III does not authorize the DOJ's acquisition of the SVRL.

That the VRL *contains information* received from voters (through registration applications or other means) does not transform the list into

a "record or paper" within the ambit of Title III. Only those records and papers that come into election officials' possession from voters are required to be retained by the Secretary and made available for inspection to the DOJ—not completely different records and papers created by state officials that combine discrete pieces of information from various sources. *See* 52 U.S.C. §§ 20701, 20703. The Sixth Circuit also pointed out that if the SVRL were a record subject to Title III, then election officials could be prosecuted for altering the SVRL—which they do daily—because Title III allows for the prosecution of anyone who alters a record subject to Title III. *Benson*, 179 F.4th at 479. The Sixth Circuit easily found that SVRLs are not subject to Title III. That conclusion is persuasive here.

Because the Secretary created and maintains the SVRL from several sources of data, the SVRL is not a record that "come[s] into … [her] possession." Since the SVRL is not subject to a Title III demand, the district court's decision to dismiss the complaint should be affirmed.

## IV. Finally, and again independently, DOJ's demand for an unredacted SVRL violates privacy laws.

DOJ's demand for an unredacted SVRL violates the Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896, the E-Government Act of 2002,

Pub. L. No. 107-347, 116 Stat. 2899, and state privacy laws. This Court should affirm. When a complaint admits all elements of an affirmative defense, "it is proper to dismiss a claim on the pleadings." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

**A. The DOJ's data collection violates the Privacy Act.**

The Privacy Act prohibits federal agencies, including the DOJ, from collecting any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The DOJ argues that its data collection does not violate the Privacy Act, either because the SVRL does not contain records describing First Amendment activities or because the collection falls within the law enforcement exception. Both arguments are flawed.

The DOJ's offer to accept a SVRL that redacts voting history and party affiliation is insufficient to protect information revealing First Amendment protected activities. *See* DOJ Opening Brief at 35. The SVRL contains voters' party affiliation and voting history, which the DOJ seemingly agrees reflect core First Amendment activities. *See Williams*

*v. Rhodes*, 393 U.S. 23, 30 (1968) (explaining "the right of individuals to associate for the advancement of political beliefs" is a quintessential example of "freedom of association … protected by the First Amendment."); *see also* DOJ Opening Brief at 35.

However, the very existence or absence of a person on the SVRL also describes whether that person intends to vote or not. Whether an individual intends to cast a ballot in a given election year can be a form of political protest, much the same as whether an individual chooses to register to vote at all. *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (registration history implicates First Amendment exercise because declining to register can constitute political protest). Because a person's decision to exercise, or not, their First Amendment rights is described by their presence on the SVRL, even a redacted list is subject to Privacy Act's First Amendment activity protections.

The question then becomes whether the DOJ's demand falls within the law enforcement exception. It does not.

"[A] federal agency defending its maintenance of records under Section (e)(7) must demonstrate that its records on an individual's exercise of First Amendment rights are relevant to an authorized law enforcement activity of the agency." *Patterson by Patterson v. F.B.I.*, 893

F.2d 595, 603 (3d Cir. 1990). The law enforcement activity exception is necessarily "narrow." *Garris v. FBI*, 937 F.3d 1284, 1296 (9th Cir. 2019).

Initially, the DOJ's mass voter data collection is not "authorized law enforcement activity" because the DOJ failed to make a valid Title III demand, as explained above. But even looking beyond that fatal flaw, the DOJ's broad statement that it seeks to enforce Title III, the NVRA, and HAVA falls far short of the requirement to show relevance of each individual's voter registration, inclusive of PII, to assess New Mexico's compliance with the listed statutes. The DOJ has not provided an explanation for why every individual voter's private information is needed to assess *the Secretary's* "reasonable effort[s]" to perform list maintenance. 52 U.S.C. § 20507(a)(4). Because the records sought are not relevant to the DOJ's investigation, the Privacy Act bars their collection.

The DOJ also failed to plead its compliance with the Privacy Act's notice requirements. The Privacy Act instructs that any agency must publish a System of Records Notice (SORN), 5 U.S.C. § 552a(e)(4), and notify Congress and the Office of Management and Budget (OMB), 5 U.S.C. § 552a(r), before collecting records about individual Americans. The SORN must identify, among other considerations, (i) "the categories of individuals on whom records are maintained in the system," 5 U.S.C.

§ 552a(e)(4)(B); (ii) "the categories of records maintained in the system," *see id.* § 552a(e)(4)(C); or (iii) "the categories of sources of records in the system," *id.* § 552a(e)(4)(I), such that a reasonable reader of the SORN would understand what records the DOJ seeks to collect. The DOJ has not identified in the complaint or any correspondence with the Secretary any SORN specific to this request or any notice it provided to OMB and Congress concerning this data demand.

The SORN identified in the DOJ's complaint, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01 (Aug. 11, 2003), fails as a matter of law to support the SVRL demand because it covers only routine uses of records in the Civil Rights Division regarding specific investigations, not the sweeping collection of voter data it now seeks to collect. *See* JA24, JA174.

First, the cited SORN's categories of covered individuals are only a subset of individuals represented in the voter registration list, such as "subjects of investigations," "victims," and "potential witnesses." 68 Fed. Reg. 47610–01 at 47611.

Second, the SORN describes the categories of covered records as "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the

Civil Rights Division." *Id.* None of these record types can reasonably be read to include a SVRL that includes driver's license and Social Security numbers.

