ORAL ARGUMENT REQUESTED

No. 26-2126

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

*Defendant-Appellee*,

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS, COMMON CAUSE, CLAUDIA MEDINA, and JUSTIN ALLEN,

*Intervenors-Defendants-Appellees*.

On Appeal from the United States District Court for the District of New Mexico
No. 1:25-CV-01193-JCH-JFR
Hon. Judith C. Herrera

---

# BRIEF OF INTERVENOR-DEFENDANT-APPELLEE NEW MEXICO ALLIANCE FOR RETIRED AMERICANS

---

Justin R. Kaufman
Caren I. Friedman
Molly H. Samsell
**DURHAM, PITTARD & SPALDING, LLP**
125 Lincoln Ave, Ste. 402
Santa Fe, NM 87501
Telephone: (888) 998-6688

Uzoma N. Nkwonta
Joshua C. Abbuhl
Kevin R. Kowalewski
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Telephone: (202) 948-1135

Walker R. McKusick
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Ste. 2100
Seattle, WA 98101
Telephone: (202) 948-1135

*Attorneys for Intervenor-Defendant-Appellee*
*New Mexico Alliance for Retired Americans*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ... iii

STATEMENT OF RELATED CASES ... xi

GLOSSARY ... xii

INTRODUCTION ... 1

JURISDICTIONAL STATEMENT ... 2

STATEMENT OF THE ISSUES ... 3

STATEMENT OF THE CASE ... 4

I. The Constitution and federal law assign States primary responsibility for voter registration. ... 4

A. The Civil Rights Act of 1960 ... 4

B. The National Voter Registration Act ... 8

C. The Help America Vote Act ... 9

II. DOJ embarks on a nationwide campaign to collect the private voter data of millions of Americans. ... 11

III. DOJ sues New Mexico to compel disclosure of its protected voter data. ... 13

IV. The district court dismisses DOJ's complaint. ... 13

SUMMARY OF THE ARGUMENT ... 14

STANDARD OF REVIEW ... 16

ARGUMENT ... 17

I. DOJ's CRA demand is subject to meaningful judicial review. ... 17

II. The district court correctly held that DOJ failed to state "the basis" for its demand. ... 21

III. The Court should also affirm because of other flaws in DOJ's claim. ... 25

A. The Court should alternatively affirm because DOJ's claimed purpose of investigating New Mexico's list maintenance program is not a proper purpose for a CRA demand. ....................................25

B. The Court should alternatively affirm because New Mexico's SVRL is not a record within the scope of the CRA. ...........................29

1. The Court may properly consider this argument. ..........................29

2. New Mexico's SVRL was created by election officials and therefore did not "come into" their possession. ............................30

3. Applying the CRA to New Mexico's SVRL would require it to be preserved without alteration, but federal law requires constant updates. ....................................................................34

4. DOJ's interpretation of the CRA should be rejected. ...................36

C. The CRA does not preempt New Mexico's voter privacy protections. ........................................................................................43

IV. DOJ has not complied with the Privacy Act. ................................................45

V. If the Court reverses, it should remand for additional proceedings. .............48

CONCLUSION ...................................................................................................50

STATEMENT REGARDING ORAL ARGUMENT ...........................................51

CERTIFICATE OF COMPLIANCE ..................................................................52

RULE 31.3(B) CERTIFICATE FOR SEPARATE BRIEF ...................................53

CERTIFICATE OF COMPLIANCE WITH CM/ECF USER'S MANUAL ...........54

CERTIFICATE OF SERVICE .........................................................................55

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960)....27

*Anniston Mfg. Co. v. Davis*,
301 U.S. 337 (1937)....35

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013)....4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....16

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019)....41

*Bartch v. Barch*,
111 F.4th 1043 (10th Cir. 2024)....48

*Bay v. Anadarko E&P Onshore LLC*,
912 F.3d 1249 (10th Cir. 2018)....31

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019)....11

*Biden v. Nebraska*,
600 U.S. 477 (2023)....27

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
945 F.3d 1270 (10th Cir. 2019)....29

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017)....21

*Chevron Mining Inc. v. United States*,
863 F.3d 1261 (10th Cir. 2017)....26

*City and County of San Francisco v. EPA*,
604 U.S. 334 (2025)....42

*Day v. SkyWest Airlines*,
45 F.4th 1181 (10th Cir. 2022) .......... 44

*Donaldson v. United States*,
400 U.S. 517 (1971) .......... 19

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 35

*FEC v. Cruz*,
596 U.S. 289 (2022) .......... 30

*Fischer v. United States*,
603 U.S. 480 (2024) .......... 42

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .......... 8

*Foster v. Love*,
522 U.S. 67 (1997) .......... 4

*Hallstrom v. Tillamook County*,
493 U.S. 20 (1989) .......... 24

*Honeycutt v. United States*,
581 U.S. 443 (2017) .......... 32

*Huddleston v. United States*,
415 U.S. 814 (1974) .......... 32

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962) .......... 24

*Kennedy v. Bruce*,
298 F.2d 860 (5th Cir. 1962) .......... 28

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .......... 6, 7, 20, 23, 45

*League of Women Voters v. U.S. DHS*,
835 F. Supp. 3d 79 (D.D.C. June 22, 2026) .......... 45

*League of Women Voters v. U.S. DHS*,
No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ........................ 45, 46

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026).......................................................................... 27, 28

*Lozano v. Montoya Alvarez*,
572 U.S. 1 (2014)..................................................................................32

*LULAC v. Exec. Off. of the President*,
818 F. Supp. 3d 34 (D.D.C. 2026) .........................................................46

*Marathon Ashland Pipe Line LLC v. Md. Cas. Co.*,
243 F.3d 1232 (10th Cir. 2001) ..............................................................49

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018)...............................................................................33

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021)...............................................................................25

*Okla. Press Publ'g Co. v. Walling*,
327 U.S. 186 (1946)...............................................................................21

*Patel v. Garland*,
596 U.S. 328 (2022)...............................................................................43

*Penn. State Conf. of NAACP v. Sec'y Commonwealth of Pa.*,
97 F.4th 120 (3d Cir. 2024).......................................................................6

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ...................................................................9, 44

*Pub. Int. Legal Found., Inc. v. Nago*,
174 F.4th 664 (9th Cir. 2026)....................................................................9

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024)....................................................................9

*Santillan Quiroz v. Mullin*,
180 F.4th 1226 (10th Cir. 2026)..............................................................23

*Schwier v. Cox*,
412 F. Supp. 2d 1266 (N.D. Ga. 2005) ....................46

*Sinclair Wyo. Refin. Co. v. U.S. EPA*,
887 F.3d 986 (10th Cir. 2017) ....................30

*Thomas v. Kaven*,
765 F.3d 1183 (10th Cir. 2014) ....................16

*U.S. Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .................... 37, 38

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023) ....................18

*United States v. Adams*,
No. 3:26-CV-19, 2026 WL 2123871 (E.D. Ky. July 23, 2026) ....................12

*United States v. Aguilar*,
No. 3:25-CV-728, 2026 WL 2364502 (D. Nev. Aug. 14, 2026) ....................12

*United States v. Amore*,
831 F. Supp. 3d 149 (D.R.I. 2026) ....................26

*United States v. Bd. of Elections of the State of N.Y.*,
No. 1:25-CV-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026) ....................26

*United States v. Bellows*,
834 F. Supp. 3d 113 (D. Me. 2026) .................... 26, 28, 33, 37, 43

*United States v. Benson*,
179 F.4th 470 (6th Cir. 2026) .................... 12, 19, 22, 29, 32, 34, 36, 37, 38

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 2026) ....................34

*United States v. Caldwell*,
No. 3:26-CV-2025, 2026 WL 2186515 (D.N.J. July 29, 2026) .................... 12, 37

*United States v. Clarke*,
573 U.S. 248 (2014) .................... 49, 50

*United States v. DeMarinis*,
No. 1:25-CV-3934, 2026 WL 1780586 (D. Md. June 18, 2026)..........................35

*United States v. Evans*,
No. 1:25-CV-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026) ........ 12, 29, 39, 40

*United States v. Galvin*,
830 F. Supp. 3d 122 (D. Mass. 2026) ................................................... 22, 23, 24

*United States v. Griswold*,
No. 25-CV-3967, 2026 WL 2235374 (D. Colo. Aug. 3, 2026) ..................... 12, 30

*United States v. Hernandez-Garduno*,
460 F.3d 1287 (10th Cir. 2006).........................................................................29

*United States v. Koski*,
No. 3:26-CV-42, 2026 WL 2032532 (E.D. Va. July 14, 2026) ..................... 12, 33

*United States v. Matthews*,
No. 3:25-CV-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026).................. 12, 26

*United States v. Oregon*,
828 F. Supp. 3d 1092 (D. Or. 2026)...................................... 19, 21, 23, 25, 26, 45

*United States v. Powell*,
379 U.S. 48 (1964)............................................................................... 15, 18, 19

*United States v. Saenz-Gomez*,
472 F.3d 791 (10th Cir. 2007)...........................................................................38

*United States v. Scanlan*,
No. 25-CV-371, 2026 WL 1864054 (D.N.H. June 29, 2026).................. 33, 34, 41

*United States v. Simon*,
No. 25-CV-3761, 2026 WL 2389778 (D. Minn. Aug. 17, 2026) .........................12

*United States v. Thomas*,
3:26-CV-21, 2026 WL 2070437 (D. Conn. July 17, 2026) ........................... 12, 35

*United States v. Warner*,
No. 2:26-CV-156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026) ......... 12, 26, 27

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026)........................................ 21, 26, 45, 48, 49

*United States v. Wilson*,
98 F.4th 1204 (10th Cir. 2024).......................................................................21

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014).......................................................................................28

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025)................................................................ 9, 41, 44

