No. 26-2126

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

Defendant-Appellee

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; CLAUDIA MEDINA; JUSTIN ALLEN,

Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
The Honorable Judge Judith C. Herrera
D.C. No. 1:25-cv-1193-JCH-JFR

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of cover page)*

*(continuation of cover page)*

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
MICHAEL T. HAYES
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 805-7671
michael.hayes6@usdoj.gov

# TABLE OF CONTENTS


**PAGE**

GLOSSARY

INTRODUCTION ........................................................................ 1

ARGUMENT

I. The United States adequately stated the basis and purpose of its demand for New Mexico's SVRL. ............. 1

A. Courts play a limited role in assessing the Attorney General's demand under Title III. .................. 1

B. The United States stated an adequate "basis" for its demand. ............................................................ 5

C. The United States stated an adequate "purpose" of its demand. ............................................................... 9

II. New Mexico's SVRL falls within the scope of Sections 301 and 303 of Title III. ....................................................... 13

A. New Mexico's SVRL is a record that "comes into" Secretary Oliver's possession. ..................................... 13

B. Section 302 does not conflict with list-maintenance requirements under the NVRA or HAVA. ........................................................ 24

III. The DOJ's demand for an electronic, unredacted copy of New Mexico's SVRL does not implicate or violate federal or state privacy laws. ............................................... 26

A. Federal law preempts any contrary New Mexico privacy law. ..................................................... 26

**TABLE OF CONTENTS (continued):** **PAGE**


B. The DOJ's demand complied with the Privacy Act. .......... 27

C. The E-Government Act does not prevent the DOJ from obtaining New Mexico's SVRL. .......... 29

IV. If this Court reverses, it should instruct the district court to order immediate production of the SVRL. .......... 31

CONCLUSION .......... 33

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*American Oversight v. United States Dep't of Just.*, 45 F.4th 579 (2d Cir. 2022) ........ 29

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) ........ 29

*Bryan v. United States*, 524 U.S. 184 (1998) ........ 25

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) ........ 10

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 ........ 5

*Fischer v. United States*, 603 U.S. 480 (2024) ........ 24-25

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) ........ 15

*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916 (11th Cir. 2023) ........ 16

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ........ 14

*High Desert Relief, Inc. v. United States*, 917 F.3d 1170 (10th Cir. 2019) ........ 13, 32

*Kennedy v. Lewis*, 325 F.2d 210 (5th Cir. 1963) (per curiam) ........ 19

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ........ 2, 4, 8, 14, 26

*Kennedy v. Owen*, 321 F.2d 116 (5th Cir. 1963) (per curiam) ........ 19

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ........ 14

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........ 6

**CASES (continued):** **PAGE**

*McIntyre v. Morgan*, 624 F. Supp. 658 (S.D. Ind. 1985) .......................... 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ............................................................. 14

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ............................................................. 25

*Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) .................................... 6

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ............................................................. 18-20

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich.),
*aff'd*, 179 F.4th 470, *reh'g en banc denied*,
187 F.4th 462 (6th Cir. 2026).................... 5, 10, 12, 15, 17-20, 22-25

*United States v. Clarke*, 573 U.S. 248 (2014) ......................................... 31

*United States v. Evans*, No. 25-4403,
2026 WL 2267774 (D.D.C. Aug. 6, 2026)....................................... 23

*United States v. Jordan*, 853 F.3d 1334 (10th Cir. 2017).......................... 7

*United States v. Mississippi*, 380 U.S. 128 (1965) .................................. 14

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)........................ 9-10

*United States v. Powell*, 379 U.S. 48 (1964) ........................................... 2-3

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025)..................................................... 27

*Walton v. Powell*, 821 F.3d 1204 (10th Cir. 2016)................................... 13

**STATUTES:** **PAGE**

Civil Rights Act of 1960
52 U.S.C. 20701 .......... 14, 17, 22-24
52 U.S.C. 20702 .......... 24
52 U.S.C. 20703 .......... 2
52 U.S.C. 20704 .......... 4, 26-27
52 U.S.C. 20705 .......... 3
(Tile VI)
52 U.S.C. 10101 .......... 10

Civil Rights Cold Case Records Collection Act of 2018
Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) .......... 17

E-Government Act of 2002
§ 201 .......... 30
§ 208(b)(1)(A)(ii)(II) .......... 30
Pub. L. No. 107-347, § 208, 116 Stat. 2921 .......... 30

Help America Vote Act of 2002
52 U.S.C. 21083(a)(1)(A)(i) .......... 15
52 U.S.C. 21083(a)(5)(A)(i) .......... 28

Internal Revenue Code
26 U.S.C. 7602(a)(1) .......... 3
26 U.S.C. 7605(b) .......... 3

National Voter Registration Act of 1993
52 U.S.C. 20501(a)(1) .......... 11
52 U.S.C. 20901-21145 .......... 11

President John F. Kennedy Assassination Records
Collection Act of 1992
Pub. L. No. 102-526, § 3(2), 106 Stat. 3444 .......... 17

Privacy Act of 1974
5 U.S.C. 552a(e)(4) .......... 29
5 U.S.C. 552a(e)(7) .......... 27