Third, the SORN states that the possible sources of covered information "may be an agency or person who has or offers information related to the law enforcement responsibilities and/or other statutorily-mandated duties of [the Civil Rights Division]." *Id.* at 47613. The subsequent amendments to this SORN do not cure its inapplicability to the information it demands. *See* 70 Fed. Reg. 43904-01 (July 29, 2005) (adding routine uses not relevant here); 82 Fed. Reg. 24147-01 (May 25, 2017) (same).

The cited SORN is insufficient to put a reasonable person on notice of the DOJ's current effort to collect the entirety of New Mexico's voter registration list, with every data field. As one court put it: "[The cited] SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity—some identified to this [c]ourt and others not." *Weber*, 816 F. Supp. 3d at 1193–94.

The DOJ's counter—that every New Mexican voter is a subject of its investigation in potential NVRA and HAVA violations—makes a mockery of the SORN requirement, which Congress instituted to require "meaningful public notice" of records collections under the Privacy Act. *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 548 (3d Cir. 1989). The detailed requirements of SORNs were meant to solve the issue of "scattered, obscurely-worded public notices filed by agencies." *Id.* (second citation modified) (quoting S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S. Code Cong. & Admin. News* 6916, 6973). The SORN cited here fails to satisfy the statutory requirements and spirit of the Privacy Act. This Court should affirm on this basis.

**B. The DOJ failed to comply with the E-Government Act.**

The DOJ's demand for New Mexico's unredacted voter registration list also violates the E-Government Act (EGA), Pub. L. No. 107–347, § 208(b), 116 Stat. 2899 (2002). The EGA requires federal agencies, including the DOJ, to conduct a "privacy impact assessment" (PIA) prior to "initiating a new collection of information that … includes any information in an identifiable form … if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more

persons." *Id.* § 208(b)(1)(A)–(B). The DOJ admits no PIA was done here but claims it is exempt for three reasons. None persuade.

First, despite the DOJ's reliance on the contrary, a "new collection" does not depend on whether the DOJ individually contacted 10 or more voters but on whether the information demanded (a) permits the identification of specific individuals and (b) is obtained in aggregate, *i.e.*, from "10 or more persons." *See id.* § 208(b)(1)(A)(ii)(II). The DOJ's second argument—that its information was collected during an investigation against specific individuals and entities—was not preserved below. Even if it was, this Court should not allow agencies to subvert the EGA by characterizing any demand for information as an "investigation." Third, the EGA contains no exception for the source or manner of the data collection. Simply because the Secretary compiled the information, does not mean that the DOJ does not need to consider the substantial privacy implications that the EGA was designed to protect. *See Weber*, 816 F. Supp. 3d at 1194 ("The information the DOJ seeks to collect from California—like names and addresses of voters—is personal information protected by the E-Government Act [and] … the request made by the DOJ to California is a new one, thus initiating a new collection of data.").

### C. State privacy laws require redaction of sensitive information.

New Mexico law requires the redaction of certain sensitive and confidential information before any release of voter registration list information. *See, e.g.*, N.M. Stat. Ann. §§ 1-4-5.5(B), 1-6C-3 (2019), 1-6C-4 (2019), 1-1-27.1 (2023). Since Title III does not require states to disclose information whose release is prohibited by other state or federal laws, there is no conflict between Title III and New Mexico's privacy laws.

Title III does not prohibit redaction of information when a list is released. *E.g.*, *Steelcase, Inc. v. United States*, 165 F.3d 28, 4 (6th Cir. 1998) ("[I]t would … be inappropriate for this Court to read into the statute phantom requirements that the plain language does not begin to support."); *Lynd*, 306 F.2d at 231 (Title III investigation only reached "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers and effects."). Thus, even if the DOJ were entitled to the records it seeks using its Title III authority, PII, including social security numbers and driver's license numbers, must be redacted. This is especially true where the DOJ has not explained (through a statement of basis and purpose) how the SVRL, let alone the

PII that New Mexico ordinarily redacts, is relevant to any investigation into the Secretary's list maintenance practices.

## CONCLUSION

The judgment of the district court should be affirmed.

The Court should also reject DOJ's request that the mandate issue immediately or that the time for filing a petition for rehearing be shortened. As the Supreme Court has explained, the proximity of an election counsels heavily against shortening default timelines. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (finding error where the Ninth Circuit speedily handled an election-related case because the court failed to maintain its institutional procedures and carefully weigh election case specific considerations). The presumptive rule setting the time for a petition for rehearing and for the mandate to issue should govern. Fed. R. App. P. Rule 41(b).

## STATEMENT ON ORAL ARGUMENT

The Secretary believes that oral argument would materially assist in resolution of this matter. The circuit caselaw interpreting Title III is evolving as the DOJ's litigation against election officials progresses. At least five circuits are set to have fully briefed appeals in such cases before the DOJ's reply is due in this case. At oral argument, the parties will

presumably be able to provide updates and arguments on how other circuits have approached these issues and answer any questions the Court may have.

Respectfully submitted,

RAÚL TORREZ
*Attorney General*

By: _*/s/ Bailey Colfax*___

Bailey Colfax
*Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060
bcolfax@nmdoj.gov

*Counsel for Defendant-Appellee Maggie Toulouse Oliver, in her Official Capacity as New Mexico Secretary of State*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 8,609 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32(B). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) and Tenth Circuit Rule 32(A) because it was prepared in Century Schoolbook in font size 14 using Microsoft Word.

By: _*/s/ Bailey Colfax*___

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that are required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with Microsoft Defender Antivirus and, according to the program, is free of viruses.

## CERTIFICATE OF SERVICE

On September 16, 2026, I filed the foregoing document through the Court's CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

By: _*/s/ Bailey Colfax*___