*Walton v. Powell*,
821 F.3d 1204 (10th Cir. 2016)..................................................................... 17, 30

*Watson v. Republican Nat'l Comm.*,
146 S. Ct. 2165 (2026)...................................................................................35

*Wyeth v. Levine*,
555 U.S. 555 (2009).......................................................................................44

*Yates v. United States*,
574 U.S. 528 (2015).......................................................................................33

**Statutes**

5 U.S.C. §552a ......................................................................... 3, 46, 47, 48

6 U.S.C. § 1502 ...............................................................................................33

7 U.S.C. § 12 ...................................................................................................33

10 U.S.C. § 130c .............................................................................................38

13 U.S.C. § 214 ...............................................................................................38

18 U.S.C. § 1512 .............................................................................................42

18 U.S.C. § 1968 .............................................................................................33

18 U.S.C. § 3500 .............................................................................................33

28 U.S.C. § 1291 ...............................................................................................3

28 U.S.C. § 1331 ....................2

28 U.S.C. § 1345 ....................2

30 U.S.C. § 1732 .................... 33, 38

44 U.S.C. § 3572 ....................38

49 U.S.C. § 47124a ....................33

52 U.S.C. § 10101 ....................6

52 U.S.C. § 20507 .................... 8, 9, 35, 43

52 U.S.C. § 20510 ....................9

52 U.S.C. § 20701 .................... 2, 3, 7, 15, 29, 31, 34

52 U.S.C. § 20702 ....................2, 35

52 U.S.C. § 20703 .................... 1, 2, 3, 7, 15, 21, 22, 24, 25, 31

52 U.S.C. § 20705 .................... 2, 8, 18

52 U.S.C. § 21083 ....................9, 10, 11, 35, 43

52 U.S.C. § 20501 ....................8

52 U.S.C. § 21085 ....................10

52 U.S.C. § 21111 ....................10

N.M. Stat. Ann. §1-4-5.5(B) ....................43

Pub. L. No. 85-315, § 104, 71 Stat. 634 (1957)....................4

**Dictionaries**

*Acquire*, *Webster's Third New International Dictionary* 18 (1961) ....................31

*Alter*, *Webster's Third New International Dictionary* 63 (1966)....................42

*Basis*, *Black's Law Dictionary* (4th ed. 1968) ....................22

*Come into*, *Webster's Third New International Dictionary* 452 (1966) ....................31

*Obtain*, 7 *Oxford English Dictionary* 37 (1933) ....................................................31

*Purpose*, *Black's Law Dictionary* (4th ed. 1968) ....................................................23

*Receive*, *Black's Law Dictionary* (12th ed. 2024) ....................................................31

*Receive*, *Webster's Third New International Dictionary* 1894 (1961) .....................31

**Legislative History**

*An Act to Enforce Constitutional Rights, and for Other Purposes: Hearings on H.R. 8601 Before the S. Comm. on the Judiciary*, 86 Cong. 6 (1960) .............6, 39

H.R. Rep. No. 107-329, pt. 1 (2001) ....................................................10

H.R. Rep. No. 86-956 (1959) ....................................................5

*Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary*, 86th Cong. 212 (1959) .................................................... 5, 6, 27

*Rep. of the U.S. Comm'n on C.R.* (1959) .................................................... 4, 5, 39

**Other Authorities**

Fed. R. Civ. P. 81(a) ....................................................17

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Aug. 24, 2026), https://perma.cc/PEC8-P342. ....................................................11

68 Fed. Reg. 47610 (Aug. 11, 2003) ....................................................47

## STATEMENT OF RELATED CASES

*United States v. Griswold*, No. 25-CV-3967-PAB-TPO, 2026 WL 2235374 (D. Colo. Aug. 3, 2026), *appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026), in which the United States appeals dismissal of its claim seeking production of Colorado's unredacted statewide voter registration list, raises many of the same issues presented in this appeal.

**GLOSSARY**

| | |
|---|---|
| All. SA | Alliance Supplemental Appendix |
| CRA | Civil Rights Act of 1960 |
| DOJ | United States Department of Justice |
| HAVA | Help America Vote Act |
| JA Vol. | Joint Appendix Volume |
| NVRA | National Voter Registration Act |
| SAVE | Systematic Alien Verification for Entitlements |
| SORN | System of Records Notice |
| SVRL | Statewide Voter Registration List |

## INTRODUCTION

Last year, the U.S. Department of Justice ("DOJ") sent letters to election officials across the nation demanding their States' full, unredacted statewide voter registration list ("SVRL"). Many refused, prompting DOJ to sue 30 States and the District of Columbia to obtain these lists. DOJ has lost *every single one* of these cases so far: 24 courts (including one court of appeals and the district court below) have rebuffed DOJ's demands.

The district court was correct to dismiss DOJ's lawsuit. DOJ claims that it is entitled to inspect New Mexico's SVRL under Title III of the Civil Rights Act of 1960 ("CRA") but DOJ failed to comply with the CRA's requirement that its pre-suit demand "contain a statement of the basis and the purpose therefore." 52 U.S.C. §20703. As the district court found, DOJ failed to provide *any* factual basis for its demand.

Numerous alternative grounds also support affirmance. For one, DOJ's stated purpose is improper. It claims to be using the CRA to assess compliance with the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA"), but the CRA was enacted so that DOJ could investigate individual voting rights violations—not to superintend State list maintenance pursuant to statutes passed decades later. DOJ cannot repurpose the CRA to provide itself pre-suit inspection

powers to assess compliance with the NVRA and HAVA, when Congress conspicuously declined to give DOJ such powers in those statutes.

Moreover, as the Sixth Circuit and numerous district courts have held, SVRLs are not covered by the CRA because they are state-created databases that election officials continuously possess and revise, not voter-provided records that "come into [election officials'] possession," *id.* §20701, like the application, registration, and poll-tax payment records that the CRA requires election officials to preserve and make available for inspection. The Alliance did not present this argument in its motion to dismiss—although it was extensively discussed in notices of supplemental authority and DOJ's responses thereto—but, under this Court's precedent, it is nonetheless appropriate for the Court to consider this purely legal issue of statutory interpretation. And the Court *should* consider it: if the SVRL is not covered by the CRA, DOJ simply has no legal power to demand it. Finally, DOJ has also failed to show either that the CRA preempts New Mexico's voter privacy laws or that DOJ has complied with its obligations under the Privacy Act. This Court should affirm.

## JURISDICTIONAL STATEMENT

DOJ's jurisdictional statement is incomplete. The district court had federal question jurisdiction under 28 U.S.C. §§1331, 1345, and 52 U.S.C. §20705, because DOJ alleges a violation of the CRA, 52 U.S.C. §20703. JA Vol I. 19-27.[1] This Court

---

[1] The joint appendix is cited as "JA Vol. I" and "JA Vol. II".

has appellate jurisdiction under 28 U.S.C. §1291. The district court entered final judgment on July 14, 2026, JA Vol. II 493, based on an Order dismissing the complaint that same day, JA Vol. II 472-492. The United States filed a timely, corrected Notice of Appeal on July 24, 2026. JA Vol. II 495-96.

## STATEMENT OF THE ISSUES

1. Whether DOJ made a valid demand for production of New Mexico's SVRL under the CRA, even though DOJ provided no "statement of the basis" for the demand. *See* 52 U.S.C. §20703.

2. Whether DOJ made a valid demand when it sought the SVRL for the purported purpose of investigating New Mexico's voter-list maintenance processes, rather than for a purpose connected to protecting an individual's right to vote. *See id.*

3. Whether New Mexico's SVRL, a state-created database that is continually updated as required by federal law, is a "record" that must be preserved unaltered and produced to DOJ under the CRA. *See id.* §§20701-20703.

4. Whether DOJ's demand for New Mexico's complete, unredacted SVRL as part of a national campaign to assemble voter lists from every state and territory, violates New Mexico's voter privacy laws or the federal Privacy Act. *See* 5 U.S.C. §552a.

## STATEMENT OF THE CASE

### I. The Constitution and federal law assign States primary responsibility for voter registration.

The Constitution "invests the States with responsibility for the mechanics" of elections, including federal elections. *Foster v. Love*, 522 U.S. 67, 69 (1997). Although Congress may preempt state regulations of federal elections, such preemption extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Three federal election laws are implicated by this case.

#### A. The Civil Rights Act of 1960

Congress enacted Title III of the Civil Rights Act of 1960 to address problems that emerged from Southern resistance to the Civil Rights Act of 1957. In particular, the U.S. Commission on Civil Rights (created by the Civil Rights Act of 1957) was charged with "investigat[ing] allegations … that certain citizens of the United States [were] being deprived of their right to vote." Pub. L. No. 85-315, §104(a)-(b), 71 Stat. 634, 635 (1957). As part of its work, the Commission reviewed voting applications in Jim Crow jurisdictions to identify discriminatory registration practices. By comparing voter registration forms submitted by Black and White applicants, the Commission revealed that election officials in Southern States often imposed tests on Black applicants from which White applicants were exempt, *see Rep. of the U.S. Comm'n on C.R.*, at 87-88 (1959) ("*Comm'n Rep.*"), and denied

registration to Black applicants "because of inconsequential errors which they made, whereas many white applicants who committed similar errors were permitted to register," *id.* at 91.[2] The Commission thus concluded that reviewing voter "application forms" was "essential to any investigation of denials of the right to vote." *Id.* at 137.

Yet the Commission found its investigatory work thwarted by efforts to destroy or restrict access to "[r]ejected applications." *Id.* at 93. For instance, in response to the 1957 Act, Alabama enacted legislation requiring the "destruction of the questionnaires of unsuccessful applicants for registration." *Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary*, 86th Cong. 212 (1959) ("*Hearings*") (statement of Att'y Gen. Rogers).[3] Compounding the problem, DOJ lacked any "power in civil proceedings to require the production" of registration records, rendering its ability to investigate denials of the right to vote "relatively ineffective." H.R. Rep. No. 86-956, at 7 (1959). The Commission therefore recommended that Congress enact legislation requiring that election officials retain applications to vote and allow DOJ to inspect them. *Comm'n Rep*. 137-38. In testimony before Congress, DOJ agreed that comparing the voter applications of

[2] The Commission Report is available at: https://www.usccr.gov/files/historical/1959/59-001-U.pdf.