**STATUTES (continued):** **PAGE**

10 U.S.C. 130c(d)(2)(C) .......... 19

13 U.S.C. 214 .......... 19

30 U.S.C. 1732(b) .......... 19

44 U.S.C. 3502(10) .......... 30

44 U.S.C. 3572(f) .......... 19

**LEGISLATIVE HISTORY:**

106 Cong. Rec. 6392 (1960) .......... 7

106 Cong. Rec. 7767 (1960) .......... 7

H.R. Rep. No. 956, 86th Cong., 2d Sess. (1959) .......... 19

**RULE:**

Fed. R. Civ. P. 81(a)(5) .......... 4

**MISCELLANEOUS:**

Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (2026), https://www.justice.gov/olc/media/1440346/dl. .......... 16

Report of the United States Commission on Civil Rights (1959), https://www.usccr.gov/files/historical/1959/59-001-U.pdf .......... 20-21

*The American College Dictionary* (1959 ed.) .......... 16

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) .......... 6, 15-16

**MISCELLANEOUS (continued):** **PAGE**

*Webster's Third New International Dictionary*
(1966 ed. unabridg.) .......... 17

## GLOSSARY

| | |
|---|---|
| **CRA** | Civil Rights Act of 1960 |
| **DOJ** | U.S. Department of Justice |
| **EAVS** | Election Administration and Voting Survey |
| **HAVA** | Help America Vote Act of 2002 |
| **IRC** | Internal Revenue Code |
| **IRS** | Internal Revenue Service |
| **NVRA** | National Voter Registration Act of 1993 |
| **PIA** | Privacy Impact Assessment |
| **SORN** | System-of-Records Notice |
| **SVRL** | Statewide Voter Registration List |

## INTRODUCTION

Accurate voter rolls are an essential precondition for verifiable and trustworthy elections. The Department of Justice (DOJ) seeks to obtain New Mexico's statewide voter registration list (SVRL) to ensure that New Mexico is complying with federal law governing the maintenance of that list. The DOJ's request is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring New Mexico's compliance with the list-maintenance requirements of the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). None of the arguments advanced by Secretary Toulouse Oliver, the New Mexico Alliance for Retired Americans, and Common Cause, Claudia Medina, and Justin Allen (collectively, defendants) support the district court's contrary conclusion.

## ARGUMENT

### I. The United States adequately stated the basis and purpose of its demand for New Mexico's SVRL.

#### A. Courts play a limited role in assessing the Attorney General's demand under Title III.

The federal court hearing on the DOJ's Section 303 demand is a "special statutory proceeding" not subject to the ordinary standards of

the Federal Rules of Civil Procedure. *Kennedy v. Lynd*, 306 F.2d 222, 225-226 (5th Cir. 1962) (*Lynd II*). The Attorney General need only make a "simple statement" that the state election official against whom an order of reproduction is sought has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (quoting 52 U.S.C. 20703). "There is no place" for a state election official to challenge, or a court to review or require discovery regarding, "the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Ibid.* (quoting 52 U.S.C. 20703). Title III is satisfied so long as the Attorney General states in writing the basis and purpose of the demand, as happened here. U.S. Br. 15-31.[1]

Defendants argue that *United States v. Powell*, 379 U.S. 48 (1964), requires the ordinary application of those Rules and the factual scrutiny

[1] "JA," refers to the Joint Appendix filed in this appeal. "Sec'y Br.," "Alliance Br.," and "Common Cause Br." refer, respectively, to the principal briefs filed by Secretary Toulouse Oliver, the New Mexico Alliance for Retired Americans, and Common Cause, Claudia Medina, and Justin Allen. "U.S. Br.," refers to the United States' opening brief. "DNC Br." and "EPIC Br." refer, respectively, to the amicus briefs filed by the Democratic National Committee and Electronic Privacy Information Center.

that accompanies a Federal Rule of Civil Procedure 12(b)(6) motion. Sec'y Br. 11-16; Alliance Br. 18. But *Powell* involved an Internal Revenue Service (IRS) summons served on a taxpayer, and it authorized judicial inquiry only because Section 7605(b) of the Internal Revenue Code (IRC) prohibited the IRS from subjecting a taxpayer "to unnecessary examination or investigations," 379 U.S. at 52-53 (quoting 26 U.S.C. 7605(b)), and limited the IRS to documents "relevant or material" to its inquiry, 26 U.S.C. 7602(a)(1). The CRA contains no comparable textual limitation on the Attorney General's authority to compel production of covered records. U.S. Br. 15-19. Defendants respond that *Powell* controls anyway because the CRA, like the IRC, authorizes enforcement "by appropriate process," 52 U.S.C. 20705, without specifying a particular procedure. Sec'y Br. 13. That does not follow: the IRC's "relevant or material" and "necessary" limitations have no CRA analogue. *Cf. Powell*, 379 U.S. at 53 (explaining what would render an investigation "unnecessary").