[3] Available at: https://perma.cc/ET26-FKD9.

Black and White voters was essential to its civil rights work, explaining that, "[i]n many cases, discrimination in registration can be proved only by comparing the records of Negro applicants with those of white applicants." *An Act to Enforce Constitutional Rights, and for Other Purposes: Hearings on H.R. 8601 Before the S. Comm. on the Judiciary*, 86 Cong. 6 (1960) (statement of U.S. Att'y Gen. Rogers).[4] "Congress responded by passing the Civil Rights Act of 1960." *Penn. State Conf. of NAACP v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 149 n.19 (3d Cir. 2024) (Shwartz, J., dissenting).

Congress tailored the CRA to the problem before it: the need to ensure the preservation and availability of the key evidence necessary to investigate voting rights violations. As explained by a principal drafter of the CRA, "[t]he purpose of [T]itle III is, first of all, to require that States preserve, for a reasonable length of time, the records upon which is based the decision of whether or not a person is a qualified elector." *Hearings* at 700 (statement of Rep. William M. McCulloch). The CRA thus "enable[s] the Attorney General to determine whether §1971 suits or similar actions should be instituted." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).[5] To that end, the CRA contains several interlocking provisions that

---

[4] Available at: https://perma.cc/46G6-GQZB.

[5] The section that was then 42 U.S.C. §1971, now codified at 52 U.S.C. §10101, guarantees the right to vote "without distinction of race, color, or previous condition of servitude." 52 U.S.C. §10101(a)(1).

collectively permit DOJ "to assemble all of the voter record information within the time-reach of the statute relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights." *Id.*

The core provision of the CRA requires officials to "retain and preserve" the records most critical to a voting rights investigation:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election] … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]

52 U.S.C. §20701. The CRA criminalizes "willfully fail[ing]" to comply with the statute's command, *id.*, threatening "imprison[ment]" for "[a]ny person … who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved," *id.* §20702. The CRA allows DOJ to inspect covered records after it makes a compliant pre-suit demand:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying[.]

*Id.* §20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.* Finally, the CRA provides that the federal district court for the district in which a CRA demand is made or in which a demanded record is located

"shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* §20705.

### B. The National Voter Registration Act

Three decades after the CRA, Congress passed the NVRA to "establish procedures that will increase the number of eligible citizens who register to vote" and "ensure that accurate and current voter registration rolls are maintained." *Id.* §20501(b). The NVRA is aimed at ensuring "simple means are available to register for federal elections and [that] those means are actively presented to voters by the states." *Fish v. Kobach*, 840 F.3d 710, 721 (10th Cir. 2016). The NVRA also requires covered States to take steps to keep their voter rolls reasonably updated. *See* 52 U.S.C. §20507(a)(4). In doing so, the NVRA reaffirms the principal role of States in managing registration lists, requiring only that States "conduct a general program" that "makes a reasonable effort" to remove names from the list that are ineligible because of either (1) "the death of the registrant" or (2) "a change in the residence of the registrant." *Id.* The NVRA tempers this modest obligation with safeguards to prevent erroneous or rushed cancellations of registrations. *Id.* §20507(a)(3), (b)-(e).

The NVRA expressly addresses disclosure of records related to state compliance. It requires States to "make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.*

§20507(i)(1). Courts have held either that this inspection provision does not reach States' SVRLs, *e.g.*, *Pub. Int. Legal Found., Inc. v. Nago*, 174 F.4th 664, 678-83 (9th Cir. 2026), or as this Court has held, that it permits States to redact sensitive personal information regarding voters before disclosing SVRLs, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *see also Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (holding same). DOJ may initiate civil actions to address substantive violations of the NVRA, and the NVRA also authorizes private enforcement actions. *See* 52 U.S.C. §20510.

### C. The Help America Vote Act

A decade after the NVRA, and more than four decades after the CRA, Congress enacted HAVA to "improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Among other things, HAVA requires States to create a "single, uniform, official, centralized, interactive computerized statewide voter registration list." 52 U.S.C. §21083(a)(1)(A).

The list is dynamic by design. For instance, HAVA directs that "[a]ll voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official." *Id.* §21083(a)(1)(A)(vi). The State's chief election official must ensure "local election officials are able to enter [that]

information." *Id.* §21083(a)(1)(A)(vii). Likewise, the list "shall be coordinated with other agency databases within the State." *Id.* §21083(a)(1)(A)(iv). HAVA also requires that "voter registration records" are "accurate and are updated regularly." *Id.* §21083(a)(4). In other words, HAVA charges States with continually changing their single, centralized SVRLs.

HAVA gives DOJ authority to sue to address violations of the statute, *see id.* §21111, but does not empower it to demand or inspect SVRLs or otherwise audit States' voter list-maintenance practices. To the contrary, HAVA reaffirms the preeminent role of States in managing voter lists, instructing that each State's list be "defined, maintained, and administered at the State level," *id.* §21083(a)(1)(A), and committing "[t]he specific choices on the methods of complying with the requirements of [HAVA] shall be left to the discretion of the State," *id.* §21085. The careful assignment of responsibilities in HAVA reflects Congress's view that state authority over voter registration is central to preserving our democratic system:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. *The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.* This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31-32 (2001) (emphasis added).

HAVA also discusses list maintenance, but "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). Rather, HAVA ports over the NVRA's requirements, charging most States with "perform[ing] list maintenance" of their computerized SVRLs "on a regular basis" consistent with the NVRA. 52 U.S.C. §21083(a)(2)(A).

## II. DOJ embarks on a nationwide campaign to collect the private voter data of millions of Americans.

Last year, DOJ launched an unprecedented campaign to collect States' unredacted SVRLs, which include sensitive information about each registered voter. DOJ sent demands to at least 48 States, but most refused.[6] DOJ has sued 30 States and the District of Columbia to compel disclosure.

DOJ's legal theories have shifted over the course of these lawsuits. Initially, DOJ brought claims under the CRA, HAVA, and the NVRA. *See* Complaint, *United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026) (No. 1:25-CV-468), ECF No. 1. In its later-filed actions, DOJ abandoned its HAVA and NVRA claims and focused solely on the CRA. *See, e.g.*, JA Vol. I 19-27; Complaint, *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026) (No. 25-CV-639), ECF No. 1. Regardless of the vehicle, every district court that has addressed DOJ's claims to date in these cases

[6] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Aug. 24, 2026), https://perma.cc/PEC8-P342.

has dismissed them, and the Sixth Circuit affirmed a dismissal.[7]

DOJ's factual allegations have also varied from one State to another. In some early complaints, DOJ alleged that its demands were prompted by state-specific anomalies in voter list maintenance statistics. *See* Exhibit 3, *Bellows*, 834 F. Supp. 3d 113 (No. 1:25-CV-468), ECF No. 5-4. Here, however, DOJ abandoned the pretext that its demands were prompted by individualized concerns with New Mexico's list maintenance program and argued that CRA demands require no factual basis at all. *See* JA Vol. I 42-43, 49-52; JA Vol. II 281-283.

---

[7] *See* JA Vol. II 478 (citing twelve district court cases); *see also United States v. Benson*, 179 F.4th 470 (6th Cir. 2026), *petition for reh'g en banc denied*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026); *United States v. Warner*, No. 2:26-CV-156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026); *United States v. Koski*, No. 3:26-CV-42, 2026 WL 2032532 (E.D. Va. July 14, 2026), *appeal docketed*, No. 26-2002 (4th Cir. July 29, 2026); *United States v. Thomas*, 3:26-CV-21, 2026 WL 2070437 (D. Conn. July 17, 2026), *appeal docketed*, No. 26-2064 (2d Cir. July 24, 2026); *United States v. Adams*, No. 3:26-CV-19, 2026 WL 2123871 (E.D. Ky. July 23, 2026), *appeal docketed*, No. 26-5657 (6th Cir. July 24, 2026); *United States v. Caldwell*, No. 3:26-CV-2025, 2026 WL 2186515 (D.N.J. July 29, 2026), *appeal docketed sub nom. United States v. Lt. Gov. & Sec'y of State of N.J.*, No. 26-3085 (3rd Cir. Aug. 20, 2026); *United States v. Matthews*, No. 3:25-CV-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026), *appeal docketed*, No. 26-2695 (7th Cir. Aug. 17, 2026); *United States v. Griswold*, No. 25-CV-3967, 2026 WL 2235374 (D. Colo. Aug. 3, 2026), *appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026); *United States v. Evans*, No. 1:25-CV-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026), *appeal docketed*, No. 26-5296 (D.C. Cir. Aug. 19, 2026); *United States v. Aguilar*, No. 3:25-CV-728, 2026 WL 2364502 (D. Nev. Aug. 14, 2026); *United States v. Simon*, No. 25-CV-3761, 2026 WL 2389778 (D. Minn. Aug. 17, 2026), *appeal docketed*, No. 26-2679 (8th Cir. Aug. 21, 2026).

## III. DOJ sues New Mexico to compel disclosure of its protected voter data.

On September 8, 2025, DOJ sent a letter to Secretary Maggie Toulouse Oliver demanding that she produce, under the NVRA, HAVA, and the CRA, a "copy of New Mexico's statewide voter registration list" including "*all fields*." JA Vol. I 50 (emphasis added). DOJ's letter stated that the "purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA" and demanded that the SVRL produced must include highly sensitive voter information. JA Vol. I 51.