*Lynd II*, on the other hand, is directly on point. U.S. Br. 16-18. To be sure, *Lynd II* left courts "open for determination" where there is "a genuine dispute" whether a particular record falls within the CRA's

coverage. Alliance Br. 20 (quoting *Lynd II*, 306 F.2d at 226). But that unremarkable observation—which the United States does not dispute, *see* Argument II, *infra*—says nothing about whether the district court may examine the factual sufficiency of the Attorney General's stated basis and purpose. It may not. *Lynd II*, 306 F.2d at 226. Nor does *Lynd II*'s further observation that the Attorney General there demanded "public records which ought ordinarily to be open to legitimate reasonable inspection," as opposed to "confidential, private papers and effects," *id.* at 231, describe the outer boundary of Title III's coverage. *Contra* Sec'y Br. 39-40. In *Lynd II*, the court was explaining why the delay in permitting inspection was unwarranted given the nature of the records at issue. *Lynd II*, 306 F.2d at 230-231. Were Title III limited to "public records" containing no sensitive information, its own confidentiality provision, 52 U.S.C. 20704, would serve no purpose.

Defendants also argue that the Federal Rules apply by default to a proceeding to compel production via the Attorney General's written demand. Sec'y Br. 13; Alliance Br. 18. But that rule yields when the procedural requirements are "otherwise provided by statute." Fed. R. Civ. P. 81(a)(5). And the Supreme Court has held that even when the Federal

Rules "have an application to a summons proceeding," they "are not inflexible in this application" and should not be read to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson v. United States*, 400 U.S. 517, 528-529 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520. Section 305's summary procedure, combined with the absence of any textual standard against which to judge the demand, confirms that there are no grounds for subjecting the basis and purpose of a Section 303 demand to judicial scrutiny. *See generally United States v. Benson*, 187 F.4th 462, 479-480 (6th Cir. 2026) (*Benson III*) (Thapar, J., dissenting).

### B. The United States stated an adequate "basis" for its demand.

Defendants defend the district court's holding that the September 8, 2025, letter (September 8 Letter) "altogether lacks an identifiable 'basis'" because it did not "articulate any factual suggestion that New Mexico has violated the NVRA or HAVA" or point to "statistical anomalies within New Mexico's voter registration data." JA Vol. II at 490-491; Sec'y Br. 17-20; Alliance Br. 21-22. That defense fails. Title III

does not require a factual predicate of that kind; nevertheless, the letter supplied one.

Defendants insist that "the basis" of a Section 303 demand must be a discrete factual predicate, distinct from "the purpose," or else "basis" becomes surplusage. Sec'y Br. 17-18; Alliance Br. 21-22. Nothing in the statute's text indicates that the "basis" of a Section 303 demand must be a *factual* basis. Rather, definitions of the terms "basis" and "purpose" indicate that the purpose of a Section 303 request is its reason, end, or intent, while its basis is its justificatory principle. *See Webster's New World Dictionary of the American Language* 112, 1182 (8th coll. ed. 1960) (*Webster's New World*) (defining "purpose" as the "intent, aim, or object of an act," and "basis" as the "chief supporting factor" and "the basic principle or theory"). A "basis" need not be factual—it must only be foundational.

Legal usage elsewhere bears this out. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 641 (1992) (holding that there was "no statutory basis" for a debtor's attempt to shield lawsuit proceeds from creditors (citation omitted)); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 389 (2024) (describing its review of National Labor Relation Board conduct

as limited to assessing whether its determination had a "reasonable *basis in law*" (emphasis added; citation omitted)). Indeed, this Court frequently examines whether a prison sentence is "based on" specific *legal* authority, *i.e.*, the Sentencing Guidelines. *See, e.g.*, *United States v. Jordan*, 853 F.3d 1334, 1339 (10th Cir. 2017) (noting that sentence imposed under a plea agreement is "based on" the Guidelines if, *inter alia*, the agreement is clear that "the *basis* for the specified term is a[n applicable] Guidelines sentence range" (emphasis added; citations omitted)).

This approach tracks the legislative history: the "basis and purpose" requirement gives the recipient notice both "as to why such an inspection was being made" (*i.e.*, the "purpose" or reason), and "what law or what constitutional provision, right, or immunity might be involved" (*i.e.*, the basis, or underlying principle behind the request). 106 Cong. Rec. 6392 (1960) (statement of Rep. Cramer); *see also* 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating) (stating that the Attorney General need only "identify in a general way" the reasons for the demand).

But even accepting defendants' factual-predicate theory, the September 8 letter supplied one. The letter "concern[ed New Mexico's] compliance with the statewide voter registration list maintenance

provisions" of the NVRA and HAVA (JA Vol. I at 50), and it invoked the Attorney General's Section 303 authority to assess that compliance (JA Vol. I at 50-51). A State's federally enforceable list-maintenance obligations under HAVA and the NVRA are themselves a "basis" for inquiry no less than a citation to statistical anomalies would be.