On September 22, 2025, Secretary Toulouse Oliver replied, offering to provide a redacted SVRL but requesting "further information, communication, and assurances of privacy protection from DOJ" before she would provide an unredacted version. JA Vol. I 54-55. DOJ did not respond.

Instead, more than two months later, DOJ sued, bringing a single claim under the CRA to demand production of New Mexico's unredacted SVRL. JA Vol. I 19-27. DOJ simultaneously filed a motion to compel. JA Vol. I 28-32.

## IV. The district court dismisses DOJ's complaint.

On July 14, 2026, the district court granted Defendants' and Intervenors' motions to dismiss. JA Vol. II 472-92. The court first rejected DOJ's argument that this action is a special proceeding to which Rule 12(b)(6) does not apply. JA Vol. II 484-86. It then dismissed DOJ's CRA claim on the grounds that DOJ had failed to

state any factual basis "whatsoever" in its September 8 demand letter seeking New Mexico's SVRL. JA Vol. II 486-91. The district court reasoned the CRA's "plain language" imposes a mandatory command on DOJ to provide a single written letter detailing "the" basis *and* "the" purpose of its demand. JA Vol. II 488-89. The court elaborated that the "basis" is the discrete factual evidence underlying the demand, and that DOJ's interpretation of the term would conflate the word with "purpose." JA Vol. II 490. The court found that DOJ failed "altogether" to include a factual basis to suggest that New Mexico violated the NVRA or HAVA, instead at most conveying a generalized inquiry into the State's list maintenance. JA Vol. II 490-91.

Because the district court dismissed on the reasoning that DOJ's demand letter failed to state a factual basis as required by the CRA, JA Vol. II 487, the court did not address the other grounds for dismissal presented by Defendants and Intervenors. JA Vol. II 491-92.

This appeal followed.

## SUMMARY OF THE ARGUMENT

1. DOJ's CRA claim is subject to meaningful judicial review under the Federal Rules of Civil Procedure. Nothing in those Rules or the CRA exempts CRA claims from review in the ordinary course, and the Supreme Court has made clear that courts have the duty to ensure government document demands, at a minimum,

are issued for legitimate purposes and follow all statutory requirements. *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964).

2. The Court should affirm because DOJ failed to state a claim under the CRA. The district court correctly held that DOJ failed to comply with the CRA's requirement to send New Mexico a demand letter stating facts to support "the basis" for its inspection. 52 U.S.C. §20703. DOJ's September 8 demand letter—the only relevant communication here—did not contain *any* factual material about New Mexico's list maintenance practices, much less facts that would suggest a violation of federal law. Any attempt to cure that deficiency in its pleadings below or briefing here is futile because the CRA requires DOJ to state a basis in the demand letter itself. *Id.*

3. This Court should also affirm on alternative grounds that the district court did not reach but nonetheless warrant dismissal. DOJ's stated "purpose"—to assess New Mexico's list maintenance compliance with the NVRA and HAVA—is not a proper purpose for a CRA demand. It is beyond the scope of the CRA, an individual voting rights statute. The NVRA and HAVA govern list maintenance, and the CRA cannot be repurposed to give DOJ the power to audit States' SVRLs when Congress chose *not* to give it any such authority in the NVRA or HAVA. The Court should also affirm because the CRA covers only external records—like voter applications—that "come into" the possession of election officials. *Id.* §20701. An

SVRL is not a record that "comes into" the possession of election officials—it is a database that is created, maintained, and continuously revised by those election officials. Dictionary definitions, common usage, and statutory context confirm that "come into" possession refers to receiving something from an outside source. The Court should alternatively affirm because New Mexico protects the sensitive voter data at issue here from disclosure, and there is no indication in the CRA that Congress intended to preempt state privacy laws.

4. Finally, the Court should also affirm because DOJ failed to comply with the notice requirements of the federal Privacy Act and thus is not entitled to unredacted copies of the SVRL.

5. If the Court were to accept DOJ's arguments and reverse the ruling below, DOJ would not be entitled to the relief it seeks—immediate production of the unredacted SVRL. The proper course would be to remand and allow discovery on, among other things, whether DOJ's stated purpose is pretextual.

## STANDARD OF REVIEW

The Court "review[s] a Rule 12(b)(6) dismissal de novo." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). The Court is "entitled to affirm a district court on alternative grounds that

court didn't consider if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal." *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016) (Gorsuch, J.).

## ARGUMENT

### I. DOJ's CRA demand is subject to meaningful judicial review.

The district court properly assessed whether DOJ's CRA demand complied with the CRA's requirements, and under the appropriate process: the Federal Rules of Civil Procedure. *See* JA Vol. II 485 (joining "[e]very other district court that addressed this argument"). Relying almost entirely on *Lynd*, a Fifth Circuit case from 1962, DOJ argues that "litigation tools ordinarily available under the Federal Rules of Civil Procedure" may not be used to challenge its CRA claim, and that there is no room for "judicial review" of its compliance with statutory requirements. Br.17. This is baseless.

Nothing in the Federal Rules supports DOJ's plea for an exemption from run-of-the-mill legal analysis. The Federal Rules "govern the procedure in *all* civil actions and proceedings in the United States district courts[.]" JA Vol. I 485-86 (quoting Fed. R. Civ. P. 1(a)). This case is just such an action. Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—but none involve the CRA. *See* Fed. R. Civ. P. 81(a).

Nor does anything in the CRA support the exemption DOJ seeks. The barrier DOJ faces here is high: the Federal Rules "are the default rules in civil litigation," and while Congress may override that command, courts "do not lightly infer that Congress has done so; and silence on the subject is seldom enough." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023). The statute merely provides that federal district courts "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. §20705 (emphasis added). That unremarkable jurisdictional language cannot be read to insulate CRA claims from routine judicial review or displace the Federal Rules. Just two years after *Lynd*, the Supreme Court construed a statute with materially identical language ("appropriate process") and held that, because it "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). DOJ appears to recognize this: Despite suggesting that the CRA supplants the Federal Rules, DOJ explicitly invokes Rule 12(b)(6) as the standard of review for this appeal. *See* Br.13.

*Powell* also recognizes the role of meaningful judicial review in actions to enforce government document demands. *Powell* explains that a reviewing court must ensure, among other things, that the demand is made pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, and that the underlying

statute authorizing the demand has been satisfied. *See* 379 U.S. at 58. It underscores that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* That charge more than authorizes all the judicial review Appellees seek here. Courts evaluating DOJ's recent CRA demands have consistently held that "[t]he Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention[s] and reliance on *Lynd*." *United States v. Oregon*, 828 F. Supp. 3d 1092, 1102 (D. Or. 2026), *appeal docketed*, No. 26-1231 (9th Cir. argued May 19, 2026); *see, e.g.*, *Benson*, 179 F.4th at 483 n.2; JA Vol. II 485 (citing cases).

DOJ instead claims that *Lynd* is "consistent" with the Supreme Court's decision in *Donaldson v. United States*, 400 U.S. 517 (1971). Br.18. But as DOJ admits, *Donaldson* held the "Civil Rules, of course, do have an application" to suits to enforce governmental demands. 400 U.S. at 528 (cited in Br.28). *Donaldson* simply denied a taxpayer's attempt to intervene in enforcement proceedings directed toward a different target; it did not say, much less hold, anything about the scope of such proceedings or the applicability of Rule 12(b)(6). *Id.* at 527-31. Moreover, the Court confirmed that Federal Rule 24(a)(2)—regarding intervention—continues to apply in a civil action to enforce a tax summons, reinforcing the general applicability of the Federal Rules in such actions. *See id.* at 528.

As for *Lynd*, even in that case, the Fifth Circuit recognized that courts must be "open for determination" if there were a "genuine dispute" about whether a "particular paper or record" fell under the CRA. 306 F.2d at 226. There is certainly such a dispute here. *See infra* Argument §III.B. And, unlike here, the Fifth Circuit had no reason to doubt that DOJ invoked the CRA for a valid purpose and complied with the statute's demand requirements. As that court explained, the CRA's "clearest purpose[]" is to permit investigations "concerning infringement or denial of … voting rights," *Lynd*, 306 F.2d at 228, and "[t]he record establishe[d] without contradiction" that DOJ had "adequately stated the basis and the purpose" of its investigation based on evidence of racial discrimination "with respect to registration and voting," *id.* at 229 & n.6. *Lynd* therefore never considered any of the issues currently before this Court.

Finally, DOJ suggests judicial review is improper because the CRA contains no "meaningful standard" against which courts could ascertain the sufficiency of the Attorney General's stated basis and purpose. Br.19. Not so. By requiring that DOJ state "the basis and the purpose" for the demand and specifying what records fall within its scope, the CRA clearly provides the standard for a court's review. DOJ has "voluntarily invoked the jurisdiction of the federal courts," JA Vol. II 485, and filed a complaint that, whether DOJ likes it or not, is subject to "the ordinary pleading scrutiny of the Federal Rules," Br.15. DOJ claims a power to demand records that

derives solely from statute, and the Court cannot endorse DOJ acting beyond its power—it must ensure DOJ acts "within the agency's authority." *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)); *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946) (agency investigations must be for "a lawfully authorized purpose").

## II. The district court correctly held that DOJ failed to state "the basis" for its demand.

The CRA requires the Attorney General to make a "demand in writing," and specifies that "[*t*]*his demand* shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. §20703 (emphases added). Requiring DOJ to articulate a factual basis—in the demand itself—for why it seeks the information it demands is an important check against bad-faith investigations. *See CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 691 (D.C. Cir. 2017) (quashing civil investigative demand that failed to "adequately state 'the specific conduct under investigation'"). Because DOJ failed to state any basis whatsoever, it did not comply with the CRA, and this Court should affirm the district court's holding that DOJ's demand letter is facially defective.