Defendants respond that the United States cannot point to the Election Assistance Commission's 2024 Election Administration and Voting Survey (EAVS) report because it was not cited in the letter. Sec'y Br. 19-20. The United States does not ask this Court to treat the EAVS report as an unstated, after-the-fact rationale. Rather, the EAVS report is simply additional context for a basis the letter itself already supplied in full: New Mexico's obligation to maintain an accurate SVRL under the NVRA and HAVA. Nothing in Section 303 requires the Attorney General to recite all information informing a demand, so long as the letter itself states its basis. *See, e.g.*, *Lynd II*, 306 F.2d at 229 n.6 (addressing a demand's "basis" that did not spell out what "information in the possession of the Attorney General tend[ed] to show" racial discrimination (citation omitted)). This one did. And federal agencies generally may "investigate merely on suspicion that the law is being

violated, or even just because [they] want[] assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950). Defendants' support for the contrary view consists entirely of decisions from other district courts construing similar letters in other cases (Sec'y Br. 17-20; Alliance Br. 21-22; *see* JA Vol. II at 489 (collecting them)), but none of them bind this Court, and each suffers from the same textual error identified above.

**C. The United States stated an adequate "purpose" of its demand.**

Having concluded that the letter lacked "the basis," the district court found it unnecessary to decide whether the letter stated an adequate "purpose." JA Vol. II at 490. Defendants nonetheless press their purpose arguments as alternative grounds for affirming the district court's decision. These arguments do not justify affirmance.

1. The United States identified HAVA and NVRA compliance as the purpose of its demand from the very first letter. The stated purpose was "to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." JA Vol. I at 51. The Secretary argues that a Title III "purpose" must relate to "discriminatory barriers to voting" and that ensuring compliance with federal law is, in her view,

"the inverse" of that purpose. Sec'y Br. 21-24. The Alliance and Common Cause describe the relevant purpose more broadly as "protecting individual voting rights." Alliance Br. 25-26; Common Cause Br. 35-52.

To the contrary, "nothing in the statute's text . . . limits the purposes for which the DOJ may request the records" under Title III. *Benson III*, 187 F.4th at 467 (Murphy, J., concurring); U.S. Br. 26-27. Where Congress meant to limit a CRA remedy to a particular harm, it said so: Title VI of the same Act applies only to violations of rights "on account of race or color." 52 U.S.C. 10101. Title III contains no comparable limitation, and this Court should not import one.

Defendants' fallback position—that recognizing HAVA and NVRA compliance as a sufficient purpose would let the Attorney General demand data for any reason—proves too much. Alliance Br. 27. Even assuming Section 303 imposes some implicit outer limit on permissible purposes, this demand falls comfortably within it: federal agencies generally may investigate "merely on suspicion" of noncompliance, or "just because" they want assurance of compliance. *Morton Salt Co.*, 338 U.S. at 642-643; *see Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (explaining that "investigating possible violations of a

Federal statute" is a valid purpose). And to the extent Common Cause suggests that a demand must set forth all possible applications or uses of the records once obtained, that suggestion is unsupported. Common Cause Br. 37.

Even if the DOJ were required to state a purpose related to "protecting individual voting rights" (Alliance Br. 25-26; Common Cause Br. 35-52), that standard is readily met here. U.S. Br. 27-29 (explaining that both the NVRA and HAVA were enacted to protect voting rights).[2]

2. Common Cause and the Alliance further contend that the United States' stated purpose is pretextual—that DOJ's true aim is to assemble a national voter database, target voters for removal, or advance

[2] The Alliance contends that the United States' invocation of voting rights is a "last-ditch pivot" raised for the first time on appeal. Alliance Br. 28. That is incorrect. A central premise of the NVRA—which the United States has invoked from the outset (JA Vol. I at 21)—is that "the right of citizens of the United States to vote is a fundamental right," 52 U.S.C. 20501(a)(1). And HAVA—also invoked by the United States from the outset—further protects those rights by implementing modern processes and tools to ensure registrations and votes are accurately tracked. *See generally* 52 U.S.C. 20901-21145. When the United States seeks to enforce a statute protecting an individual right (as it did when issuing the September 8 letter), it stands to reason that the purpose behind the United States' enforcement-oriented conduct is the safeguarding of that statutorily protected right.

immigration enforcement. Common Cause Br. 49-50; Alliance Br. 48-50. *See also* DNC Br. 14-16, 21. That contention "go[es] to the truth of the DOJ's allegations and cannot be addressed on a motion to dismiss." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich.) (*Benson I*), *aff'd*, 179 F.4th 470 (*Benson II*), *reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026) (*Benson III*). In any event, defendants' evidence of pretext consists of public statements by federal officials and Executive Orders concerning voter-list initiatives generally, all of which are consistent with the demand's stated purpose of assessing New Mexico's own compliance with the NVRA and HAVA. Consistent conduct is not evidence of pretext, and the Alliance's request for a remand to develop such evidence should be rejected on the same ground.

Much of Common Cause's pretext narrative, moreover, rests not on the Complaint or the demand letter but on newspaper articles, an anonymous former employee's account, and filings from unrelated litigation in other jurisdictions. Common Cause Br. 11-16. Such material is either irrelevant (such as filings in the unrelated litigation) or not properly before this Court on review of a Rule 12(b)(6) dismissal, which tests the sufficiency of the operative pleading. This outside-the-pleadings

hearsay does not satisfy the "heavy burden" of showing bad faith. *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (citation omitted). This Court should disregard it.