A "basis" under the CRA means "a factual basis for investigating a violation of a federal statute." *Oregon*, 828 F. Supp. 3d at 1102; *United States v. Weber*, 816 F. Supp. 3d 1168, 1184 (C.D. Cal. 2026) (stating the "basis" requires "specific, articulable facts pointing to the violation of federal law"), *appeal docketed*, No. 26-

1232 (9th Cir. argued May 19, 2026); JA Vol. II 489 (collecting cases). That is consistent with dictionary definitions. *See, e.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). DOJ's attempts to reframe the inquiry as whether it provided New Mexico with "notice" ignores the statutory text. Br.21-22. The CRA does not tell DOJ to provide "notice"; it orders that DOJ "shall" include "the basis" for its demand. 52 U.S.C. §20703. "The use of the word 'shall' in a statute 'creates an obligation impervious to judicial discretion.'" *Benson*, 179 F.4th at 483 (quoting *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024)).

Under that standard, DOJ's September 8, 2025 letter was clearly inadequate. JA Vol. I 23. Although that letter stated that the purported "*purpose* of th[e] request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA," it included nothing about DOJ's *factual basis* for its demand. JA Vol. I 51 (emphasis added); *see also United States v. Galvin*, 830 F. Supp. 3d 122, 129 (D. Mass. 2026) (holding that a materially identical letter DOJ sent to Massachusetts was "facially inadequate"), *appeal docketed*, No. 26-1657 (1st Cir. June 10, 2026). Thus, stuck with a facially deficient demand, DOJ makes two entreaties for the Court to ignore the CRA's requirements entirely. Both are meritless.

First, DOJ contends that a CRA demand does not require a "factual" basis, just a "legal one," and thus that the mere fact that DOJ "invoke[d]" the NVRA and

HAVA in its letters was enough to comply with the "basis" requirement. Br.21-22. But "[r]eading 'basis' in the way [DOJ] suggests collapses its meaning with that of 'purpose.'" *Oregon*, 828 F. Supp. 3d at 1103. DOJ's argument therefore fails as a matter of basic statutory interpretation. After all, "courts should give effect, if possible, to every clause and word of a statute since it is presumed that each word Congress uses is there for a reason." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1241 (10th Cir. 2026) (citation modified). As the district court explained, "the use of the conjunctive 'and,'" "clearly indicates" that the statute is not satisfied by "supplying only 'the basis' or only 'the purpose.'" JA Vol. II 489 (quoting *Qwest Commc'ns Int'l, Inc. v. FCC*, 398 F.3d 1222, 1236 (10th Cir. 2005)); *see also Galvin*, 830 F. Supp. 3d at 128 (observing "the basis" and "the purpose" are "conceptually distinct"). This makes sense: "basis" and "purpose" are different words with different meanings. While "basis" means "foundation" or "groundwork," *supra* 22, "purpose" means "an end, intention, or aim, object, plan, project." *Purpose*, *Black's Law Dictionary* (4th ed. 1968).

History confirms the plain text: demands made shortly after the passage of the CRA reveal that DOJ originally understood the CRA to require it to state its factual basis. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6 ("This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within

your jurisdiction."); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar); *see also Galvin*, 830 F. Supp. 3d at 128 (concluding that requiring DOJ to state a factual basis "comports with the construction given Title III by the Justice Department and federal courts in the early months and years following the statute's enactment").

Second, DOJ tries to dodge the CRA's written demand requirement by pointing to an allegation in its complaint that its demand was "[b]ased on a review of the 2024 EAVS Report," presumably in reference to New Mexico's responses to the Election Administration and Voting Survey ("EAVS"). Br.23-24 (citing JA Vol. I 23). That does not remedy DOJ's statutory violation. Under the CRA, it is the *demand letter* (not a later-filed *complaint*) that "shall contain a statement of the basis ... therefor." 52 U.S.C. §20703. The September 8 demand letter makes no mention of EAVS whatsoever, *see* JA Vol. I 50-51, and DOJ cannot cure that defect through its later litigation filings. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 27 (1989) (refusing to abrogate statutory pre-suit notice requirement because "we are not at liberty to create an exception where Congress has declined to do so."); *Galvin*, 830 F. Supp. 3d at 128 (holding that the CRA "directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand 'contain[ed] a statement of the basis' for the demand.") (quoting 52 U.S.C. §20703). Likewise, it is not enough for DOJ to insist

that the Secretary could "infer" the reasons for the CRA investigation, Br.24—it must *state* the factual basis for its demand in its demand letter. After all, the Supreme Court has interpreted statutory instructions similar to those in the CRA to mean that the government must provide "'a' *single* document containing the required information, not a mishmash of pieces with some assembly required." *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021) (emphasis added). DOJ has utterly failed to do so here.

## III. The Court should also affirm because of other flaws in DOJ's claim.

DOJ's demand also fails for a host of additional reasons, each of which is properly before the Court on appeal and provides an independent reason to affirm.

### A. The Court should alternatively affirm because DOJ's claimed purpose of investigating New Mexico's list maintenance program is not a proper purpose for a CRA demand.

A CRA demand must also state "the purpose therefor." 52 U.S.C. §20703. The statutory term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's enforcement powers for the protection of *civil rights*. *See Oregon*, 828 F. Supp. 3d at 1105 (holding that "[t]he 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights"). To be clear, contrary to DOJ's misrepresentation, the Alliance did not argue below that "the only permissible purpose is to combat racial discrimination in voting." Br.26. Rather, a proper purpose under the CRA must relate

to protecting individual voting rights. *See* JA Vol. I 90-92; JA Vol. II 350-51. DOJ's only stated purpose of auditing New Mexico's voter list maintenance is improper, as courts have held in rejecting DOJ's parallel demands.[8]

Notwithstanding these rulings, DOJ maintains that it can comply with the CRA's purpose requirement by stating *any* purpose linked to a possible violation of *any* federal statute. Br.27. But "[i]f any purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function." *Oregon*, 828 F. Supp. 3d at 1104. In other words, DOJ once again has a surplusage problem, and this Court should not read "Title III so broadly as to render an express statutory obligation void of any authoritative meaning." *Warner*, 2026 WL 2018877, at *6; *see also Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 (10th Cir. 2017) (rejecting interpretation that would render term surplusage).

DOJ's blinkered read of the CRA's purpose requirement is simply not how statutory interpretation works. "Textualists—like all those who use language to

[8] *See Matthews*, 2026 WL 2212877, at *5-6; *Warner*, 2026 WL 2018877, at *6-7; *Bellows*, 834 F. Supp. 3d at 123-27, *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *Amore*, 831 F. Supp. 3d at 157, *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *Oregon*, 828 F. Supp. 3d at 1108-09; *Weber*, 816 F. Supp. 3d at 1183-84; *see also United States v. Bd. of Elections of the State of N.Y.*, No. 1:25-CV-1338, 2026 WL 1999921, at *8 (N.D.N.Y. July 10, 2026) (DOJ's purported purpose "lacks any relation to the purposes for which Title III was enacted"), *appeal docketed*, No. 26-2060 (2d Cir. July 24, 2026).

communicate—do not interpret words in a vacuum." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 301 (2026) (Barrett, J., concurring). Just as a parent's instruction to "[m]ake sure the kids have fun" does not mean a babysitter may take the kids on a multi-day jaunt to a rollercoaster park, *Biden v. Nebraska*, 600 U.S. 477, 513 (2023) (Barrett, J., concurring), the CRA's instruction that DOJ state the "purpose" for its demand does not give DOJ carte blanche to invoke the CRA for whatever purpose it desires.

The proper purposes for a CRA demand can be discerned from "look[ing] to Title III's text together with the legislative backdrop against which Congress enacted the statute." *Warner*, 2026 WL 2018877, at *6. The CRA is concerned with individuals' ability to register to vote and then cast a vote freely. Its focus on "act[s] requisite to voting," 52 U.S.C. §§10101(a)(2)(B), 20701, demonstrates that its inspection provision is also rooted in an *individual's* right to vote. That unmistakable textual cue aligns with the CRA's history, which, as contemporary courts observed, "leaves no doubt but that [the CRA] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960). And the "purpose of [T]itle III" is to preserve records for cases where "reasonable cause is thought to exist that any person qualified to vote has been improperly denied that right." *Hearings* at 700 (statement of Rep. McCullough). This Court should reject DOJ's attempt to convert the CRA, enacted to *protect*

individuals' right to vote, into a tool to further its efforts to *remove* voters from States' voter rolls.

In a last-ditch pivot, DOJ argues for the first time on appeal that its purpose in monitoring New Mexico's NVRA and HAVA compliance in fact relates to voting rights. Br.27. This pivot fails immediately, as such a stated purpose cannot be found in the September 8 letter or DOJ's briefing in the district court. And even if DOJ had made this assertion earlier, it cannot use the specter of supposedly "invalid votes" to transform an NVRA and HAVA list-maintenance investigation into a CRA-permissible civil rights investigation. Br.28-29. The authority DOJ relies on makes clear that list-maintenance issues such as "failures to purge voters who have moved away or have died" do not "bear any particular importance" to a CRA inquiry. *Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962). When the federal government "claims to discover in a long-extant statute an unheralded power," courts "typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). Indeed, the "[b]ackground legal conventions and constitutional structure [that] inform the most natural reading of a statute," *Learning Res*., 607 U.S. at 301 (Barrett, J., concurring), confirm that "whatever investigatory purposes may support a Title III records demand, voter list maintenance is not among them." *Bellows*, 834 F. Supp. 3d at 124.

### B. The Court should alternatively affirm because New Mexico's SVRL is not a record within the scope of the CRA.

The CRA requires election officers to "retain and preserve … all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §20701. As many courts have held, SVRLs are records that election officials create, not ones that "come into [their] possession," thus they do not fall within the scope of the CRA. *Id.*; *see, e.g.*, *Benson*, 179 F.4th at 479; *Evans*, 2026 WL 2267774, at *5 (collecting the then-15 decisions that had held the CRA does not cover SVRLs). This Court may also affirm on this basis.