## II. New Mexico's SVRL falls within the scope of Sections 301 and 303 of Title III.

Defendants raise the question of whether New Mexico's SVRL falls within the scope of Sections 301 and 303 as an alternative ground for affirmance (Sec'y Br. 26; Alliance Br. 29), even though the district court expressly declined to decide it and expressly recognized that no party had actually argued it below. Defendants nevertheless urge this alternative argument, claiming that this Court can consider it even though not decided below. Alliance Br. 29-30 (citing *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016)). Even if this Court considers this issue, it should reject defendants' arguments.

### A. New Mexico's SVRL is a record that "comes into" Secretary Oliver's possession.

Title III provides that "[e]very officer of election shall retain and preserve" for twenty-two months after a federal election, "all records and papers which come into his possession relating to any application,

registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701.

New Mexico's SVRL comes within the scope of Title III's "sweeping" retention provision. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*); *see also United States v. Mississippi*, 380 U.S. 128, 134 (1965) ("Title III . . . requires that records of voting registration be kept."); *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985) (stating that Title III encompasses "voting registration records"). In interpreting Title III, this Court should "begin[] and end[] with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted).

Section 301 covers records "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. 20701. The term "relating to" should be defined "expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717-718 (2018). In Section 301, the phrase expands the type of records to be preserved beyond simply applications, registrations, or receipts for payments. 52 U.S.C. 20701.

Instead, any record "relating to" one of those activities—or even relating to the catchall "other act requisite to voting"—must be preserved. *Ibid.* The SVRL is not just a record that relates to voter registration, it is the preeminent and statutorily mandated record that governs all state voter registrations. 52 U.S.C. 21083(a)(1)(A)(i) ("The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State."). And contrary to defendants' arguments, there is no carve-out for state-created records.

A majority of the Sixth Circuit recently expressed agreement with the United States that an SVRL is a record that "come[s] into [the] possession" of a State's chief election official. *Benson III*, 187 F.4th at 465 (Murphy, J., concurring) (citation omitted); *id.* at 472-473 (Griffin, J., dissenting); *id.* at 478-479 (Thapar, J., dissenting).

a. When a statute does not itself define a term, courts "ask what that term's ordinary, contemporary, common meaning was" at the time of enactment. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433-434 (2019) (citation and internal quotation marks omitted). An officer comes into possession of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New*

*World* 291; *see id.* at 1140 (defining "possess" and "possession"); *id.* at 13 (defining "acquire" as "1. to get or gain by one's own efforts or actions. 2. to get possession of; get as one's own"). "Come into possession" is a broad term that both focuses the inquiry on the *moment* at which possession was obtained and denotes "possession by any means." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 933 (11th Cir. 2023) (Jordan, J., concurring); *see The American College Dictionary* 11 (1959 ed.) (defining "acquire"). The term "come into his possession" is broad enough to include both voter-generated and state-generated documents. *See* Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (May 12, 2026) (slip op. at 8-9), https://www.justice.gov/olc/media/1440346/dl.

The word "come" cannot create a carve-out for self-generated documents. *See* Sec'y Br. 26-29; Alliance Br. 31-33; Common Cause Br. 22-27. If anything, Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first

instance.[3] 52 U.S.C. 20701; *see Webster's Third New International Dictionary* 453 (1966 ed. unabridg.) (defining "come into" as "to enter upon or into possession of: acquire esp. as an inheritance").

A majority of the en banc Sixth Circuit recently acknowledged the possibility that the phrase "come into . . . possession" had developed a meaning contrary to defendants' interpretation here. *Benson III*, 187 F.4th at 465 (Murphy, J., concurring); *see also id.* at 470-471 (Griffin, J., dissenting); *id.* at 478-479 (Thapar, J., dissenting). It "was a familiar legal expression" at the time Congress enacted Title III, "regularly used . . . to describe when a person lawfully assumed possession of property through an office, employment, or other legal authority." *Id.* at 470 (Griffin, J., dissenting). But that phrase "did not distinguish property according to its source," so "records that come into an official's possession could include self-created records." *Id.* at 470-471. In other words, "[t]he

[3] *See also* Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) (44 U.S.C. 2107 note) (referring to a record that "was created or made available for use by, obtained by, or otherwise came into the possession of" an agency or governmental body); President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, § 3(2), 106 Stat. 3444 (44 U.S.C. 2107 note) (same).

more natural inference is that . . . 'come into possession' [was] a familiar legal formulation identifying when the statutory duty attached, not . . . creating a separate substantive limitation on the records covered." *Id.* at 471. There is, in short, no external-source limitation to be found in the text of Title III. *Ibid.*; *United States v. Benson*, 179 F.4th 470, 485 n.3, 486 n.7 (6th Cir. 2026) (Nalbandian, J., dissenting) (*Benson II*).