#### 1. The Court may properly consider this argument.

Although the district court did not consider this argument, JA Vol. II 487 n.18, and the parties did not address it in their substantive briefing, "a new legal theory can be considered on appeal if it 'presents an alternative ground for affirming a lower court ruling on a pure question of law,'" even when not raised below. *United States v. Hernandez-Garduno*, 460 F.3d 1287, 1293 (10th Cir. 2006) (quoting *McMorris v. Comm'r of Internal Revenue*, 243 F.3d 1254, 1258 n.6 (10th Cir. 2001)). DOJ claims authority to demand New Mexico's unredacted SVRL under the text of the CRA, and "[q]uestions of statutory interpretation ... are pure questions of law." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quoting *May v. Segovia*, 929 F.3d 1223, 1227 (10th Cir. 2019)). If the SVRL

is *not* covered by the CRA, DOJ simply has no authority to demand it. *See FEC v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency … literally has no power to act … unless and until Congress authorizes it to do so by statute." (quotation omitted)).

In addition, although the parties did not directly raise this argument in their motions to dismiss, they introduced it through notices of supplemental authority, *see* All. SA 16, 22, 28, 31, 36, 41, which DOJ responded to on the merits four times without objection, *see* All. SA 19-20, 24-25, 33-34, 38-39.[9] This purely legal issue is "apparent in the record," and it will be "sufficiently illuminated by counsel on appeal" through this brief and DOJ's opportunity to respond in a reply brief. *Walton,* 821 F.3d at 1212. And this argument will soon be presented to this Court in the related case involving Colorado's SVRL. *See Griswold*, 2026 WL 2235374, at *4-5 (dismissing DOJ's parallel demand because "Colorado's SVRL is not a record or paper that must be produced pursuant to" the CRA).

### 2. New Mexico's SVRL was created by election officials and therefore did not "come into" their possession.

"Statutory terms are generally interpreted in accordance with their ordinary meaning." *Sinclair Wyo. Refin. Co. v. U.S. EPA*, 887 F.3d 986, 993 (10th Cir. 2017) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)). "When determining the plain and ordinary meaning of words, definitions in a recognized dictionary may

[9] The supplemental appendix provided by the New Mexico Alliance for Retired Americans is cited as "All. SA."

be considered." *Bay v. Anadarko E&P Onshore LLC*, 912 F.3d 1249, 1258 (10th Cir. 2018) (citation omitted).

The CRA requires election officers to "retain and preserve … all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §20701. But only "records" or "papers" that "come into" election officials' possession within the meaning of Section 20701 are subject to production upon a proper demand by the Attorney General. 52 U.S.C. §20703.

The CRA does not define what it means for a record to "come into" the possession of an election officer. But dictionaries from around the time Congress enacted the CRA equated "coming into" possession of something with acquiring, obtaining, or receiving it from an outside source. *Come into*, *Webster's Third New International Dictionary* 452 (1966) ("to enter upon or in possession of: acquire esp. as an inheritance"); *Acquire*, *Webster's Third New International Dictionary* 18 (1961) ("to come into possession, control, or power of disposal of"); *Obtain*, 7 *Oxford English Dictionary* 37 (1933) ("to come into the possession or enjoyment of (something)"); *Receive*, *Webster's Third New International Dictionary* 1894 (1961) ("to come into possession of: acquire"). This same understanding endures 66 years later. *See, e.g.*, *Receive, Black's Law Dictionary* (12th ed. 2024) (defining "receive" as "to come into possession of or get from some outside source"). Federal

courts have also adopted these definitions. *E.g.*, *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting *Webster's New International Dictionary* (3d ed., 1966, unabridged))).

Common usage confirms this point. Consider, as the Sixth Circuit did, a cake. "A baker may purchase ingredients from a grocery store (flour, eggs, etc.) and then proceed to bake cakes." *Benson*, 179 F.4th at 479. The baker might have "come into" possession of the purchased ingredients, but it would be "rather strange to say" she has "come into" possession of a cake she baked with those ingredients. *Id.* Such a phrase would be unnatural because it would falsely imply that the baker merely acquired a finished cake from someone else instead of expending time and labor to produce it. Similarly, "an ordinary English speaker would not say" that New Mexico came into possession of the SVRL that it "created." *Id.*

Accordingly, because New Mexico election officials internally generate and continuously update the SVRL, it does not "come into" their possession and thus is not a record subject to inspection under the CRA. If Congress intended for the CRA to cover dynamic documents created by election officials, it had "obvious alternative" language at its disposal. *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16

(2014). It could have written the CRA to encompass "all records" that met the statutory criteria, without any qualifier regarding possession, as it did in the NVRA. *Koski*, 2026 WL 2032532, at *5 (quoting 52 U.S.C. §20507(i)(1)). Or "Congress could have required the retention and production of all election-related records and papers '*in* the possession of' the state election official." *Bellows*, 834 F. Supp. 3d at 123 n.10 (emphasis added). Indeed, Congress *frequently* employs the phrase "in the possession of" to convey its desire that a statute sweep broadly. *See, e.g.*, 30 U.S.C. §1732(b); 6 U.S.C. §1502(a); 18 U.S.C. §§3500(a)-(b), 1968(f)(3)-(4); 7 U.S.C. §12(e); 49 U.S.C. §47124a(b)(1). But in the CRA, Congress "chose not to use this broader formulation in Section 20701 and, having done so, the court must give meaning to the words 'come into.'" *United States v. Scanlan*, No. 25-CV-371, 2026 WL 1864054, at *6 (D.N.H. June 29, 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026). After all, "[c]ourts are required to give effect to Congress' express inclusions and exclusions, not disregard them." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 126 (2018).

Additional textual indicators confirm that Congress used the ordinary meaning of "come into possession." The surrounding text of Section 20701 explains that the relevant "records" are those "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §20701; *see Yates v. United States*, 574 U.S. 528, 543 (2015) (noting that

"accompanying words" are key for interpreting statutory phrases because "a word is known by the company it keeps"). "Each of these terms refers to something that the *voter* submits or does as part of the registration process," rather than something state officials create themselves. *United States v. Benson*, 819 F. Supp. 3d 753, 768-69 (W.D. Mich. 2026) (emphasis added), *aff'd*, 179 F.4th 470 (6th Cir. 2026). And, as the Sixth Circuit recounted, even the reference to records related to a "payment of poll tax" reveals the narrow category of documents captured in this language. *Benson*, 179 F.4th at 479. When the CRA was enacted, voters would pay poll taxes to their sheriff, who would provide a receipt for the voter to present to election officials. *Id.* The CRA thus required that officers "would have to retain and preserve the poll-tax receipts submitted by voters, as these were often the only voter-registration documents these States had." *Id.*

**3. Applying the CRA to New Mexico's SVRL would require it to be preserved without alteration, but federal law requires constant updates.**

The CRA's preservation requirements confirm that it does not apply to New Mexico's SVRL. Any record covered by the CRA must be "retain[ed] and preserve[d]," and may not be "alter[ed]." 52 U.S.C. §§20701-20702. If Section 20701 is read to cover New Mexico's SVRL, it would "effectively require election officials to simultaneously preserve and modify the same record by creating a new, static version of the database with every single edit." *Scanlan*, 2026 WL 1864054,

at *5. It is implausible that "Congress was attempting to require the impossible." *Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 355 (1937).

The command to preserve and retain covered records is paired with Section 20702's criminal penalties for those who willfully "alter" them. 52 U.S.C. §20702. HAVA, however, *requires* States to establish a dynamic SVRL that "is constantly being 'altered' as information is updated; voters are added; voters are removed; addresses changed; or any of the thousands of datapoints contained in the [list] otherwise require modification." *Thomas*, 2026 WL 2070437, at *6; 52 U.S.C. §21083(a)(1). The NVRA imposes similar list maintenance requirements. *See* 52 U.S.C. §20507(a)(4). Adopting DOJ's interpretation of the CRA would create an unavoidable clash with the NVRA and HAVA, and by extension, place election officials in the bind of choosing which statute to honor—at risk of criminal penalty. *See, e.g.*, *United States v. DeMarinis*, No. 1:25-CV-3934, 2026 WL 1780586, at *4-6 (D. Md. June 18, 2026) ("This Court will not read § 20701 to produce such an absurd result."), *appeal docketed*, No. 26-1878 (4th Cir. July 13, 2026). Courts must "interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). Earlier-adopted statutes should be read "to contain that permissible meaning which fits most logically and comfortably into the body of both previously *and subsequently* enacted law." *Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165, 2177 n.8 (2026)

(emphasis added) (citation omitted). This Court should join the Sixth Circuit and numerous district courts in declining to "adopt a reading that would place election officials in violation of one federal law for trying to comply with others." *Benson*, 179 F.4th at 480.

**4. DOJ's interpretation of the CRA should be rejected.**

Despite the growing consensus among courts throughout the country that the CRA does not extend to SVRLs, and the numerous filings identifying these rulings below, All. SA 16, 22, 28, 31, 36, 41, DOJ does not address the issue in its brief. When it has addressed the issue in parallel litigation, the contrary arguments it has raised were meritless.

*First*, DOJ has argued that a State's SVRL must be covered by the CRA because it "relat[es] to voter registration" and the phrase "relating to" should be defined "expansively." Br. for the United States at 13, *United States v. Simon*, No. 26-2679 (8th Cir. Aug. 31, 2026) (hereinafter "*Simon* Br.") (citation omitted). Under the CRA, a record must not merely "relate to" voter registration—it must *also* "come into" election officials' possession. That the SVRL *relates* to voter registration is irrelevant to whether that dynamic, state-created list *came into the possession* of election officials. The two phrases impose distinct requirements.