The Supreme Court has demonstrated a similar understanding of the term. In cases under the Freedom of Information Act, the Supreme Court has imposed two requirements for a document to be an agency record: "First, an agency must either *create or obtain* the requested materials," and second, "the materials [must] have *come into the agency's possession* in the legitimate conduct of its official duties" and remain in the agency's possession at the time of a records request. *United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-145 (1989) (citation and internal quotation marks omitted; emphasis added). Thus, the Supreme Court has made clear that an agency record created by the agency can be said to have "come into the agency's possession"—coming into possession

of material refers to when and how the possession began. *See id.* at 145-146.[4]

Numerous statutes use similar phrases to regulate acquiring information or property *through improper means* or to trigger duties to act based on acquiring information or property *at a particular time*. *See, e.g.*, 10 U.S.C. 130c(d)(2)(C); 13 U.S.C. 214; 30 U.S.C. 1732(b); 44 U.S.C. 3572(f). Moreover, decisions contemporaneous to the statute's passage confirm the point. *See Kennedy v. Owen*, 321 F.2d 116, 117 (5th Cir. 1963) (per curiam) (requiring the district court "to order each appellee to make available . . . all records and papers *in the possession*, custody or control of said appellee" (emphasis added)); *Kennedy v. Lewis*, 325 F.2d 210, 212 (5th Cir. 1963) (per curiam) (requiring the district court to grant the same inspection rights); *see also* H.R. Rep. No. 956, 86th Cong., 2d Sess. 6, 37, 39 (1959) (explaining that Section 301 "would include *all records and papers* in the possession of election officers" (emphasis added)).

---

[4] It is irrelevant that *Tax Analysts* did not interpret the CRA. *Cf.* Alliance Br. 37-38. The Court's unremarkable use of the phrase as a matter of ordinary language "suggest[s] that the phrase naturally describes the assumption of official custody regardless of whether the records were created within or received from outside the agency." *Benson III*, 187 F.4th at 471 (Griffin, J., dissenting).

Election officers in New Mexico acquired records and information from individual voters in the course of carrying out their duties. When they aggregated those individual records into one new, single record—the SVRL—they acquired that new record and retained it within their control, thus coming into possession of the SVRL. *See Benson II*, 179 F.4th at 484 (Nalbandian, J., dissenting). The moment of the SVRL's creation is the relevant moment; after that moment, the creating officer possesses a new document that he or she previously did not possess. *See Tax Analysts*, 492 U.S. at 144-145.

b. Context further demonstrates that Congress would not have created such a distinction between documents received from outside sources and those generated by state officers. As Judge Nalbandian has pointed out, one of the practices in the Jim Crow South when Title III was enacted was "the use of 'voucher' systems, whereby municipalities required prospective voters to find registered voters who could vouch for them." *Benson II*, 179 F.4th at 486 (Nalbandian, J., dissenting) (citing Report of the United States Commission on Civil Rights at 93 (1959) (1959 CCR Report), https://www.usccr.gov/files/historical/1959/59-001-U.pdf); *see also id.* at 475, 479 (majority opinion) (relying on the same

report). "[C]ounty boards of registrars maintained internal indices that tracked the number of times each registered voter 'vouched' for an applicant." *Id.* at 486 (Nalbandian, J., dissenting) (citation omitted). These indices would be government-created records, but once an index was passed "up the ladder," the receiving "state official came into possession of the index." *Ibid.* The indices were critical evidence for the Commission because at least one state legislature had passed a bill permitting the destruction of the registration applications themselves. 1959 CCR Report at 137. These were among the records that the Commission recommended that Congress make available for federal inspection. *Id.* at 137-138.

The Commission itself reviewed self-generated records, including many county voter registration lists showing disparities in the registration rates of black and white citizens, and registrars' own error corrections on white voter registration applications—the kind of self-generated records that the SVRL now replaces. 1959 CCR Report at 75, 87-88.

In short, documents created by state agencies historically were some of the very types of records that the United States sought to

investigate to weed out discrimination. Defendants' reading would exclude from the reach of Sections 301 and 303 all the most blatant evidence of discrimination—such as internal memoranda and documents showing whether officers accepted a proper application, including the SVRL. *See Benson II*, 179 F.4th at 486 n.7 (Nalbandian, J., dissenting).

c. Even accepting an external-source limitation, though, Title III imposes an *officer-specific* duty to preserve and produce certain voting-related records coming into the officer's possession, which would encompass the SVRL. *See* 52 U.S.C. 20701. A majority of the en banc Sixth Circuit recently agreed that Title III's "language imposes a specific duty on an individual (each officer of election), not a general duty on the entire State." *Benson III*, 187 F.4th at 465 (Murphy, J., concurring); *see id.* at 473 (Griffin, J., dissenting); *id.* at 479 (Thapar, J., dissenting). That the fines and penalties follow the individual state official having possession of those records confirms the point. *See* 52 U.S.C. 20701.

"As long as even one 'officer[] of election' . . . 'comes into . . . possession' of the voter list, Title III applies." *Benson II*, 179 F.4th at 487 (Nalbandian, J., dissenting) (second ellipsis in original; footnote omitted) (quoting 52 U.S.C. 20701). So even if *some* state officials created the

SVRL—"and therefore didn't 'come into . . . possession' of the list themselves" under the district court's reading—Secretary Oliver "nonetheless 'c[a]me into . . . possession' of the [SVRL]" when she received it from other election officers. *Ibid.* (first brackets and ellipsis in original) (quoting 52 U.S.C. 20701).[5]

d. Defendants principally rely on a pair of analogies drawn from other recent SVRL cases: that a baker who buys ingredients and bakes a cake would not say she "came into possession" of the cake, Alliance Br. 32 (citing *Benson II*, 179 F.4th at 479), or that one would not say the Mona Lisa "came into the possession" of Leonardo da Vinci when he painted it, Common Cause Br. 25 (quoting *United States v. Evans*, No. 25-4403, 2026 WL 2267774, at *6 (D.D.C. Aug. 6, 2026)).