*Second*, DOJ has claimed that the phrase "come into … possession" is broadly defined to "focus[] the inquiry on the moment at which possession was obtained and

denotes 'possession by any means.'" *Id.* at 15 (quoting *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 933 (11th Cir. 2023) (Jordan, J., concurring)). DOJ claimed that Congress "used the phrase '*come* into his possession' rather than '*are* in his possession' ... to focus on *how* and *when* the officer gains possession of the records or documents in the first instance." *Id.* at 16. But DOJ failed to offer any explanation of why focusing on how and when the officer gains possession of the records would be relevant to the CRA. "If that is the meaning Congress intended," the phrase "come into … possession" is "an odd selection of words to convey it," particularly in light of "obvious alternative" language. *Bellows*, 834 F. Supp. 3d at 123 n.10 (citation omitted). "Congress could have referred simply to 'records in the possession of' election officials, or even just 'records' without any qualifier," which is the language used in the NVRA. *Caldwell*, 2026 WL 2186515, at *7 (quoting *Benson*, 819 F. Supp. 3d at 768).

Nonetheless, DOJ has cited *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), in support of its reading. *Simon* Br.17. But as the Sixth Circuit recognized, *Tax Analysts* "provides no insight" about "'come into … possession,' as Title III uses it." *Benson*, 179 F.4th at 481. In *Tax Analysts*, there was no dispute that the relevant statutory term ("agency records") would include self-created records; the Court's analysis relied on an agency-recordkeeping statute that defined "record" to include materials "made *or received*" by an agency, 492

U.S. at 145-46 (emphasis added); and the phrase "come into … possession" appears nowhere in the statute at issue in *Tax Analysts*.

DOJ has also cited other statutes that use the phrase "come into possession," *Simon* Br.17-18, but each confirms Congress uses the phrase "come into possession" when referring to things *received* by someone. *See, e.g.*, 44 U.S.C. §3572 (using phrase "comes into possession" in reference to "information supplied by individuals or organizations to an agency"); 13 U.S.C. §214 (referencing 13 U.S.C. §9, which prohibits disclosure of information "furnished" to the Department of Commerce for the Census); 30 U.S.C. §1732(b) (explaining States and Indian tribes are entitled to have access to royalty information "as soon as practicable after it comes into the possession of the Secretary"); 10 U.S.C. §130c(d) (using phrase "came into possession or under the control of the United States" in reference to information "received by an agency" from a foreign government). The consensus construction of the CRA among courts sits comfortably among these laws. *See, e.g.*, *Benson*, 179 F.4th at 179.

*Third*, DOJ has stitched together fragments of the CRA's legislative history and historical "[c]ontext" to argue that they support DOJ's view. *Simon* Br.18-21. But they cannot override the CRA's plain text: "[W]hen the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent." *United States v. Saenz-Gomez*, 472 F.3d 791, 794 (10th Cir.

2007) (citation omitted). In any event, DOJ's retelling of the CRA's history and context is wrong. The Commission Report that prompted enactment of the CRA explains why Congress was focused on application materials. The Commission found its investigations thwarted by Jim Crow officials' efforts to destroy "[r]ejected applications" submitted by Black applicants, *Comm'n Rep.* 93, and it determined that comparing such applications to accepted applications submitted by White applicants was "essential to any investigation of denials of the right to vote," *id.* at 137; *see also Hearings on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong., 2d Sess. 6 (1960) (statement of Att'y Gen. Rogers).[10] DOJ needed *applications* specifically because, "[w]ithout access to accepted and rejected registration materials, the Attorney General could not independently evaluate whether black voters had satisfactorily established their qualifications or had done all that was asked of white voters, such that their omission from the voter rolls could be attributed to race." *Evans*, 2026 WL 2267774, at *9.

Unlike voter applications, voter lists would "not have enabled the Attorney General to conduct the sort of *comparative* analysis necessary to seek injunctive relief." *Id.* at *10 (emphasis added). Regardless, voter lists (although not SVRLs, with their detailed personal identifying information) were *already* available to DOJ in most States, because "voter rolls have long been treated as public records, which

[10] Available at https://perma.cc/46G6-GQZB.

are made available to political parties, advocacy organizations, and members of the public." *Id.* (citing Joseph P. Harris, *Registration of Voters in the United States*, Inst. for Gov't Rsch. 44, 167, 179, 236, 259, 270, 272, 290 (1929)). That is why, "[i]n the years leading up to the passage of Title III, the Civil Rights Commission was able to obtain lists of qualified voters, even in jurisdictions hostile to its mission." *Id.* Congress drafted the CRA to cover records that were *not* available, rather than records treated as public.

*Fourth*, DOJ has argued the prevailing construction of "come into possession" would still cover self-generated records because, even if one employee "created the SVRL," other employees who subsequently acquire the record would "come into [the] possession" of it, making it subject to the CRA. *Simon* Br.22. But courts around the country have not held that the CRA's coverage turns on an employee-by-employee assessment, such that whether records are covered would depend "on the staffing practices of state election bodies." *Evans*, 2026 WL 2267774, at *10 n.8 (characterizing DOJ's argument as "pedantry" (alteration omitted)). Instead, they have held that the relevant provisions as a whole draw a line between voter-created documents on one hand and internally generated documents on the other, requiring preservation only of the former and not of the latter. *See id.* Such an approach makes far more sense than DOJ's employee-by-employee scheme, as it is a "doubtful proposition that Congress sought to accomplish" coverage of internal records in such

a "surpassingly strange manner" when it could have done so "in a much more straightforward way." *Azar v. Allina Health Servs.*, 587 U.S. 566, 577 (2019) (citation omitted). And DOJ's reading would *still* fail to capture New Mexico's SVRL, which does not transfer from one election officer to another as a static, discrete record would but is a "continuously maintained, state-generated compilation of data" that New Mexico "has built, updated, and controlled since its creation." *Scanlan*, 2026 WL 1864054, at *6 (describing New Hampshire's list).

*Fifth*, DOJ has advanced an interpretation that would put the CRA's "prohibition on altering records" on a collision course with the NVRA's and HAVA's requirements that the SVRL be updated regularly. *See Simon* Br.23-26. In other cases, DOJ has relied on this Court's decision in *Voter Reference Foundation, LLC*, 160 F.4th 1068, to suggest that DOJ's reading of the CRA can be harmonized with these statutes, but that is mistaken, *Simon* Br.23-24. In holding that a dynamic SVRL is a record under the NVRA, the Court interpreted the NVRA's directive to "*maintain*[]" records subject to disclosure. *Voter Reference Found.*, 160 F. 4th at 1085 (quoting 52 U.S.C. §20501(b) (emphasis added)). The Court's holding hinged on the dictionary definition of "maintain": "to 'carry on' or 'keep up.'" *Id.* (quoting *Maintain*, *Oxford English Dictionary* (2d ed. 1989)). To "carry on" or "keep up" something is quite unlike the CRA's command to "preserve," "retain," and not "alter" records. 52 U.S.C. §§20701-20702.

DOJ has repeatedly attempted to avoid this conflict by asking courts to ignore the plain meaning of the term "alter" in the CRA. *See Simon* Br.24. According to DOJ, a CRA-covered record is not altered unless it is destroyed or manipulated with ill intent. But "alter" simply means "to cause to become different in some particular characteristic." *Alter*, *Webster's Third New International Dictionary* 63 (1966). The very point of list maintenance is that the list will "become different" every time a voter registers, updates their registration, or is removed. DOJ also has cited *Fischer v. United States* to suggest that the term "alter" applies only to actions that impair the document's evidentiary value, *see Simon* Br.24-25—but *Fischer* reached that conclusion because the obstruction-of-justice statute it construed in 18 U.S.C. §1512, contains an additional mens rea requirement that the CRA does not: it criminalizes altering documents "*with the intent to impair the object's integrity or availability for use in an official proceeding*." *See* 603 U.S. 480, 487 (2024) (emphasis added) (applying 18 U.S.C. §1512). Regardless, depending on the issue being investigated, updating an SVRL might well impair its evidentiary value—such as if an ineligible voter previously listed were removed. "Alter" "must be read in [its] context and with a view to [its] place in the overall statutory scheme." *City and County of San Francisco v. EPA*, 604 U.S. 334, 350 (2025) (citation omitted). Read together, the CRA's requirements that covered records be retained and preserved, *and* not altered, are all consistent with an obligation to keep records in a static,

identical form; it does not make sense to extend that obligation to a dynamic, constantly evolving SVRL.

*Finally*, DOJ has advanced hyperbolic policy arguments, claiming that it would "paralyze" DOJ's ability to enforce voting laws if the CRA did not reach SVRLs. *Simon* Br.25-26. But "policy concerns cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 596 U.S. 328, 346 (2022). In any event, nothing would be "paralyzed." DOJ's present campaign for States' SVRLs is unprecedented. If Congress thought it necessary for DOJ to audit unredacted SVRLs to assess compliance with the NVRA and HAVA, it would have given DOJ the authority to do so *in the NVRA and HAVA*. *Bellows*, 834 F. Supp. 3d at 125. Instead, HAVA affirms that SVRLs are to be "maintained" and "administered" at "the State level," 52 U.S.C. §21083(a)(1)(A), as does the NVRA, *see id.* §20507(a).

### C. The CRA does not preempt New Mexico's voter privacy protections.

Even if the CRA permits DOJ to inspect New Mexico's SVRL, New Mexico law protects sensitive voter information from disclosure. *See* N.M. Stat. Ann. §1-4-5.5(B). That includes "voters' social security numbers" and "a voter's day and month," of birth, *id.*, the very information DOJ demands, *see* JA Vol. II 50. For DOJ to obtain this protected information, it must show that the CRA preempts New Mexico's voter privacy laws. It does not.