But the phrase "come into possession" covers both acquisition from another source and through one's own creation, *see* pp. 16-21, *supra*, even when a more specific verb may be more apt in conversation given a

[5] It is not the United States' reading that requires an "employee-by-employee scheme." Alliance Br. 40. It is appellees' artificial external-source distinction, when combined with the statute's plain-text focus on individual officers, that compels looking "employee-by-employee" (Alliance Br. 40) to figure out if the SVRL "c[a]me into [the defendant's] possession," 52 U.S.C. 20701.

particular context. Moreover, Secretary Oliver is not a baker in this hypothetical. Rather, she oversees other bakers. So "the rule becomes that a baker comes into possession of a cake delivered from another bakery but not of a cake handed to her by another baker working in the same bakery." *Benson III*, 187 F.4th at 473 (Griffin, J., dissenting). Defendants, in other words, draw "an organizational boundary" requirement. *Ibid.* "Yet nothing in § 20701 draws that distinction." *Ibid.*

### B. Section 302 does not conflict with list-maintenance requirements under the NVRA or HAVA.

Defendants next argue that reading Section 301 to cover an SVRL that is regularly updated would put New Mexico in the position of "willfully . . . alter[ing]" a covered record every time it performs list maintenance, in violation of Section 302. 52 U.S.C. 20702; Alliance Br. 34-36; Common Cause Br. 26. A majority of the Sixth Circuit's judges found Title III of the CRA could be harmonized with the list maintenance requirements of the NVRA and HAVA to capture the SVRL in some form or another. *See Benson III*, 187 F.4th at 468 (Murphy, J., concurring); *id.* at 473-474 (Griffin, J., dissenting); *id.* at 479 n.7 (Thapar, J., dissenting).

First, the surrounding verbs elucidate the meaning of "alter" in this provision, which eliminates any conflict. *See Fischer v. United States*, 603

U.S. 480, 487 (2024). Those verbs all describe actions typically taken to make a document unavailable, inaccessible, or inaccurate for evidentiary purposes. *See id.* at 489-490 (describing a similar list of verbs). The SVRL is, as required by the NVRA and HAVA, an inherently evolving and changing record. List maintenance keeps the SVRL current; it does not "alter" it as that term is used in Section 302.[6] *See Benson III*, 187 F.4th at 473-474 (Griffin, J., dissenting).

Second, Section 302's prohibition on altering "record[s] or paper[s]" is accompanied by a mens rea requirement. The requirement that any penalizable alteration must be *willful* shows beyond all doubt that list maintenance under the NVRA and HAVA could never run afoul of the CRA's ban on altering records. *See Bryan v. United States*, 524 U.S. 184, 191-192 (1998) (citation omitted) ("[I]n order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'").

[6] Even if the statutes were truly inconsistent, the "specific" list-maintenance requirements in the NVRA and HAVA would merely create "an exception" to the "general" prohibition in Section 302. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

## III. The DOJ's demand for an electronic, unredacted copy of New Mexico's SVRL does not implicate or violate federal or state privacy laws.

The district court did not reach defendants' privacy arguments (JA Vol. II at 487), but defendants urge this Court to affirm on those bases. Sec'y Br. 31-40; Alliance Br. 43-48; Common Cause Br. 52-56. None of defendants' privacy-law arguments hold up. Congress regulated the conduct of federal elections in the CRA and HAVA pursuant to its Elections Clause authority. U.S. Br. 42-43. Title III imposes a "sweeping" obligation on election officials to preserve and, on the Attorney General's demand, produce covered records, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), and it supplies its own privacy safeguard for the records so produced, *see* 52 U.S.C. 20704.

### A. Federal law preempts any contrary New Mexico privacy law.

To the extent New Mexico privacy law stands as an obstacle to production of an unredacted SVRL under Section 303, federal law preempts it. U.S. Br. 42-43. The Secretary's suggestion that there is no conflict to preempt, because Title III does not affirmatively prohibit redaction (Sec'y Br. 39-40) has it backward: if the SVRL is covered by Section 303, as it is, New Mexico must produce it in response to a lawful

demand, and any state law requiring redaction first directly conflicts with that obligation. That New Mexico may permit or require redaction for other purposes, such as the NVRA's separate public-inspection regime, *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025), does not license withholding information from the Attorney General under a different statute with its own confidentiality protections. *See* 52 U.S.C. 20704; U.S. Br. 33-34.

**B. The DOJ's demand complied with the Privacy Act.**

1. The Secretary argues (Sec'y Br. 32-33) that the mere disclosure of an individual's presence or absence from the SVRL implicates the First Amendment interests the Privacy Act protects. *See* 5 U.S.C. 552a(e)(7). Even accepting that as true, the Secretary seems to acknowledge that while a list indicating a person's decision to register or not describes *whether* he or she decided "to exercise, or not, their First Amendment rights" (Sec'y Br. 33)—it does not "describ[e] *how* any individual exercises [those] rights," as necessary to trigger the Privacy Act's relevant bar. 5 U.S.C. 552a(e)(7) (emphasis added); *see* U.S. Br. 35 (consenting to "redaction of . . . information" regarding "party affiliation and how [an] individual [has] vote[d]").

2. The Secretary and Common Cause both contend that the United States' interpretation of Title III will produce a chilling effect on voter registration. *See* Common Cause Br. 52-54; Sec'y Br. 33. But this argument rests on the premise that voters must choose between disclosing sensitive information and registering at all. It ignores the fact that HAVA already requires every registrant to supply a driver's license number or the last four digits of a Social Security number as a condition of registration, 52 U.S.C. 21083(a)(5)(A)(i). No defendant explains how the Attorney General's confidential collection of information voters already must disclose to the State, subject to Section 304's non-disclosure protections and never released to the public, imposes any additional burden on the franchise at all, or would have any effect on an individual's decision to register.[7]

3. With regard to the DOJ's applicable System-of-Records Notice (SORN) (*see* U.S. Br. 36-38), the Secretary objects that the SORN's coverage of "subjects of investigations" and "victims" cannot describe

[7] *Amicus* EPIC's concerns about technological safeguards (EPIC Br. 10-17) are more appropriate fodder for a protective order than a denial of the United States' claim.

ordinary registered voters. Sec'y Br. 34-35 (citation omitted). But a "subject" is simply a person about whom an agency gathers information in connection with an investigation. *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022). And no defendant explains why an eligible voter is not a potential "victim" of NVRA or HAVA non-compliance when that voter's vote may be diluted by an inaccurate roll. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). The Alliance's related objection that the SORN does not adequately disclose DOJ's intended use of the data (Alliance Br. 45-48) demands more specificity than the Act requires; it obligates the agency to disclose "each routine use of the records" and "the purpose of such use," 5 U.S.C. 552a(e)(4), and the published SORN does so.

### C. The E-Government Act does not prevent the DOJ from obtaining New Mexico's SVRL.

The Secretary separately argues that DOJ's failure to prepare a Privacy Impact Assessment (PIA) violated the E-Government Act because the demand constitutes a "new collection" of "identical" information from more than ten people. Sec'y Br. 37-39 (citation omitted). But a PIA is only required when "identical questions have been posed to, or identical reporting requirements imposed on" ten or more persons.

Pub. L. No. 107-347, § 208, 116 Stat. 2921-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). The Secretary fails to explain how or when the DOJ posed "identical questions" to or imposed "identical reporting requirements" on 10 or more persons. *Id.* § 208(b)(1)(A)(ii)(II); *cf.* Sec'y Br. 38 (looking at "information demanded").[8]

The Secretary curiously argues that the United States has not "preserved" the argument that the SVRL was sought "during an investigation against specific individuals and entities." Sec'y Br. 38. From the outset, and throughout this litigation, the United States' efforts have consistently been described as an investigation of a specific entity—New Mexico—regarding compliance with federal election law. *See* JA Vol. I at 21 (alleging that this proceeding arises from "the Attorney General's investigation into New Mexico's compliance with Federal election laws"); JA Vol. II at 409 (arguing that Section 303 is "a pre-suit investigative tool"); JA Vol. I at 40-42 (explaining that the Attorney General was

---

[8] The United States has never argued that it must contact "10 or more voters" (Sec'y Br. 38) to trigger the PIA requirement. *See* E-Government Act § 201; 44 U.S.C. 3502(10) (defining "person" to include a State).

exercising its "investigative powers" to "ascertain New Mexico's compliance" with federal election law); JA Vol. II at 273 (describing its efforts as an "investigation of Defendant's list maintenance practices under HAVA and the NVRA").

Finally, the Secretary argues that the E-Government Act contains "no exception for the source or manner of the data collection." Sec'y Br. 38. But that is irrelevant if the responsibilities imposed by the E-Government Act are never triggered in the first place. As explained above and previously, they are not.

## IV. If this Court reverses, it should instruct the district court to order immediate production of the SVRL.

This Court should reverse the district court's judgment and remand with instructions to order Secretary Oliver to immediately produce the requested unredacted SVRL.

The Alliance and Common Cause ask this Court, if it reverses, to remand instead for discovery into DOJ's asserted purpose. Alliance Br. 48-50; Common Cause Br. 49-52. They rely on *United States v. Clarke*, 573 U.S. 248, 253-256 (2014), another tax summons case involving restrictions and limitations on the IRS's investigatory power not relevant here. But defendants may not challenge the factual accuracy of the basis

and purpose for the DOJ's demand, Argument I, *supra*, and in any case they have not satisfied the "heavy burden" required to merit an evidentiary hearing on the DOJ's purpose. *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (citation omitted). Similarly, no remand is needed to determine the United States' compliance with the privacy laws discussed in Argument III, with which the United States has fully complied.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Michael T. Hayes

ANDREW G. BRANIFF
DAVID N. GOLDMAN
MICHAEL T. HAYES
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 805-7671
michael.hayes6@usdoj.gov

Date: October 8, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because the brief contains 6496 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Michael T. Hayes
MICHAEL T. HAYES
Attorney

Date: October 8, 2026