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted). As "the party claiming preemption," DOJ "bears the burden of showing with specificity that Congress intended to preempt state law." *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (alteration omitted) (quoting *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998)). It has entirely failed to do so.

Nothing in the CRA evinces a purpose to preempt common-sense voter privacy laws like New Mexico's. The statute does not speak to the issue at all. And in holding that the NVRA's inspection provision requires disclosure of SVRLs, this Court emphasized that, "[t]o the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation." *Voter Reference Found.*, 160 F.4th at 1083 n.14 (citing N.M. Stat. Ann. §1-4-5.5(B)); *see also Pub. Int. Legal Found. v. Bellows*, 92 F.4th at 56 (holding the NVRA allows redaction of sensitive information). Nor does anything in the CRA's text prohibit such redactions.

DOJ's only attempt to identify any preemptive intent in the CRA is its citation to 52 U.S.C. §20704, which provides that DOJ may not share records obtained under the CRA except to Congress, other government agencies, or in a judicial proceeding. *See* Br.43. But Section 304 exists to prevent DOJ from disclosing sensitive

information; it does not indicate congressional intent to preempt States from enacting *broader* protections from disclosure. Even *Lynd* recognizes that the CRA was intended only to reach "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." 306 F.2d at 231. Because there is no reason to conclude Congress's purpose was to preempt voter privacy laws, the CRA cannot require New Mexico "to disclose specific types of information [it is] prohibited from disclosing under" state law. *Oregon*, 828 F. Supp. 3d at 1108.

## IV. DOJ has not complied with the Privacy Act.

The Court should also affirm because the mass data collection DOJ seeks would violate the Privacy Act. *See Weber*, 816 F. Supp. 3d at 1192-94 (dismissing DOJ's demand for California's unredacted SVRL on this ground); *see also League of Women Voters v. U.S. DHS*, 835 F. Supp. 3d 79, 120-30 (D.D.C. June 22, 2026) (finding DHS violated Privacy Act in seeking to run voter lists through SAVE), *appeal docketed*, No. 26-5243 (D.C. Cir. June 29, 2025), *stay denied*, 2026 WL 2643439 (D.C. Cir. Sep. 4, 2026).

The Privacy Act "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. DHS*, No. 25-CV-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). One such requirement is that, before an agency may "establish or revise any 'system of

records,' it must 'publish in the Federal Register … a notice of the existence and character of the system of records.'" *Id.* at *2 (alterations omitted) (quoting 5 U.S.C. §552a(e)(4)). The System of Records Notice or "SORN" must include a defined set of information about the records stored in the system—including the "purposes for which the information is intended to be used," whose records are at issue, and the types of records covered. 5 U.S.C. §552a(e).

DOJ does not contest that New Mexico's SVRL qualifies as "system of records" under the Act. *See Schwier v. Cox*, 412 F. Supp. 2d 1266, 1271-72 (N.D. Ga. 2005) (holding a voter list is a system of records), *aff'd*, 439 F.3d 1285 (11th Cir. 2006). DOJ must, therefore, issue a compliant SORN "before" it engages in activity covered by the Act. *LULAC v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 115-16 (D.D.C. 2026).

DOJ points to a SORN identified as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." Br.36-37. But this SORN fails to support DOJ's attempt to collect voter data here several times over. *First*, it does not disclose what DOJ intends to do with the voter data—indeed, it does not even *mention* the NVRA, HAVA, or the CRA. DOJ seeks to excuse this omission because the SORN refers to the Civil Rights Division's website, which in turn mentions the statutes, Br.37 n.10, but the Privacy Act requires information in the SORN to be "publish[ed] in the Federal Register"—not on an agency's webpage. 5

U.S.C. §552a(e)(4). And the Division's website merely lists the statutes enforced by the Voting Section—it does not disclose the intended "routine use[s]" of the mass data collection DOJ seeks here, and so does not satisfy the Privacy Act. 5 U.S.C. §552a(e)(4)(D).

*Second*, the SORN says DOJ may maintain information about the "[s]ubjects of investigations, victims, [and] potential witnesses." 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). DOJ insists this language covers its demand because every registered voter in New Mexico is simultaneously a "subject" and "victim" in its "investigation into … voter fraud." Br.37-38. New Mexico's voters would be aghast to learn that DOJ views each and every one of them as a "subject"—a term that, as DOJ recognizes, means that the individual's "conduct" is under "investigation," *id.*, a designation serious enough that it would normally trigger a well-advised recipient to seek criminal defense counsel. And it is similarly implausible to call every registered voter in New Mexico a "victim" in an investigation purportedly about the sufficiency of the State's voter roll maintenance. Reading those terms as capaciously as DOJ urges would make a mockery of the Privacy Act's notice requirements.

*Third*, the SORN describes the categories of covered records as "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. Although this language may cover run-of-the-mill files maintained

for specific investigations and litigation, it would be remarkable to conclude—as DOJ insists—that these terms extend to permit proactively seizing each State's full, unredacted voter list.

For all these reasons, this SORN does "nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on [such] an unprecedented level." *Weber*, 816 F. Supp. 3d at 1193. "Because the DOJ has not fulfilled its requirements under the Privacy Act, it cannot collect the sensitive, unredacted voting records of millions of" New Mexico residents. *Id.* at 1194.[11] And contrary to DOJ's invitation to ignore this Privacy Act violation and order production of New Mexico's SVRL anyway, Br. 35-36, courts may not "command[] unlawful conduct." *Bartch v. Barch*, 111 F.4th 1043, 1063 n.23 (10th Cir. 2024) (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 79-80 (1982)).

## V. If the Court reverses, it should remand for additional proceedings.

Even if the Court were to reverse, it should reject DOJ's audacious request to "remand with instructions to order Secretary Toulouse Oliver to immediately produce the requested unredacted SVRL" and to immediately issue its mandate. Br.44. For one, although this Court should hold that an SVRL falls outside the scope

[11] The "law enforcement" exception DOJ references means only that DOJ is not *categorically* barred from collecting First Amendment information. *See* 5 U.S.C. §552a(e)(7). There is no law enforcement exception to the Act's SORN requirement. *Id.* §552a(e)(4).

of the CRA, *see supra* Argument §III.B, if it does not reach the issue and reverses the district court's ruling, it should "remand [this legal question] as well for consideration by the district court in the first instance." *Marathon Ashland Pipe Line LLC v. Md. Cas. Co.*, 243 F.3d 1232, 1253 (10th Cir. 2001).

Additionally, even assuming the Court resolved every issue presented in this appeal in DOJ's favor, the appropriate next step would be for the matter to proceed to discovery, including as to whether DOJ's purpose in seeking New Mexico's SVRL is pretextual. *See United States v. Clarke*, 573 U.S. 248, 254 (2014) (permitting discovery into government's motive in issuing document demand upon "a showing of facts that give rise to a plausible inference of improper motive"). The CRA required DOJ to state "the purpose" for its demand, so it matters whether the asserted purpose is the true one.

As the district court observed, "DOJ's contentions about its motivations to sue [for New Mexico's SVRL] are inapposite." JA Vol. II 484 n.15 (noting the "paradox" from DOJ's shifting explanations). Multiple other federal courts have expressed similar doubt about DOJ's stated purpose for seeking SVRLs. *See, e.g.*, *Weber*, 816 F. Supp. 3d at 1182-86 (concluding DOJ's stated purpose in demanding California's SVRL was "pretextual" and "contrived"); *Oregon*, 828 F. Supp. 3d at 1107 (similar). Discovery is necessary to determine the true purposes of DOJ's unprecedented

investigation into New Mexico's voter file, and whether it is being done for an "improper motive." *Clarke*, 573 U.S. at 254.

## CONCLUSION

The Court should affirm.

September 17, 2026

Respectfully submitted,

*s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Joshua C. Abbuhl
Kevin R. Kowalewski
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Telephone: (202) 948-1135

Walker R. McKusick
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Ste. 2100
Seattle, WA 98101
Telephone: (202) 948-1135

Justin R. Kaufman
Caren I. Friedman
Molly H. Samsell
**DURHAM, PITTARD & SPALDING, LLP**
125 Lincoln Ave, Ste. 402
Santa Fe, NM 87501
Telephone: (888) 998-6688

*Attorneys for Intervenor-Defendant-Appellee New Mexico Alliance for Retired Americans*

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor-Defendant-Appellee New Mexico Alliance for Retired Americans respectfully submits that oral argument is appropriate in this case because it presents important issues of first impression in this Circuit. The New Mexico Alliance for Retired Americans requests that it be allowed separate argument time. The New Mexico Alliance for Retired Americans has members that reside throughout New Mexico. Their privacy rights are directly at stake in this appeal, and the Court would benefit from hearing their unique perspectives.

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and 10th Cir. R. 32(B), it contains 12,117 words.

2. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

September 17, 2026

*s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

## RULE 31.3(B) CERTIFICATE FOR SEPARATE BRIEF

Pursuant to 10th Circuit Rule 31.3(B), I certify that a separate brief is necessary for Intervenor-Defendant-Appellee New Mexico Alliance for Retired Americans. In order to ensure its legal interests are appropriately protected, the Alliance must fully articulate its views and arguments regarding the unlawfulness of DOJ's demand, and the Alliance intends to advance unique litigation positions. In addition, the Alliance's sister chapters have been granted intervention in fifteen other parallel cases where DOJ seeks production of unredacted SVRLs, and the Alliance thus brings unique insights regarding the issues on appeal from its participation in parallel matters in courts across the country.

*s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

## CERTIFICATE OF COMPLIANCE WITH CM/ECF USER'S MANUAL

In accordance with the Court's CM/ECF User's Manual, I hereby certify that no privacy redactions were required. In addition, I certify that any hard copies of this brief, if ordered by the Court, will be exact copies of the ECF filing.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

**CERTIFICATE OF SERVICE**

I certify that on September 17, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta